Case No. 1:05-CV-00988 (RMC)

UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

CONSEIL ALAIN ABOUDARAM, S.A.,
Appellant,

- against –

JACQUES de GROOTE,
Appellee.

ON APPEAL FROM
THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA
*In re Jacques de Groote* (Chapter 11 Case No. 02-0981)

BRIEF FOR APPELLEE

PALEY, ROTHMAN, GOLDSTEIN,
  ROSENBERG & COOPER, CHTD.      SALE & QUINN, P.C.

Wendelin I. Lipp, Bar No. 348219      Stephen Sale, Bar No. 942243
Alan D. Eisler, Bar No. 435054        910 Sixteenth Street, N.W.
4800 Hampden Lane                     Fifth Floor
Seventh Floor                         Washington, DC  20006
Bethesda, MD  20814                   (202) 833-4170
(301) 656-7603                        Special Counsel for Appellee
Counsel for Appellee Jacques de Groote      Jacques de Groote

July 18, 2005

## TABLE OF CONTENTS

Table of Contents . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    i

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    ii

Statement of the Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1

    A.    District Court Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    1
    B.    Bankruptcy Court Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    5

Statement of the Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    6

    A.    CAASA's Contract for Services and Promissory Notes with de Groote . . .    6
    B.    Aboudaram's Mortgage Advances to de Groote and CAASA's
           Assignment Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    8
    C.    de Groote's Motion for Judgment and CAASA's Motions to Amend
           and Reconsider . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    15
    D.    de Groote's Motion for Sanctions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    19
    E.    The Court's Decision on Reconsideration and Sanctions . . . . . . . . . . . . . . .    20
    F.    Appeals to D.C. Circuit . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21
    G.    Proceedings in the Bankruptcy Court . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    21

Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23

I.  CAASA Stipulated on the Record and the Bankruptcy Court Properly
    Held that CAASA Has a Single Claim . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    23
    A.    CAASA's New Theories Are Precluded by *Res Judicata* . . . . . . . . . . . . . . .    23
    B.    CAASA's New Theories Are Precluded by the Law of the Case . . . . . . . . . .    26
II.  CAASA Selected an Assignment as the Evidence to Meet its Burden of Proof . . . . .    29
III. CAASA Is Not Entitled to Relief Under *Throckmorton* Because CAASA
    Alone Committed Fraud in Trial of this Case . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    35
IV. CAASA Had a Full and Fair Opportunity to Try All of Its New Theories
    of Recovery . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    36
V.  CAASA's Argument of California State precedent Is Devoid of Merit . . . . . . . . . . .    39

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .    40

TABLE OF AUTHORITIES

CASES

*Allen v. McCurry*, 449 U.S. 90, 94 (1980)..................................................................... 25

*Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (2004)............................................................... 24

*Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1170, 359 U.S. App. D.C. 22
(2003)   ............................................................................................................................ 39

*City of Cleveland v. Federal Power Comm'n*, 561 F.2d 344, 348 (1977) ........................ 29

*Drake v. FAA*, 291 F.3d 59, 66, 351 U.S. App. D.C. 409, 416 (D.C. 2002),
    *reh'g en banc denied*.............................................................................................. 24, 25

*Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813-14 (5th Cir.1996)  ...................33

*Guerrero v. Katzen*, 774 F.2d 506, 508, 249 U.S. App. D.C. 206, 208 (1985)......... 25, 38

*Horn v. Department of the Army*, 284 F. Supp.2d 1, 8 (D.D.C. 2003) ............................ 28

*In Re Clark*, 738 F.2d 869, 871 (7th Cir. 1984).............................................................. 24

*In re Mitchell*, 281 B.R. 90 (Bankr. S.D. Ala. 2001)...................................................... 24

*In re Wilcher, 56 B.R. 428, 436* (Bankr. E.D. Ill. 1985).................................................. 24

*Jefferson School of Social Science v. Subversives Activities Control Board*,
    331 F.2d 76, 83 118 U.S. App. D.C. 2, 9 ( 1963).................................................. 25, 28

*LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C.Cir.1996) (*en banc*) ............................ 28

*Lawlor v. National Screen Serv.*, 349 U.S. 322, 329 n. 19 (1955) .................................. 25

*Maggard v. O'Connell*, 703 F.2d 1284, 1289 ( 1983).................................................28-29

*Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302, 1312 n. 11 (1980) .................................. 39

*National Assoc. of Life Underwriter v. Commissioner of Internal Revenue*,
30 F.3d 1526, 1531, 308 U.S. App. D.C. 159, 164 (1994) ............................................ 38

*National Wildlife Federation v. Burford*, 878 F.2d 422, 432, 278 U.S. App.
    D.C. 320, 330 ( 1989) ................................................................................................. 29

*Page v. United States,* 729 F.2d 818, 820 (1984) ............................................................ 24

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)....................................... 25

*Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989)............................................................ 25

*Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (2004) .................. 32, 33,  35

*U.S. Industries, Inc. v. Blake Const. Co.*, 765 F.2d 195, 206, 209-210 ( 1985) ......... 26, 35

*United States ex rel. Dept. of Labor v. Insurance Co. of North America*,
    131 F.3d 1037, 1041, 327 U.S. App. D.C. 383, 387 ( 1997)...................................... 28

*United States v. Alaw*, 327 F.3d 1217, 1220 (2003) ........................................................ 31

*United States v. Ideal Elec. Sec. Co.,* 81 F.3d 240, 245-48, 317 U.S. App. D.C.
    145, 150-53 (1996) .....................................................................................................38

*United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878)  ............................................35

*Wallace v. Skadden, Arps, Slate, Meacher & Flom, LLP*, 362 F.3d 810, 813,
    360 U.S. App. D.C. 368, 371 ( 2004) ........................................................................ 28

*Warren v. Mc Call*, 709 F.2d 1183, 1184 (7th Cir. 1983) ............................................... 24

*Waters v. Young*, 100 F.3d 1437, 1441 (9th Cir. 1996 ........................................... 32

*Yager v. Carey*, 910 F. Supp. 704, 732 (D.D.C. 1995)................................................... 38

<u>T</u><small>REATISES</small>

1B MOORE'S FEDERAL PRACTICE ¶ 0.404[1] at 119 ........................................ 29, 33
17 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper,
Fed. Prac. & Proc. § 4226, at n.10 (2d ed. 1988) . ……………….....................................39

## STATEMENT OF THE CASE

A.     Under District Court Case.

On January 3, 2001, Conseil Alain Aboudaram, S.A. ("**CAASA**") filed a single-count Complaint for breach of contract action against Jacques de Groote ("**de Groote**") in this Court. *Conseil Alain Aboudaram, S.A. v. de Groote*, No. 01cv0006 (D.D.C.) ("**District Court Case**"). CAASA sued to recover on two "running account" promissory notes (collectively the "**Notes**") secured by deeds of trust on de Groote's Georgetown home.  The first note, dated December 19, 1995, gave de Groote a line of credit of $400,000.  The second note, dated December 13, 1998, gave de Groote a line of credit of $100,000.  CAASA pled and sponsored testimony that CAASA made all outstanding advances under the Notes.  As de Groote's first and foremost defense, he asserted payment in full.  de Groote also counterclaimed for millions of dollars in compensation he is owed by CAASA under an oral contract he had with CAASA.

The Notes were limited to "advances made by Lender [CAASA] to Borrower [de Groote]."  CAASA's counsel, Isam Salah ("**Salah**") of King & Spalding testified that he drafted the Notes carefully and that the Notes unambiguously require Borrower [de Groote] to repay Lender [CAASA] for advances only by Lender [CAASA].  The Notes recite that CAASA's advances were to be documented on a grid attached to the Notes and endorsed by de Groote.  No grids were attached when de Groote signed the Notes, and he never endorsed a grid.

Both CAASA's principal, Alain Aboudaram ("**Aboudaram**"), and CAASA made advances to de Groote, but only CAASA presented notes and deeds of trust covering advances to de Groote.  CAASA did not carry on its books any of Aboudaram's personal advances.  de Groote consistently asserted that he had paid in full any debt to CAASA. CAASA prepared the parties' trial stipulation that de Groote repaid all of CAASA's loan advances.

Because the Notes provide for enforcement costs and interest not available for Aboudaram's unsecured advances, the District Court Case was brought on behalf of CAASA and limited to its two secured Notes.  CAASA's pretrial statement sought enforcement expenses of $1,863,348.41 through December 31, 2003, on a principal claim of $421,576.67 and interest of $96,902.58.  Aboudaram neither brought an action nor filed a claim in de Groote's bankruptcy case to recover outstanding unsecured advances.

Thus, CAASA faced the challenge of proving that Aboudaram's personal loans were covered by the Notes, which were expressly limited to advances from CAASA to de Groote. The parties stipulated that all amounts advanced by CAASA to de Groote were repaid in full. The parties had no such stipulation for Aboudaram's advances.  "The parties do not stipulate that … the payments … were payments by CAASA or were payments under the notes at issue in this case."  In negotiating that stipulation the week before trial, CAASA's counsel expressed  concern that he would have to prove that ***CAASA*** made the advances under the Notes.

For three years, CAASA claimed that an assignment linked Aboudaram's advances to the Notes.  CAASA pled and gave sworn interrogatory and deposition answers that Aboudaram had assigned de Groote's debt to CAASA.  Because CAASA never produced a written assignment in discovery, de Groote anticipated CAASA would argue that Aboudaram's personal loans to de Groote were assigned orally to CAASA.   Accordingly, de Groote was surprised to hear CAASA's counsel represent in his opening statement to the jury that "Mr. Aboudaram, rather reluctantly, formally assigned his claim to his company, and he put the matter in the hands of his company to collect."  The next day de Groote took the deposition of a previously undisclosed CAASA witness, Mr. Aboudaram's daughter Annie, who testified in great detail about the written assignment.  On the first day of trial, CAASA attempted to introduce a document

purporting to show a 1999 assignment of Aboudaram's personal advances to CAASA ("**Alleged Assignment**").  de Groote objected to the admission of the Alleged Assignment into evidence. Incredibly, CAASA's counsel responded to de Groote's motion to exclude the Alleged Assignment by admitting both that the Alleged Assignment was ***not*** a written assignment, and that there is no assignment.  The trial court granted de Groote's motion to exclude the Alleged Assignment from evidence.

Before CAASA's counsel argued a formal assignment to the jury, de Groote was prepared to defeat proof of an alleged assignment of Aboudaram's advances on the grounds that: (1) an assignment could not convert Aboudaram's unsecured personal advances into advances under the Notes secured by a deed of trust on de Groote's residence; and (2) an oral assignment could not create a mortgage on real estate.  Now, after having the Alleged Assignment excluded from evidence and abandoning its assignment theory, CAASA argues that Aboudaram's personal advances were advances under the Notes.  The unambiguous language of the Notes strictly limits advances that de Groote must repay under the Notes to those from CAASA to de Groote.

Because the unequivocal evidence showed that de Groote owed CAASA no debt under the Notes, de Groote moved for judgment when CAASA rested its case-in-chief.  The District Court took de Groote's motion under advisement.  de Groote subsequently renewed his motion for judgment after both parties rested at trial, and his motion again was taken under advisement. Three days later, CAASA moved to amend its complaint to add both a plaintiff (Aboudaram) and an oral contract count.  A week later CAASA again moved to amend to add a reformation count. The Court denied CAASA's motions because de Groote neither received notice of, nor consented to, CAASA's trial of its new theories.  The Court then entered judgment for de Groote.

CAASA contends that de Groote unfairly surprised CAASA by requiring CAASA to prove Aboudaram's advances were made under the Notes. Yet, CAASA always had this burden of proof, which CAASA said it would meet with an assignment. It was CAASA that surprised de Groote a trial by abandoning its three-year assignment claim in favor of its new claim that Aboudaram made advances directly under the Notes, and myriad evidence that had been withheld in discovery. The District Court simply held CAASA to its burden of proof, which CAASA could not meet in light of its stipulation that de Groote had repaid all of CAASA's advances. CAASA could have averted its predicament simply by naming Aboudaram as a party-plaintiff to recover his personal unsecured advances, but then CAASA could not have claimed enforcement costs and interest that dwarf its principal claim.

de Groote also presented a counterclaim. He and Skodaexport Managing Director Jan Ricica testified that they met with Aboudaram at the Churchill Hotel in London on September 4, 1992. Ricica and de Groote testified that Aboudaram then made a contract with de Groote to pay him one-third of CAASA's fees if Skodaexport were awarded a contract to build an oil pipeline in India. Aboudaram testified that he agreed that CAASA would pay de Groote 1.5 million Swiss francs, contradicting Aboudaram's sworn interrogatory answer that CAASA agreed to pay de Groote $1.5 million. Skodaexport was awarded the contract and paid CAASA $11,234,057. Rather than paying one-third of $11,234,057, CAASA paid de Groote only about $1 million. Based on CAASA's 1999 letter and many other evidentiary surprises at trial, de Groote moved for sanctions. CAASA had failed to produce its underlying books of account that were central to the case, a document showing a ceiling on de Groote's compensation, and a letter transmitting CAASA's Skodaexport contract to de Groote. CAASA had failed both to correct false interrogatory answers regarding the dates on which de Groote signed crucial documents and to

disclose Ms. Aboudaram as a person with knowledge.  The District Court denied de Groote's sanctions motion.

CAASA appealed the District Court's decisions holding CAASA to its burden of proof to the United States Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") based on post-judgment estoppel and grid arguments, extrinsic evidence of CAASA's interpretation of its unambiguous notes, and additional "enforcement cost" for other proceedings.  CAASA *did not appeal* the District Court's exclusion of the Alleged Assignment from evidence or its denial of CAASA's motions to amend.  de Groote cross-appealed denial of his sanctions motion, and the jury instructions and the verdict form on his counterclaim.

B.    Bankruptcy Court Case.

On May 14, 2002, de Groote filed a voluntary Chapter 11 bankruptcy petition, thereby automatically staying the District Court Case.  On July 12, 2002, CAASA moved the bankruptcy court for relief from automatic stay to permit the District Court Case to proceed ("**Lift Stay Motion**").  CAASA stated that "the adjudication of [the District Court Case] will liquidate the *claims* and make the administration and reorganization of Debtor's affairs much simpler." *Id.* at 18 (emphasis added).  On this basis, de Groote consented to the Lift Stay Motion, and the bankruptcy court entered a Consent Order Modifying Automatic Stay on August 20, 2002 ("**Lift Stay Order**").  The Lift Stay Order allowed the District Court Case "to proceed to allow the District Court to reduce to judgment the amount of CAASA's and/or the Debtor's respective *claims* and counterclaims." (Emphasis added).  Contrary to CAASA's later argument, the Lift Stay Order allowed CAASA to proceed on *all* of its claims – not just one – against de Groote.

On October 2, 2002, CAASA filed a proof of claim in de Groote's bankruptcy case asserting a partially secured claim in the amount of $1,385,093.17 ("**Proof of Claim**").  CAASA

based its Proof of Claim exclusively on its notes and deeds of trust. On August 27, 2004, CAASA amended its Proof of Claim ("**Amended Proof of Claim**"), *increasing* the amount of its claim to $1,464,751.04. On September 7, 2004, de Groote filed in the bankruptcy court an Objection to Proofs of Claim of Conseil Alain Aboudaram, S.A. ("**Objection to Claim**"). When de Groote argued that the Amended Proof of Claim added new causes of action and claims, CAASA stipulated on the record at a November 3, 2004 bankruptcy court hearing that CAASA had a single claim, did not add new claims or causes of action in the Amended Proof of Claim, and was advancing **new theories** to recover its sole claim. In its brief, CAASA saw fit reverse itself and now argues that CAASA has new claims.

On November 22, 2004, de Groote moved for summary judgment on the Objection to Claim on the grounds of *res judicata* or estoppel by judgment. The bankruptcy court granted de Groote summary judgment on the Objection to Claim on February 23, 2005.

## STATEMENT OF THE FACTS

A.    CAASA's Contract for Services and the Notes.

On August 31, 1991, de Groote retired as Executive Director of the World Bank, a position he had held since November 1, 1973. In 1992, CAASA asked de Groote's to help CAASA's client, Skodaexport, obtain a World Bank contract for construction of an oil pipeline from Kandla to Bhatinda in India. CAASA lacked World Bank contracting expertise, which de Groote possessed. During a September 4, 1992, meeting attended by Aboudaram, de Groote and Skodaexport Managing Director, Jan Ricica, Aboudaram offered de Groote a commission of one-third of CAASA's fees from Skodaexport. Aboudaram told de Groote that CAASA would be paid $4.5 million if the Kandla-Bhatinda contract were awarded to Skodaexport, and that de Groote's one-third share would be $1.5 million. de Groote accepted CAASA's offer.

de Groote introduced Messrs. Ricica and Aboudaram to the responsible officials of the Indian Oil Company and World Bank and assisted in securing their approval.  de Groote also succeeded in obtaining a substantial reduction of tax liability from the Czech Government for Skodaexport so that its balance sheet would make it eligible for award under World Bank rules. Following de Groote's efforts, the Kandla-Bhatinda pipeline contract was awarded to Skodaexport.

CAASA's own documents show that CAASA knew from inception that its fees on the pipeline would be at least $8.75 million.  CAASA stipulated that Skodaexport paid CAASA $8,874,997.74 for services on the Kandla-Bhatinda contract.[1]  Skodaexport also paid CAASA $2,359,060 on the tax reduction contract, for total payments of $11,234,057 of which de Groote was entitled to one-third.   Aboudaram represented to de Groote that CAASA would receive $1 million, of which de Groote would receive one-third of $1 million, for the successful reduction of Skodaexport's tax liability.

In 1992, CAASA began making advances to de Groote against commissions he was expected to earn from the Skodaexport agreement.  CAASA told de Groote that CAASA was having difficulty securing payment from Skodaexport, and de Groote understood CAASA had advanced de Groote far more than his one-third fee to which he was entitled by his agreement. de Groote unsuccessfully tried to obtain payment of his fees directly from Skodaexport.

Because de Groote believed that he had been overpaid by advances against his one-third share of the Skodaexport fees, he agreed to sign promissory notes to secure further advances.  In 1995, citing Skodaexport's continuing nonpayment, CAASA demanded that de Groote sign a note to cover CAASA's advances.  Salah drafted the Notes.  The December 19, 1995 note

---

[1] Stipulation No. 4 (Feb. 22, 2004).

covered advances up to $400,000. The October 13, 1998 note covered advances up to $100,000. The Notes were limited to "advances made by Lender [CAASA] to Borrower [de Groote]." The notes state that advances were to be documented on a grid attached to the Notes and endorsed by de Groote. No evidence shows that grids were attached to the Notes when signed by de Groote, and de Groote never endorsed a grid.

In the District Court Case, Salah, who represents CAASA and not Aboudaram personally, testified that he deals with many credit documents, including notes. Salah said he was careful on CAASA's behalf in drafting the notes. Salah testified that it is quite clear that the notes are payable to CAASA as the Lender under the Notes and that the Notes cover only advances by Lender [CAASA] to Borrower [de Groote]. Aboudaram also testified that the Notes define the Lender as CAASA, not Aboudaram, and that the Notes require de Groote to repay advances made to him by Lender (CAASA). Salah testified that the balance due under "grid notes" is "the lesser of the total amounts shown on the grid or the face amount of the note." Salah also testified that the Notes contain no term precluding set-off, such as by de Groote's counterclaims.

B.    Aboudaram's Mortgage Advances to de Groote and CAASA's Assignment Claim.

In addition to CAASA's advances on the Skodaexport commission, de Groote received from Aboudaram personally advances for mortgage payments. CAASA claims de Groote's May 24, 1995 letter, which predates the Notes, is an agreement to repay Aboudaram's advances under the Notes. The letter said no such thing. The May 24, 1995 letter, which was apparently prepared by Salah, is addressed to "Mr. Alain Aboudaram" at his CAASA office and has the salutation "Gentlemen." The body of the letter never mentions CAASA, but instead uses the pronoun "you" to define the party both making mortgage advances and for whom de Groote

agreed to sign a note. CAASA's stipulated evidence shows that the "you" making mortgage advances at that time was Aboudaram, so that the "you" for whom de Groote then agreed to sign a note was likewise Aboudaram. CAASA's brief to the D.C. Circuit acknowledged this fact by stating that the 1995 letter "acknowledged Aboudaram's prior and forthcoming advances" and "agreed to execute a note evidencing his obligation to repay all mortgage advances" by Aboudaram. CAASA brief at 7, n. 5. Although de Groote expected Aboudaram to present a mortgage note, he never did so.

Aboudaram's testimony in the District Court Case confirmed that he made the outstanding loan to de Groote for his mortgage payments and that his loan was not shown in CAASA's books of account. The parties stipulated that Aboudaram had advanced $396,357.59 to de Groote in mortgage payments and related legal fees.

In March 2002, CAASA moved for summary judgment against de Groote's counterclaims on the grounds that they were barred by the statute of limitations. In his opposition, de Groote listed 17 pages of material facts in dispute, but by no means admitted that Aboudaram made advances under the Notes. de Groote summarized CAASA's allegations as "de Groote signed the notes after the advances were made so that he could continue to borrow from CAASA." de Groote further stated that "de Groote signed the notes because Aboudaram told de Groote CAASA had not been paid by Skoda beyond a symbolic amount and therefore those advances had to be a loan rather than compensation to de Groote from his share of Skoda payments." District Court Case, Defendant's Statement of Material Facts in Dispute at 15-16, ¶ 59 (Apr. 4, 2002). CAASA's material facts not in dispute restated its complaint allegation that CAASA, and not Aboudaram, made outstanding advances. "In reliance on the notes, between December 1995 and May 1988 [sic], CAASA extended multiple advances to de Groote, totaling

approximately $427,519.74."  Plaintiff's Statement of Material Facts Not in Dispute at 9, ¶ 43

(Mar. 15, 2002).  de Groote responded that "[t]he amount of advances and other charges

ostensibly covered by the notes is in dispute and must be proven by CAASA."  Defendant's

Statement of Material Facts in Dispute at 15-16, ¶ 59 (Apr. 4, 2002).  Thus, on summary

judgment, CAASA realleged that it made the advances it sought to collect under the Notes, and

de Groote again held CAASA to its burden to prove "[t]he amount of advances and other charges

ostensibly covered by the notes."  The record does not support CAASA's post judgment

argument that, when referring to "CAASA" as to advances under the Notes, de Groote (and

apparently CAASA) really meant "Aboudaram."  The record shows that, for both parties,

"CAASA" meant CAASA and "Aboudaram" meant Aboudaram.

As the bankruptcy court concluded, CAASA brought its action on its own behalf limited

to its two secured notes because the Notes provide for security and enforcement costs

unavailable for Aboudaram's unsecured advances.[2]  CAASA's pretrial statement sought

enforcement expenses of $1,863,348.41 through December 31, 2003, for its principal claim of

$421,576.67 and interest of $96,902.58.  Aboudaram did not join as a party-plaintiff in the

District Court Case, but testified that CAASA was "fronting" for Aboudaram in suing de Groote

in this action.[3]  In a more sophisticated attempt to explain why CAASA was suing to recover

Aboudaram's personal loans, CAASA pled that Aboudaram assigned his personal loan to

---

[2]    The court notes that the promissory notes included a provision for attorney fees for
enforcement, and were secured by de Groote's Washington townhouse.  De Groote's obligations
to Aboudaram, in contrast, have not been demonstrated to have included any such provisions. …
So it was to CAASA's advantage (in order to be secured and to be entitled to costs of
enforcement) to pursue a recovery on the theory that whatever assignment Aboudaram made to
CAASA of his claims against de Groote were embodied in the promissory notes. [Slip Opinion at
5.]
[3] Trial Transcript at 69 line 6 to 70 line 3 (Feb. 23, 2004) (testimony of A. Aboudaram).

CAASA.[4] Aboudaram gave sworn interrogatory answers for CAASA that "Mr. Aboudaram later assigned to CAASA his entitlement to repayment of these amounts ... resulting in the execution of the promissory notes."[5] CAASA's pretrial statement likewise alleged that "Aboudaram assigned his claims against de Groote to CAASA, in whose favor de Groote made the promissory notes."[6] CAASA and Aboudaram thus were keenly aware that Aboudaram's advances could not be covered by the Notes and deeds of trust on de Groote's house, *unless* Aboudaram's assignment had actually preceded de Groote's execution of the Notes and deeds of trust.[7]

de Groote never believed that Aboudaram was making advances under the Notes.[8] CAASA and Aboudaram both made payments directly to de Groote's mortgage lenders, but de Groote had no way of knowing whether the payments were made by CAASA or Aboudaram. Although de Groote had accounts with CAASA and Aboudaram, the Notes covered only repayment of advances by CAASA.[9] de Groote did not even know the status of his accounts until CAASA brought its action.[10] Even then, CAASA's complaint alleges that it was the lender on outstanding mortgage advances to de Groote:

> In reliance on the Notes, between December 1995 and May 1988 [sic], Plaintiff [CAASA] extended multiple advances to de Groote totaling approximately $427,519.74.[11]

---

[4] Plaintiff's Reply to Defendant's Counterclaims (April 24, 2001) at 4, ¶ 14; Plaintiff's First Amended Reply to Defendant's First Amended Counterclaims (July 9, 2001) at 4, ¶ 14.

[5] Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories (July 23, 2001) at 12-13, interrogatory response 10.

[6] CAASA Pretrial Statement (Jan. 26, 2004) at 8.

[7] Plaintiff's Third Supplemental Responses to Defendant's First Set of Interrogatories (Feb. 11, 2002) at 23, interrogatory response 2.

[8] Trial Transcript at 15, lines 9-11 (Feb. 24, 2004) (testimony of J. de Groote).

[9] Trial Transcript at 15 line 12 to 16 line 7 (Feb. 24, 2004) (testimony of J. de Groote).

[10] Trial Transcript at 35, lines 2-8 (Feb. 24, 2004) (testimony of J. de Groote).

[11] Complaint for Compensatory Damages (Jan. 3, 2001) at 3, ¶ 11; First Amended Complaint for Compensatory Damages (July 9, 2001) at 3, ¶ 11.

Shortly after CAASA filed its complaint, it sponsored the sworn testimony of its accountant, Aldo Turatti, that outstanding advances were made by and owed to CAASA, with no mention of Aboudaram.

CAASA prepared the parties' trial stipulation that CAASA lent de Groote $30,926.50 for mortgage payments and King & Spalding fees, and the loan was fully repaid.[12]   CAASA's dunning letters to de Groote demanded that he pay what he owed under the Notes.  CAASA prepared Stipulation 2 showing that de Groote repaid CAASA's loans under the Notes by payment of $10,000 on February 15, 2000, and $40,000 on April 6, 2000, **before** de Groote made any payments that CAASA remitted to Aboudaram's account for his unsecured mortgage advances.  CAASA's application of de Groote's February and April 200 payments of $10,000 and $40,000 to CAASA's loan, in accordance with its demand letters, demonstrates that CAASA's loan was made under the Notes.  In 2000 before CAASA brought the District Court action, de Groote made an additional $190,000 in payments that CAASA apparently remitted to Aboudaram's account against his unsecured principle advances of $396,357.59.

In CAASA's opening statement on Friday, February 20, 2004, counsel for CAASA, James Marketos, informed the jury that Aboudaram "formally assigned" his loans to CAASA. de Groote was surprised because the term "formally assigned" connotes a writing, and CAASA had never produced an assignment document.  That night, on the eve of the deposition of Mr. Aboudaram's daughter, Annie Aboudaram, CAASA delivered a partial set of its exhibits to de Groote's counsel.  Because CAASA had not identified Ms. Aboudaram as a witness with knowledge in the three years leading up to pretrial, de Groote moved to strike Ms. Aboudaram as a witness.  The Court instead ordered her deposition.  Missing from CAASA's exhibits on

---

[12] Joint Stipulated Exhibit 3.

February 20 were the most crucial documents, including the letter (in French with English translation) from Aboudaram to CAASA that Ms. Aboudaram, in her deposition, testified was an assignment.

At Ms. Aboudaram's February 21, 2004 deposition, de Groote's counsel inquired specifically about an assignment document.

> [BY MR. QUINN:] Q.  Is there any amount in Exhibit 1 that was advanced to Mr. de Groote by CAASA?
> [BY MS. ABOUDARAM:] A.  No.  This is a personal loan my father made to Mr. de Groote.
> *   *   *
> Q.  The loan you indicated, I think, was money personally advanced.
> A.  Exactly.
> Q.  Did this somehow become a loan of CAASA?
> A.  At one point, yes.
> Q.  How did that happen?
> A.  When my father assigned this loan, I mean the PN, to the company.
> *   *   *
> Q.  Your father did that.  ***Your father assigned his personal loan to CAASA?***
> A.  ***Yes.***
> Q.  ***He did that in writing?***
> A.  ***Yes.***
> Q.  ***Do you have a copy of that writing?***
> A.  ***Yes.***
> Q.  ***Can I see it?***
> A.  ***I have no documents with me.***
> MR. QUINN:  ***Has that been produced in this case?***
> MR. MARKETOS:  ***I don't know if it has or not.  I will look for it.***
> MR. QUINN:  ***It's a rather important document.***
> MR. MARKETOS:  ***You seem to think so*** [emphasis added].[13]

On Monday, February 23, 2004, CAASA's counsel offered the original French language version of the document along with an English translation as trial exhibits, without providing a copy to counsel.  de Groote advised the court that the 1999 letter was not included in CAASA's exhibit book provided de Groote on February 20, 2004, and had never before been produced in

---

[13] Memorandum of Points and Authorities in Support of Defendant de Groote's Motion for Sanctions (June 28, 2004) at 9-10, *quoting* Deposition of Annie Aboudaram (Feb. 21, 2004) at 4, 38-40.

discovery.  Despite Mr. Marketos' statement at the February 21, 2004 deposition that he did not

know whether the assignment had been produced and his promise to look for the document, Mr.

Marketos even expressed surprise that the document was missing from the exhibit book he had

tendered to counsel for de Groote on Friday night.  Mr. Marketos then made a startling

concession on the record:  ***"It is not an assignment… .  There is no assignment."***[14]  The Court

granted de Groote's motion to strike CAASA's 1999 letter, which was Plaintiff's Exhibit 150.

CAASA neither sought reconsideration of nor appealed the trial court's exclusion of the 1999

letter.  Thereafter, CAASA made no effort to prove that Aboudaram's personal loans were

covered by the  Notes by virtue of an assignment from Aboudaram to CAASA.

    The evidence at trial showed that CAASA and Aboudaram made payments directly to de

Groote's mortgage lenders, but de Groote had no way of knowing whether the payments were

made by CAASA or Aboudaram.  de Groote had accounts with CAASA and Aboudaram, but the

Notes covered only repayment of CAASA's advances. de Groote never understood Aboudaram

to be making advances under the Notes.  de Groote testified that he repaid his balance on the

Notes.  de Groote believed that his note account was with CAASA.  CAASA and Aboudaram

never explained their bilateral financial dealings to de Groote.  Aboudaram himself testified that

money flowed back and forth so freely between him and CAASA that even he could not recall

the details:

> Q. [BY MR. MARKETOS]:  Are there any of [Salah's] charges for those services
> remaining unpaid?
> A. [BY MR. ABOUDARAM]: Unpaid by whom?  By myself?  No, I paid them,
> of course.  Mr. de Groote didn't reimburse me, but I paid them.
> Q.  Did you pay them yourself, or did your company pay them?
> A. I paid them, or my company, and then they debited my account, whatever.
> Q.  You have an account with your company?

---

[14] Trial Transcript at 13 line 7 to 14 line 9 (Feb. 23, 2004).

A.  Oh, yes.[15]

At trial, CAASA could not prove its allegation that CAASA made advances outstanding under the Notes.  Joint Stipulated Exhibit 3 shows de Groote repaid all CAASA advances on de Groote's mortgage.  Annie Aboudaram testified that Stipulation No. 3 shows that CAASA made a loan to de Groote to pay his Washington mortgage, and that de Groote fully repaid CAASA.

C.    de Groote's Motion for Judgment and CAASA's Motions to Amend and Reconsider.

When CAASA rested its case-in-chief on the Notes on February 24, 2004, de Groote moved for judgment based on the unambiguous language of the Notes requiring borrower de Groote to repay advances by lender CAASA.  de Groote argued that the New York law governing the Notes required the Court to interpret an admittedly unambiguous instrument, and that New York law proscribes amendment of an unambiguous instrument secured by real estate based on parole evidence or a course of dealing.  CAASA conceded on the record both that "interpretation of contract language is a question of law," and that the terms of the Notes did not include Aboudaram's personal advances.[16]  The Court found that CAASA also "conceded that the language of the promissory note itself is unambiguous."[17]  The Court took de Groote's motion for judgment under advisement.[18]  When CAASA concluded its rebuttal case on February 27, 2004, de Groote renewed his motion for judgment.  The Court again took it under advisement.[19]

On March 8, 2004, de Groote moved for judgment after trial.  Among other things, de Groote relied on language of the Notes, on the testimony of Aboudaram and Salah that borrower

---

[15] Trial Transcript at 29, lines 14-22 (Feb. 23, 2004).
[16] Trial Transcript at 93, lines 11-15 (Feb. 24, 2004).
[17] Id. at 98, lines 16-19.
[18] Trial Transcript at 98, line 20 to 98, line 12 (Feb. 24, 2004).
[19] Trial Transcript at 62, lines 10-14 (Feb. 27, 2004).

de Groote was required to repay advances by lender CAASA under the note, on CAASA's admission as to the falsity of its assignment claim, on Aboudaram's testimony that all outstanding advances were made by him and not by CAASA, and on CAASA's trial stipulation that de Groote had repaid in full CAASA's loans.  CAASA replied that an assignment document was now irrelevant because: (1) oral proof of assignment was sufficient; (2) CAASA did not need an assignment because a note can oblige payment of one other than the lender; and (3) CAASA's requested note reformation to make an assignment unnecessary by adding Aboudaram as a lender.[20]

After both sides had rested their cases to the jury, CAASA unsuccessfully moved "conditionally" to amend its complaint by adding Aboudaram as a plaintiff and a count based on an oral contract between Aboudaram and de Groote on Monday, March 1, 2004.[21]  On March 8, 2004, CAASA again moved to amend its complaint, this time to reform the Notes to add Aboudaram as a lender under the Notes, but not as a plaintiff and not to add an oral contract claim.[22]  CAASA's motion acknowledged that de Groote's "defense of payment is based on payments to date made by Jacques de Groote,"[23] and that the Court stated that de Groote's payment defenses include that "any debt on the promissory note was extinguished" *and* offset.[24]

---

[20] In the Reply Memorandum in Support of CAASA's Motion to Amend Complaint to Conform to Evidence (March 26, 2004) at 4.

[21] Trial Transcript at 9, line 19 to 12, line 24 (Mar. 1, 2004).  CAASA has never filed a copy of its amended complaint as required by Local Civil Rule 15.1 of the United States District Court for the District of Columbia ("Local Rule 15.1").

[22] CAASA's Motion to Amend Its Complaint to Conform to the Evidence (Mar. 8, 2004). CAASA again failed to file a copy of its amended complaint as required by Local Rule 15.1.

[23] Reply Memorandum in Support of CAASA's Motion to Amend Complaint to Conform to the Evidence (Mar. 26, 2004) at 3, n. 2.

[24] Reply Memorandum in Support of CAASA's Motion to Amend Complaint to Conform to the Evidence (Mar. 26, 2004) at 3, n. 2, citing Memorandum Opinion at 2 (May 2, 2002).

On June 7, 2004, the District Court: (1) denied CAASA's motion to amend on the grounds that de Groote had not consented to CAASA's trial of a reformation issue it had not pled; and (2) granted de Groote's motion for judgment.[25]  The Court observed in *dicta* that de Groote objected to, and CAASA agreed to exclude from evidence at trial, a grid that otherwise conceivably could had shown de Groote's implicit consent to try a reformation case.  de Groote had objected to CAASA's introduction into evidence of a grid attached to one of the Notes on the grounds that the grid was not part of the note, as dates on the grid showed it was prepared after the Notes themselves.  The Court expressly held that the Notes are unambiguous, integrated agreements obligating de Groote to pay advances by CAASA, and ruled:

> [N]o reasonable jury could have found that Aboudaram's advances to de Groote were covered by the promissory notes, which by their terms reach only advances from CAASA, as the "Lender," to de Groote.  Having found based on the stipulation of the parties that all such advances have been repaid, the Court must enter judgment for de Groote on CAASA's claim for breach of contract on the promissory notes.[26]

The Court found it was harmless error to instruct the jury to interpret the Notes based on extrinsic evidence, because the Court was entering judgment for de Groote.

On June 22, 2004, CAASA moved to alter or amend judgment.[27]  CAASA did not seek reconsideration of the exclusion of its assignment document or denial of its motions to amend its complaint, nor did CAASA appeal either issue to the D.C. Circuit.  CAASA replaced its three-year assignment claim with its new argument that it should be able to link Aboudaram's advances to the Notes with the grids CAASA agreed to exclude from evidence.  CAASA alleged, but cited no evidence, that de Groote had an ulterior motive in objecting to CAASA's grid.  In

---

[25] Slip opinion at 10, 19.
[26] Slip opinion at 19.
[27] Memorandum of Points and Authorities in Support of CAASA's Motion to Alter or, in the Alternative, to Obtain Relief from Order Granting de Groote's Motion for Judgment as a Matter of Law (June 22, 2004).

fact, de Groote properly objected that CAASA had not laid a foundation that the grid was part of the 1995 note de Groote signed. The grid depicted 1996 advances, showing the grid was prepared after the notes. CAASA voluntarily detached and excluded from evidence not only that grid, but also the grid from CAASA's 1998 note to which de Groote had not objected. CAASA argued that its pleading, attaching the Notes with grids, is in evidence and should suffice to entitle CAASA to relief from judgment. Finally, CAASA argued that de Groote was equitably and judicially estopped from defending on the basis of payment in full as stipulated by the parties. de Groote responded that CAASA has always been aware of its burden; and that de Groote's counsel expressly told CAASA's counsel, in negotiating stipulations on February 14 and 17, 2004, that de Groote insisted that the stipulation as to Aboudaram's mortgage payments contain language that "the parties did not stipulate that the payments were made by CAASA" because, in fact, Aboudaram and not CAASA made the advances. de Groote's counsel gave affidavits to which CAASA's counsel responded to the effect that "I am concerned that you are telling me that I have to prove CAASA made the advances under the notes."[28] CAASA's counsel did not dispute what de Groote's counsel stated in February 14 and 17, 2004 negotiations, but claimed that the statement attributed to CAASA's counsel was given in a different time and context.[29] CAASA's counsel had himself acknowledged, however, that "[t]he explanation given by de Groote for the requested modifications was that, as a matter of _fact_, CAASA had not advanced the same in question, Aboudaram had."[30] de Groote also argued that

---

[28] Defendant de Groote's Opposition to CAASA's Motion to Alter or Obtain Relief from Judgment (July 6, 2004) at 10-11; Exhibit 3, Declaration Stephen Sale (July 6, 2004) at 1-2, ¶¶ 7-11; Exhibit 4, Declaration of John D. Quinn at 1-2 (July 4, 2004), ¶¶ 3-8.

[29] CAASA's Reply Memorandum on Motion to Alter or Obtain Relief from Judgment (July 16, 2004) at Declaration of James L. Marketos (July 16, 2004) at 4-6, ¶¶ 6-11.

[30] CAASA's Motion to Alter or Obtain Relief from Judgment (June 22, 2004) at Declaration of James L. Marketos (June 22, 2004) at 11, ¶ 23.

CAASA's complaint was "evidence" in the case only to the extent of admissions by CAASA binding it.

D.      de Groote's Motion for Sanctions.

Besides CAASA's 1999 assignment-related letter, CAASA introduced at trial numerous other crucial documents and testimony concealed by CAASA in discovery notwithstanding compulsory orders of this Court.[31]   CAASA never produced its books of account in response to the Court's compulsory orders.[32]   At trial, CAASA represented to the Court that the books of account did not exist.  In response to de Groote's motion for sanctions, CAASA admitted that it possessed all along, and had produced to a Swiss court, the documents from CAASA's books of account that CAASA did not produce in this case and represented not to exist before the trial court.[33]   Before trial, CAASA disavowed the existence of any document showing a ceiling on de Groote's compensation account.  At trial, Aboudaram testified that a document in CAASA's files showed a cap of 1.5 million Swiss francs on de Groote's compensation.[34]   Aboudaram testified to a Post-it note in bookkeeping and discussion with his daughter of a 1.5 million Swiss franc cap.[35]

As to signature dates for the ANZ documents, CAASA had responded to de Groote's interrogatory that "de Groote signed document P 0561 in CAASA's offices on January 27, 1995,

---

[31] Order (Sept. 7, 2001)(emphasis added) at 1.

[32] District Court Case, Defendant's Motion for Evidentiary Rulings Based on Plaintiff's Failure to Grant Compelled Discovery and Other Grounds at 5-7 (Feb. 21, 2004).

[33] District Court Case, CAASA's Opposition to Sanctions (July 31, 2004) at 7 n.4, 21; at Declaration of James L. Marketos (July 21, 2004) at 2, ¶ 5; at Declaration of Annie Aboudaram (July 21, 2004) at 8, ¶ 16, n. 8; 9, ¶ 17.  See Defendant de Groote's Reply on Sanctions (Aug. 3, 2004) at 18-19.

[34] Trial Transcript at 105 line 18 to 109 line 9 (Feb. 26, 2004)(testimony of Aboudaram).

[35] Trial Transcript at 158 (Feb. 26, 2004)(testimony of Aboudaram).

and signed document P 056[]5 in CAASA's offices on February 15, 1995."[36]   At trial, Aboudaram testified that de Groote signed the documents in CAASA's Lausanne offices on January 8, 1996, stating Aboudaram was told this by the Swiss police.[37]   Ms. Aboudaram, CAASA's previously undisclosed witness, also gave new testimony that she created, and then erased, a temporary accounting file at year-end 1995 to account for the fact that the ANZ documents were not signed until after 1995.  CAASA never amended its interrogatory answer that the documents were signed in 1995, and instead surprised de Groote at trial with its undisclosed evidence of the signature dates of the ANZ documents.  In response to de Groote's consistent position that he was misled by CAASA as to the value of the Skodaexport contract, CAASA proffered for the first time at trial a letter transmitting that contract from CAASA to de Groote.   On June 28, 2004, de Groote moved for sanctions against CAASA pursuant to Fed. R. Civ. P. 37.

E.    The District Court's Decision on Reconsideration and Sanctions.

On August 31, 2004, the Court issued a Memorandum and Order denying both CAASA's motion for reconsideration and de Groote's motion for sanctions, and entering judgment for de Groote on the Notes and for CAASA on de Groote's counterclaims.  The Court indicated that it had considered the grids on the issue of finding that de Groote did not implicitly consent to CAASA's reformation case, ruling that "Aboudaram cannot recover on the promissory note" because he "is a stranger both to this case and to the plain language of the promissory notes."[38] The Court not only rejected CAASA's argument that "de Groote was somehow not entitled to demand that CAASA prove its case of entitlement to recovery on the promissory notes at the

---

[36] Plaintiff's Objections and Responses to Defendant's Second Set of Interrogatories (Jan. 15, 2002) at 5.
[37] Trial Transcript at 89, lines 8-21 (Feb. 26, 2004)(testimony of Aboudaram).
[38] Slip Op. at 3-4.

close of CAASA's evidence and afterward," but also observed that CAASA had changed its

assignment theory as follows:

> [T]he court notes that CAASA's position on the meaning of the promissory notes
> has also shifted over time.  CAASA does not argue now, as it did previously and
> for a long time, that Aboudaram had somehow assigned his claims against de
> Groote to CAASA.  That theory would make little sense in light of CAASA's
> more recent interpretation of the notes as covering Aboudaram's personal
> advances in their own right.

The Court also denied de Groote's motion for sanctions.[39]

F.      Appeals to D.C. Circuit.

CAASA appealed the District Court's decisions holding CAASA to its burden of proof to

D.C. Circuit on the grounds of: (1) post-trial and post-judgment estoppel; (2) extrinsic evidence

of CAASA's interpretation of the unambiguous Notes; (3) post-judgment argument on grids that

CAASA agreed to exclude from evidence; and (4) note enforcement costs should encompass

costs in de Groote's bankruptcy and a European criminal case against Aboudaram.  CAASA **did**

**not appeal** the Court's exclusion of the 1999 assignment document or denial of the motions to

amend.  de Groote cross-appealed denial of his sanctions motion and the jury instructions and

verdict form on his counterclaim.

G.      Proceedings in the Bankruptcy Court.

In the Lift Stay Motion, CAASA argued that "the adjudication of [the District Court

Case] will liquidate the **claims** and make the administration and reorganization of the Debtor's

affairs much simpler."  *Id.* at ¶ 18 (emphasis added).  CAASA further argued that "Plainly

resolving both sets of **claims**, and liquidating them down to a figure that can be evaluated in the

context of this [bankruptcy] proceeding is necessary before the Debtor's reorganization can be

carried out effectively."  *Id* at ¶ 19 (emphasis added).  CAASA represented that "*[w]ithout*

---

[39] Slip Op. at 6.

***knowledge of the value of CAASA's claims***, the Bankruptcy Court, De Groote, and any other interested creditors cannot possibly formulate a plan of reorganization." *Id.* at ¶ 21 (emphasis added).

The Lift Stay Order "allow[ed] the District Court to reduce to judgment the amount of CAASA's and/or the Debtor's respective ***claims*** and counterclaims [emphasis added]." Contrary to CAASA's more recent argument, the Lift Stay Order allowed CAASA to proceed on all of its claims against de Groote– not just one. Moreover, stipulated on the record at the November 3, 2004, bankruptcy court scheduling conference that CAASA has a single claim, did not add new claims or causes of action in the Amended Proof of Claim, and was merely advancing ***new theories*** to recover its sole claim. In this appeal, CAASA disavows that stipulation, and argues to the contrary that it has new claims.

The Amended Proof of Claim did not include an amended complaint in the District Court Case. Instead, CAASA's brief alleges (p. 3) that the Amended Proof of Claim "attached documentation supporting new claim theories not advanced when CAASA submitted its original proof of claim." CAASA's Opposition to De Groote's Objection to Proof of Claim (Oct. 7, 2004) at 1-2 for the first time stated CAASA's new-found "four general legal theories: (1) express written contract; (2) express oral contract; (3) implied-in-fact contract; (4) implied-in-law contract (a/k/a assumpsit for money had and received, money lent, quasi contract or unjust enrichment)… [plus estoppel by] judicial admissions…." On appeal, CAASA's brief (pp. 3-4) expanded its list to the following: "(1) express written contract (including third party beneficiary contract); (2) express oral contract; (3) implied-in-fact contract; (4) implied-in-law contract (a/k/a assumpsit for money had and received, money lent, quasi contract or unjust enrichment); (5) account stated; (6) promissory estoppel; and (7) equitable and judicial estoppel."

## ARGUMENT

I.    **CAASA STIPULATED ON THE RECORD AND THE BANKRUPTCY COURT PROPERLY HELD THAT CAASA HAS A SINGLE CLAIM.**

    A.    CAASA's New Theories Are Precluded by *Res Judicata*.

On October 7, 2004, CAASA acknowledged in its Opposition to De Groote's motion for summary judgment that CAASA has a single claim with multiple new theories of recovery of that claim.  CAASA stipulated on-the-record at the November 12, 2004, hearing in the bankruptcy court that it has a single claim.  When CAASA appealed entry of summary judgment against its claim, its brief (p. 3) again stated that its "amended proof of claim attached documentation supporting new claim theories of recovery not advanced when CAASA submitted its original proof of claim." Thus, CAASA freely admitted that it is advancing "Alternative Claim Theories" for its single claim under the Notes, and not alternative claims.

Then, inexplicably, CAASA changes course in its brief (pp. 24-25) and argues that it had multiple causes of action, that the bankruptcy court erred when it "deemed CAASA to be 'simply raising a new legal theory,'" and that "[t]his ruling was a misapplication of applicable law." CAASA's simultaneous, but irreconcilable, positions undoubtedly stem from CAASA's belated realization that its alternative theories are barred by *res judicata* because final judgment was entered against its admitted single claim in the District Court Case.

As the bankruptcy court properly held, CAASA had a single claim and was required to litigate all theories for recovery of that claim in the District Court Case:

> CAASA now attempts to pursue its amended proof of claim on theories not advanced (or allowed to be advanced) in the district court….

*    *    *

CAASA "is simply raising a new legal theory. This is precisely what is barred by *res judicata*."[40]

CAASA deliberately filed against de Groote a single count complaint based on alleged breach of the Notes. Consistent with CAASA's stipulated evidence, judgment was entered against CAASA and for de Groote on the note claims. A party "is precluded from relitigating issues that could properly have been raised in the prior litigation, as well as issues actually decided."[41] A judgment is *res judicata* on the amount owed under a note.[42] The judgment against CAASA bars its new theories of recovery.

In federal courts in the District of Columbia, "[w]hether two cases implicate the same cause of action turns on whether they share the same 'nucleus of facts.'"[43] Until entry of judgment against CAASA, it has always argued that its sole claim was for advances under the Notes, thus consistently recognizing the common nucleus of operative facts for its claim and any theories of recovery. In presenting its new theories, CAASA stipulated that it has the same single claim on which final judgment was entered against CAASA by the District Court in decisions rejecting CAASA's oppositions to de Groote's motion for judgment and motions to amend and for reconsideration. Because "a final judgment on the merits precludes the parties

---

[40] Slip Op. at 8, 10, *quoting Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004).

[41] *In re Wilcher*, 56 B.R. 428, 436 (Bankr. E.D. Ill. 1985), *citing Warren v. Mc Call*, 709 F.2d 1183, 1184 (7th Cir. 1983).

[42] "The question then is whether the amount of the debt secured by the property is the judgment amount or the amount allowed under the mortgage agreement. Is the judgment *res judicata* to the amount of the debt? Under the doctrine of *res judicata* the nature and amount of the judgment, together with all defenses that could be raised prior to judgment, are foreclosed. … As to all issues concerning the note, including the amount owed, the judgment is a final determination of those issues and res judicata applies." *In re Mitchell*, 281 B.R. 90 (Bankr. S.D. Ala. 2001), *citing In Re Clark*, 738 F.2d 869, 871 (7th Cir. 1984).

[43] *Drake v. FAA*, 291 F.3d 59, 66, 351 U.S. App. D.C. 409, 417 (2002), *quoting Page v. United States,* 729 F.2d 818, 820 (1984).

and their privies from relitigating issues that were or could have been raised in that action,"[44] and because CAASA stipulated that it wishes to relitigate the same claim based on its "new theories," CAASA's new theories of recovery for its claim are barred by *res judicata*.

CAASA alleged that it received an assignment of Aboudaram's claim against de Groote. By the purported assignment, CAASA and Aboudaram claim privity of contract as to the claim of CAASA and Aboudaram against de Groote.    Judgments apply to parties and their privies.[45] A person who controls an action, though not a party, and whose interest is represented by a party, is a privy.[46]    Therefore, Aboudaram is equally bound by de Groote's judgment against CAASA. CAASA and Aboudaram are precluded by *res judicata* from propounding, through CAASA against whose claim judgment was entered, new theories of recovery against de Groote for advances, which Aboudaram purportedly assigned to CAASA.

CAASA cites *U.S. Industries, Inc. v. Blake Const. Co*., 765 F.2d 195, 205 (1985), for the proposition that its expectation, understanding and usage would be that it had multiple claims. But CAASA cites no support in the record for its post-judgment expectation of multiple claims based on its advances claimed under its notes.   In *Blake*, the D.C. Circuit precluded an attempt "to Balkanize the cases into separate and distinct causes of action" by a party bringing an

---

[44] *Allen v. McCurry*, 449 U.S. 90, 94 (1980).

[45] *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979; *Drake v. FAA*, 291 F.3d 59, 66, 351 U.S. App. D.C. 409, 416 (D.C. 2002), *reh'g en banc denied*; *Guerrero v. Katzen*, 774 F.2d 506, 509, 249 U.S. App. D.C. 206, 209 (1985).

[46] *Lawlor v. National Screen Serv.*, 349 U.S. 322, 329 n. 19 (1955); *Jefferson School of Social Science v. Subversives Activities Control Board*, 331 F.2d 76, 83 118 U.S. App. D.C. 2, 9 (1963); *Smith v. Jenkins*, 562 A.2d 610, 615 (D.C. 1989).

indemnity claim for attorney fees after litigation of the claim giving rising to indemnity.[47]  Like the unsuccessful party in *Blake*, 765 F.2d at 209, CAASA "chose stubbornly to adhere to its litigation strategy," 765 F.2d at 209, after CAASA became aware that it could not link Aboudaram's advances to CAASA's notes, and CAASA did not move to amend until the parties had rested.  *Res judicata* thus bars CAASA's new theories.

B.    CAASA's New Theories Are Precluded by the Law of the Case.

In the bankruptcy court, de Groote also relied on the doctrine of "law of the case" as mandating entry of judgment against CAASA's claim.  On August 20, 2002, the bankruptcy court entered the Lift Stay Consent Order "to allow the District Court to reduce to judgments the amount of **CAASA's** and/or Debtor's **claims** and counterclaims [emphasis added]."  At its own request, all of "CAASA's … claims" were thus to be reduced to judgment by the Court.  Both parties thus agreed, and the bankruptcy court ruled, that CAASA's claims must be reduced to judgment in the District Court Case.  The Court's judgment dismissed CAASA's claims.  The bankruptcy court and the parties were required to respect the Court's judgment.

---

[47] The D.C. Circuit ruled against a party with claims that were arguably much more separate and distinct than CAASA's single claim for advances under its notes.

> We are unpersuaded by USI's attempt, in effect, to Balkanize the cases into separate and distinct causes of action. As we have already seen, the complaint in the Subcontract case asserted not only a claim against Blake under the subcontract provision of the Joint Venture Agreement, but also claims on behalf of two of USI's subcontractors and a claim against Blake and the Messrs. Bender under the Contract of Indemnity.
>
> *    *    *
>
> The doctrine of res judicata encourages a plaintiff to mount in a single action its claims against the party which it has haled into court.  In our system, it is the province of the courts, not a single party acting unilaterally, to determine whether issues present in a case might better be separated out for later trial.  See Fed. R. Civ. P. 42(b).  A party who makes a unilateral, unauthorized determination not to go forward on issues that were properly in the case does so at its own peril.

*U.S. Industries, Inc. v. Blake Const. Co.*, 765 F.2d 195, 206, 209-210 (1985).

Almost three months after entry of the order denying CAASA's claims in this Court, CAASA filed the Amended Proof of Claim and then argued numerous new theories. CAASA's new **theories** relate to the **single claim** CAASA filed, tried, and lost in this Court. In the Lift Stay Motion and Lift Stay Order, CAASA did not reserve any "theories" for resolution in the bankruptcy court, nor did de Groote consent to CAASA reserving any theories for determination in this court. The Proof of Claim likewise asserted breach of the Notes as CAASA's only theory of recovery of alleged indebtedness by de Groote to CAASA. CAASA attached to the Proof of Claim the Notes upon which judgment was entered against CAASA in the Court. Neither the Proof of Claim nor the complaint asserted CAASA's new theories raised for the first time after it filed the Amended Proof of Claim.

CAASA twice moved to amend the complaint to add new theories of recovery after the District Court trial concluded. First, in its oral motion to amend three days after it rested its case, CAASA sought to amend to add Aboudaram as a party and to assert that he had an oral contract with de Groote. In its second written motion to amend nine days later, CAASA again sought to reform the Notes to make Aboudaram a "lender," but not to add Aboudaram as a party. CAASA argued new theories of recovery a third time in requesting reconsideration of the judgment entered against it. Each time, the District Court correctly rejected CAASA's argument that de Groote wrongfully "surprised" CAASA with a "new defense" at trial. As the District Court noted, CAASA simply failed to meet its burden of proof at trial.

Following its Amended Proof of Claim, CAASA attempted a fourth time in the bankruptcy court to set aside the Court's judgment on grounds of wrongful surprise. CAASA's manic mantra, that de Groote "surprised" CAASA by requiring it to meet its burden of proof at trial, defies credulity. The District Court rejected CAASA's new theory three times, and the

bankruptcy court respected this Court's earlier rulings. de Groote did not "surprise" CAASA with a "new defense" or any other matter. CAASA had to prove that de Groote owed CAASA advances under the Notes. CAASA could not meet its burden because, as CAASA itself insisted on stipulating, de Groote had repaid CAASA's loan. de Groote moved for judgment at the close of *CAASA's case-in-chief* on the grounds that CAASA had not met its burden of proof. de Groote's motion was in the nature of a demurrer or general denial of indebtedness to CAASA, and not a defense. de Groote joined his defenses only in his own case which followed CAASA's case-in-chief and de Groote's Motion for Judgment.

The Lift Stay Order establishes the law of this case that this Court is the tribunal that should adjudicate CAASA's claim. The Lift Stay Order established the "law of the case" that the District Court would reduce CAASA's claims to judgment.[48] CAASA is bound by the Lift Stay Order as the law of the case requiring that CAASA's *claims* be reduced to judgment in this Court.

A matter decided by an appellate court should not be revisited.[49]  This Court is the appellate court for the bankruptcy court, which could not reconsider issues already decided by this Court.[50]  Because CAASA's lone claim theory has been tried by the Court, and because

---

[48]  The applicable law of the case doctrine is as follows: "the *same* issue presented a second time in the *same* case in the *same* court should lead to the *same* result." *Horn v. Department of the Army*, 284 F. Supp.2d 1, 8 (D.D.C. 2003, *quoting LaShawn A. v. Barry*, 87 F.3d 1389, 1393 (D.C.Cir.1996) (*en banc*) (emphasis in original).

[49] The rule barring revisiting matters already decided by an appellate court is "[S]he asserted as much on her first appeal. … We cannot consider this claim anew." *Wallace v. Skadden, Arps, Slate, Meacher & Flom, LLP*, 362 F.3d 810, 813, 360 U.S. App. D.C. 368, 371 (2004), *citing United States v. Alaw*, 327 F.3d 1217, 1220 (2003), for the proposition that the "law of case doctrine bars review of claims decided in earlier appeal".

[50] [T]he "mandate rule," an application of the "law of the case" doctrine, states that a district court is bound by the mandate of a federal appellate court and generally may not reconsider issues decided on a previous appeal. *United States ex rel. Dept. of Labor v. Insurance Co. of North America*, 131 F.3d 1037, 1041, 327 U.S. App. D.C. 383, 387 (1997), *citing Maggard v.*

CAASA argued "new theories" of recovery of that claim in twice seeking to amend its complaint and again in seeking reconsideration, the Court's decisions rejecting CAASA's new theories and entering judgment against its claim was the law of the case barring CAASA's new theories before the bankruptcy court.

## II.    CAASA SELECTED AN ASSIGNMENT AS THE EVIDENCE TO MEET ITS BURDEN OF PROOF.

CAASA argues that it could not possibly have anticipated that it would need to meet its burden of proof at trial to demonstrate that CAASA made the advances it claimed under the Notes. CAASA's post-judgment position is belied by its three-year claim of an assignment as CAASA's evidence that Aboudaram's advances were made under the Notes. de Groote never excused CAASA from meeting its burden of proof under the Notes. Even if de Groote had made such a concession, then CAASA would not have relied on the assignment claim. CAASA's consistent reliance on assignment evidence demonstrates that de Groote never released CAASA from its burden of proof.

CAASA now calls its claim of assignment evidence a "red herring," but for three years through opening statements to the jury CAASA announced that an assignment was the evidence to meet its burden of proof. CAASA did not plead its claimed assignment evidence in its complaint, but pled an assignment defensively in reply to the counterclaims and stated the assignment in discovery and in its brief as evidence CAASA would prove at trial. CAASA's innumerable representations about its assignment evidence, many of which CAASA witnesses made under oath, include the following:

---

*O'Connell*, 703 F.2d 1284, 1289 (1983; *City of Cleveland v. Federal Power Comm'n*, 561 F.2d 344, 348 (1977); *accord National Wildlife Federation v. Burford*, 878 F.2d 422, 432, 278 U.S. App. D.C. 320, 330 (1989), *quoting* 1B MOORE'S FEDERAL PRACTICE ¶ 0.404[1] at 119 ("[w]hen a case is appealed and remanded, the decision of the appellate court establishes the law of the case and it *must* be followed by the trial court on remand") (emphasis in original).

- In 2001, CAASA stated the following in interrogatory answer: "CAASA further states that between April 1994 and December 1995, Aboudaram, individually, made the following payments to Defendant's mortgage company in an effort to help Defendant, who had defaulted on his mortgage payments:

  | | | |
  |---|---|---|
  | (1) | April 14, 1994 | $149,113.53 |
  | (2) | June 14, 1994 | $  9,151.00 |
  | (3) | December 21, 1994 | $  9,000.00 |
  | (4) | February 17, 1995 | $ 10,000.00 |
  | (5) | May 24, 1995 | $ 35,508.07 |
  | (6) | December 12, 1995 | $ 39,650.75 |
  | | Total | $252,423.35 |

  ***Aboudaram later assigned to CAASA his entitlement to repayment*** of these amounts (along with interest in the amount of $25,219.14), ***resulting in the execution of the promissory notes*** underlying CAASA's Amended Complaint for Compensatory Damages." de Groote's Reply to CAASA's Opposition to Summary Judgment (Dec. 9, 2004), Ex. 8, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories (July 23, 2001) at 12-13, interrogatory response 10 (emphasis added).

- ***CAASA pled*** in Plaintiff's Reply to Defendant's Counterclaims (April 24, 2001) at 4, ¶ 14; ***and*** Plaintiff's First Amended Reply to Defendant's First Amended Counterclaims (July 9, 2001) at 4, ¶ 14, that ***Aboudaram's personal loans were assigned to CAASA through the Notes themselves***.

- In referring to the personal loan from Aboudaram to de Groote, CAASA indicated in interrogatory answers that "***Aboudaram assigned the loans to CAASA***." Debtor's Reply to CAASA's Opposition to Summary Judgment (Dec. 9, 2004), Ex. 9, Plaintiff's Third Supplemental Responses to Defendant's First Set of Interrogatories (Feb. 11, 2002) at 23, response 2 (emphasis added).

- In the pretrial statement, CAASA again indicated that the assignment *preceded* the 1995 and 1998 notes, by stating that "***Aboudaram assigned his claims against de Groote to CAASA, in whose favor de Groote made the promissory notes***." CAASA Pretrial Statement (Jan. 26, 2003) at 8.

- ***Annie Aboudaram testified that Aboudaram assigned the loan to CAASA in 1999 by a document***. Deposition of Annie Aboudaram at 43-44 (Feb. 21, 2004).

- At trial, Mr. Marketos represented in his opening statement to the jury that ***Aboudaram formally assigned to CAASA the loan that Aboudaram had made to de Groote***.

- During trial, CAASA made the following assignment argument in a brief: "Here, the evidence is that ***Aboudaram made advances to de Groote and assigned to***

*CAASA his right to recover them.  By this assignment, his rights became CAASA's.  Among the rights CAASA acquired was the right to be deemed, within the meaning of the promissory notes, the person who made the advances.* By such a merger of rights, the assignment fulfilled what the parties intended when the notes were made." CAASA's Memorandum on Issues Relating to Interpretation of the Promissory Notes (dated Feb. 10, 2004; filed on or about Feb. 26, 2004) at 7 (emphasis added).

- In support of its second post-trial motion to amend, CAASA argued that "de Groote's lengthy discussion of the assignment document is irrelevant.  First, *CAASA does not need a document to prove an assignment.  Oral proof is sufficient*."  Reply Memorandum in Support of CAASA's Motion to Amend Complaint to Conform to the Evidence (Mar. 26, 2004) at 4.  CAASA changed course and argued that, after more than three years of litigation, "an assignment is unnecessary to effect the requested reformation of the promissory notes," *id.*, on the premise that *CAASA would not need to prove an assignment if the notes were "reformed" post-trial to define "advances" as those made by Alain Aboudaram*, rather than those made by CAASA as expressly stated in the notes. Finally, CAASA admitted that it had always claimed an assignment. "Undercutting de Groote's claim of prejudice is his knowledge—*from literally the beginning of this case*—that *CAASA claimed an assignment*."  *Id.* at 5 (emphasis added).

In the bankruptcy court, CAASA argued that this Court did not preclude CAASA from pursuing assignment theories beyond "that the notes embodied such an assignment."  *Id.* at 4. The bankruptcy court properly found that this Court precluded CAASA from introducing certain evidence of an assignment due to "CAASA's conduct in the case,"[51] and observed that CAASA itself "never moved to conform its complaint to the evidence to include a count for a claim based

---

[51] At the deposition just before trial of this case, Annie Aboudaram, Aboudaram's daughter and an employee of CAASA, testified that, sometime in 1998 or 1999, Aboudaram assigned his right to collect de Groote's repayment of his personal loan to CAASA.  Tr. Feb. 23, 2004, at 7.  While no formal proof of assignment was produced, CAASA sought to introduce into evidence a letter from Aboudaram to CAASA instructing the company to undertake collection efforts on de Groote's account.  The Court excluded this letter from evidence presented at trial because it had been mentioned for the first time in CAASA's opening statement and had at no point been produced in discovery, although it was plainly within the scope of discovery requests and its existence had been known for some weeks before trial.  *Id.* at 10-11.  Annie Aboudaram was forbidden from testifying at trial as to any assignment or similar transaction between CAASA and Aboudaram.  *Id.* at 31.  District Court Case, Memorandum Opinion (June 7, 2004) at 6-7, n.9.

on assignment of Aboudaram's claims to CAASA independent of the promissory notes themselves." *Id.* at 4-5.

CAASA argues it could not possibly have anticipated the need to plead other theories of recovery for its stipulated single claim. CAASA's claim was the subject an eight-day trial here resulting in the entry of judgment denying that claim. CAASA's pretrial demanded $1.8 million in attorney fees and other enforcement costs, an amount that presumably would have allowed CAASA to try every conceivable theory of recovery for multiple plaintiffs if CAASA had chosen to do so. As the bankruptcy court found, however, CAASA could not recover those fees under a theory of recovery for Aboudaram, because enforcement costs and security in de Groote's house were available only under the Notes. Slip Op. at 5. Thus, during trial, CAASA was not willing to risk presenting its new theories that could bar it from legal fees and other enforcement expenses, interest and security in de Groote's townhouse.

CAASA's counsel acknowledges pretrial discussions during which de Groote's counsel advised that the outstanding advances were not made by CAASA, but were made by Aboudaram. CAASA was certainly on notice from those discussions that CAASA had to prove that Aboudaram's advances were under the Notes. CAASA certainly was on notice that it had to meet its burden of proof on the dispositive fact that Aboudaram's advances were made under the Notes when de Groote moved for judgment under Fed. R. Civ. P. 50(a) after CAASA rested is case-in-chief. At that point, CAASA was, as a matter of law, "'apprised of the materiality of the dispositive fact and … afforded an opportunity to present any available evidence bearing on that fact.'" *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (2004), *quoting* Fed. R. Civ. P. 50 (Advisory Committee Note on the 1991 Amendment)*; see also Waters v. Youn*g, 100 F.3d 1437, 1441 (9th Cir. 1996). Indeed, "a Rule 50(a) motion gives the court and the nonmoving

party notice of any deficiencies in the nonmoving party's case at a time when such deficiencies can still be corrected." *Id.*, *citing* Fed.R.Civ.P. 50 (Advisory Committee Note on the 1991 Amendment); 9 James Wm. Moore et al., Moore's Federal Practice § 50.02 (3d ed.2004). In response to a Rule 50 motion, "a party who has rested may move to reopen her case in order to cure an evidentiary deficiency identified in a Rule 50(a) motion." *Id.*, *citing Garcia v. Woman's Hosp. of Tex.*, 97 F.3d 810, 813-14 (5th Cir.1996).

Thus, CAASA had the duty under Rule 50 as applied in *Teneyck* to present its new theories and supporting evidence in response to de Groote's motion while the deficiencies in CAASA's note case could "still be corrected." CAASA's new theories, if successful, could have limited CAASA's recovery to $190,000 in Aboudaram's principal advances that remained outstanding, rather than the $2.4 million in principal, interest and note enforcement costs through December 31, 2004, that CAASA sought at trial. Therefore, CAASA clung stubbornly to its litigation strategy of seeking Aboudaram's advances under CAASA's notes. In response to de Groote's Rule 50 motion, CAASA failed to present its new theories, to reopen its case-in-chief or to present further evidence on its theory of recovery that Aboudaram's advances were made under the Notes or on its as yet unrevealed new theories. Instead, CAASA was content to rely on legal argument of CAASA's theory of recovery of Aboudaram's advances under the Notes in the single-minded pursuit of its $2.4 million claim.

Under *Teneyck*, CAASA had a legal duty to present all of its theories of recovery and supporting evidence, at the very latest, in response to de Groote's Rule 50(a) motion. CAASA's legal duty under *Teneyck* negates CAASA's argument that it had no actual notice of the need to present all of its theories of recovery and supporting evidence at the time of de Groote's Rule 50 motion. Moreover, CAASA's claimed lack of notice is contradicted by its March 1 and 8, 2004,

motions to amend even before the Court granted de Groote's motion for judgment. CAASA had the same knowledge on February 24, 2004, that it had on March 1 and 8, 2004. On February 24, 2004, CAASA clearly could have argued and sought leave to amend to add its new theories as it did in its March 1, 2004 oral motion to amend to add Aboudaram as a party along with an oral contract theory, and its March 8, 2004 written motion to reform the notes to make Aboudaram a lender. The fact that CAASA did not state in writing its oral motion as to Aboudaram and his alleged oral contract demonstrates that CAASA would not accept possible recovery of $190,000 in Aboudaram's principal advances that remained outstanding, but instead elected to gamble on recovery of $2.4 million in principal, interest and note enforcement costs.

Thus, before resting its case at trial, CAASA had every opportunity to plead and to try other theories of recovery. Instead, CAASA chose to plead and to try its claim based on a theory of breach of the Notes. CAASA selected a purported assignment as its means to the Notes to Aboudaram's advances. When CAASA's purported assignment was excluded and de Groote moved for judgment, CAASA still did not revise its strategy. Three days after CAASA had rested its case to the jury, CAASA sought to add Aboudaram as a new party and plead an oral contract as a new theory of recovery. As the Court properly held, CAASA could not add parties and theories after the case had already been tried to the jury except with de Groote's consent. de Groote neither consented to CAASA's amendments nor to trial of its new theories by a new party.

### III.    CAASA IS NOT ENTITLED TO RELIEF UNDER *THROCKMORTON* BECAUSE CAASA ALONE COMMITTED FRAUD IN TRIAL OF THIS CASE.

CAASA was the only party proffering evidence at trial it had fraudulently concealed in discovery.  As its alleged "fraud," CAASA says that when de Groote admitted CAASA made advances under the Notes, CAASA understood that de Groote actually meant that Aboudaram made advances under the Notes.  CAASA alleges that de Groote "defrauded" CAASA when de Groote did not disabuse CAASA of its misunderstanding that an admission as to CAASA was not an admission as to Aboudaram.   It was not "fraud" to hold CAASA to its burden of proof.  As this Court and the bankruptcy court found, de Groote was entitled to hold CAASA to its burden of proof.

Because CAASA has new, multiple theories for its single note claim, it was never "utterly impracticable to join" theories to its original theory, so CAASA's reliance on *U.S. Industries, Inc. v. Blake Const. Co.*, 765 F.2d 195, 205 (1985), is misplaced.  Similarly, CAASA cannot cite any rationale stated in *United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878) to deny application of *res judicata* here.  CAASA acknowledges that *Throckmorton* applied to frauds extrinsic or collateral to the trial.  CAASA argues that de Groote's "fraud" was "intrinsic" by not telling CAASA that it had to prove that Aboudaram's advances were made by CAASA under language of the Notes CAASA drafted and stipulated to be unambiguous.  CAASA cannot be permitted to attack the Court's judgment collaterally based on *Throckmorton*.

Like any Rule 50 movant, de Groote identified facts dispositive of CAASA's claim.  Under *Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149 (2004), CAASA was then required to present all countervailing theories and evidence.  CAASA instead continued to seek $2.4 million secured by de Groote's home rather than Aboudaram's $190,000 in outstanding unsecured principal advances to try to obtain a huge windfall.

**IV.    CAASA HAD A FULL AND FAIR OPPORTUNITY TO TRY ALL OF ITS NEW THEORIES OF RECOVERY.**

CAASA states that its decision to proceed exclusively on a single-count breach of contract theory was dictated by its own convenience. "[N]otes and deeds of trust are used as convenient written evidence of underlying debt and security therefore and are intended to provide summary judicial and non-judicial enforcement mechanisms, obviating the need for a complex, multi-count complaint embracing every conceivable contractual and quasi-contractual theory of recovery pertaining to the underlying debt [p. 26]." CAASA's extreme litigiousness in this case, resulting in its claim here for $1.8 million in enforcement costs through 2003 and untold additional amounts since then, demonstrates that CAASA's motivation is not mere convenience. The real purpose behind CAASA's theory, as the bankruptcy court found, was potential award of attorney fees, other enforcement costs and security in de Groote's home (as well as interest). Thus, CAASA clung stubbornly to its theory in the face of de Groote's Rule 50 motion to seek a $2.4 million windfall. In any event, CAASA's selection of its lone theory, that CAASA chose not to vary until three days after both sides rested at trial, was a litigation strategy, not fraud by de Groote.

The bankruptcy court correctly found that CAASA could have pursued all of its theories in the District Court Case because CAASA in fact twice tried to amend its complaint, after resting at trial, to add Aboudaram as a party-plaintiff based on an oral contract claim and to reform the notes. Slip Op. at 11.

CAASA argues that its constitutional due process rights were violated when it was not allowed to add theories of recovery in the bankruptcy court. CAASA fails to demonstrate any due process rights due to it as a Swiss corporation under the United States Constitution. In no event was CAASA denied constitutional rights when the bankruptcy court rejected CAASA's

new theories presented six months after trial and three months after judgment in this Court. The

bankruptcy court properly rejected CAASA's surprise argument.

> The promissory notes on their face are limited to amounts advanced by CAASA, and CAASA obviously needed a concession by de Groote or some other basis for having the notes extend to advances by Aboudaram. Through discovery in the district court, CAASA should have been able to discover that de Groote was not willing to concede that the notes covered advances by Aboudaram, and could have sought then to amend the complaint. Amendments to a complaint before trial are liberally granted, particularly when necessary to avoid the type of injustice that CAASA claims occurred here [Slip Op. at 11].

The bankruptcy court ruled that CAASA could have tried its new theories in this Court.

> Those theories could have been advanced in the district court if CAASA had:
>
> - not placed reliance solely on the promissory notes that facially dealt with advances from CAASA,
> - timely sought to assert a claim based on the alleged assignment by Aboudaram (and made timely disclosure of Aboudaram's daughter's knowledge regarding the alleged assignment from Aboudaram),
> - not stipulated to exclusion of the grid from the promissory notes received in evidence, and
> - sought to amend its complaint before trial to assert an oral contract theory it sought to add only in the midst of trial and a reformation count it belatedly attempted to assert only after trial [Slip Op. 10-11].

The bankruptcy court disposed of CAASA's fraudulent surprise argument, stating "In any

event, the district court undoubtedly viewed CAASA's unfair surprise arguments as meritless

because CAASA could have discovered de Groote's position through careful discovery, and I

agree with their assessment." [Slip Op. 13 at n. 4]. CAASA did not take the above simple

litigation steps, even while seeking to charge de Groote with pre-2004 attorney fees and other

enforcement costs of $1.8 million, due to its single-minded pursuit of its note theory in seeking a

total claim of $2.4 million and security on de Groote's home, rather than only $190,000 in

outstanding principal advances by Aboudaram.

Ironically, CAASA claims a denial of due process, yet it continues to act consistently with due process. CAASA failed to file an amended complaint or producing evidence giving de Groote notice of its new theories. But even if CAASA could cite such new evidence, it would not be a defense to *res judicata*.[52] Therefore, CAASA's arguments of "surprise" from a "new defense at trial" and of "newly discovered theories of recovery" cannot shield CAASA from the application of *res judicata*.

This Court properly rejected CAASA's new post-trial theories, and the bankruptcy court could not reverse the Court many months later. The D.C. Circuit has strictly limited post-trial amendments of complaints. In *United States v. Ideal Elec. Sec. Co.,* 81 F.3d 240, 245-48, 317 U.S. App. D.C. 145, 150-53 (1996), it was held to be an abuse of discretion to allow post-trial amendment of a complaint to add counts without notice to or consent of defendant. Similarly, in *National Assoc. of Life Underwriter v. Commissioner of Internal Revenue*, 30 F.3d 1526, 1531, 308 U.S. App. D.C. 159, 164 (1994), it was reversible error to decide the case on an issue first introduced by post-trial brief. In *Yager v. Carey*, 910 F. Supp. 704, 732 (D.D.C. 1995), this court applied D.C. Circuit precedent by denying a motion to amend where movants delayed four months in seeking leave. CAASA has not even sought to amend its complaint in this Court to add its instant theories. It likewise would have been reversible error for the bankruptcy court to allow CAASA to add these claim theories two years after its Proof of Claim and the Lift Stay Order, and six months after trial in this Court.

---

[52] "[W]e note that newly discovered evidence normally does not prevent the application of *res judicata*. Exceptions to this general principle occur when evidence is either fraudulently concealed or when it could not have been discovered with due diligence." *Guerrero v. Katzen*, 774 F.2d 506, 508, 249 U.S. App. D.C. 206, 208 (1985). CAASA does not contend de Groote concealed evidence, nor did he do so. CAASA baldly alleges that de Groote concealed his intent to hold CAASA to its burden of proof.

## V.    CAASA'S ARGUMENT OF CALIFORNIA STATE PRECEDENT IS DEVOID OF MERIT.

CAASA argues that precedent from state courts in California should be applied in determining the *res judicata* effect of this Court's entry of judgment against CAASA's note claim.   The bankruptcy court, at Slip Op. 9, properly relied on governing precedent of the D.C. Circuit for the proposition that the "preclusive effect of federal court litigation is a question of federal law." *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1170, 359 U.S. App. D.C. 22 (2003), *citing* 17 Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Fed. Prac. & Proc. § 4226, at n.10 (2d ed. 1988).   CAASA's appeal is governed by D.C. Circuit and other applicable federal precedent.

Moreover, the California state cases refer to an estoppel, which is an equitable defense that is barred by "unclean hands."   CAASA is barred from estoppel by its own "unclean hands." CAASA withheld until trial the Alleged Assignment, the compensation ceiling document, its books of account, the transmittal letter for the Skodaexport contract, the identity of key witness, Annie Aboudaram, as a person with knowledge, and the signature dates of key documents. CAASA also has twice been found in contempt by the bankruptcy court for violating the automatic stay.   The D.C. Circuit has ruled that "unclean hands" bar an equitable defense.

> Ordinarily, one thinks of the doctrine of unclean hands as the sin of the plaintiff he who "comes to court with unclean hands."   But the doctrine can also apply when the plaintiff establishes a right at law and the defendant attempts to interpose a defense which, like the defense of illegality, is overlaid with equitable considerations.

*Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302, 1312 n. 11 (1980).   Thus, CAASA's estoppels, relating not only to *res judicata*, but also to judicial, equitable and by pleading, are barred by CAASA's own unclean hands.

## **CONCLUSION**

In this Court, the bankruptcy court and the D.C. Circuit, CAASA seeks relief from its failure to meet its burden of proof.  Based on its "convenient" single-count complaint for breach of contract, CAASA pursued a litigation strategy of seeking a total claim of $2.4 million, including attorney fees, other enforcement costs, interest and security on de Groote's home, rather than an unsecured claim of $190,000 for outstanding principal advances by Aboudaram. CAASA clung stubbornly to its trial strategy even when confronted by de Groote's Rule 50 motion for judgment.  In response to de Groote's motion, CAASA propounded neither new theories nor new evidence, but only legal argument continuing to stake its entire claim on its theory of recovery that Aboudaram's advances were made under the Notes.

When CAASA's single-minded trial strategy went awry, CAASA blamed de Groote for its predicament.  After trial, CAASA argued that, by admitting that CAASA made advances to de Groote under the Notes, de Groote really meant to admit that Aboudaram was making those advances under the Notes.  This Court and the bankruptcy court rejected CAASA's ploy, which does not withstand scrutiny.  If CAASA really wanted to know if de Groote meant to admit that Aboudaram rather than CAASA was making advances under the Notes, CAASA could have simply asked that question.  CAASA has not cited any questions that it posed to de Groote, or any answer from de Groote that plausibly shows that de Groote meant to admit that Aboudaram rather than CAASA was making those advances.

Conversely, de Groote pled payment in full as his first and foremost defense, denied CAASA's allegation that he had made only partial payment, and stated, as a material fact in response to CAASA's motion for summary judgment, that CAASA would have to prove the amount of advances and other charges it claimed were ostensibly covered by the Notes.  CAASA

admitted that de Groote stated in negotiating stipulations the week before trial that he would require the stipulation to state that de Groote did not stipulate that CAASA made the outstanding advances because, in fact, Aboudaram had made those advances.

CAASA had every opportunity to present its new theories and any supporting evidence before trial and during trial in response to de Groote's Rule 50 motion. CAASA instead decided to "stand pat" by seeking its total claim of $2.4 million secured by de Groote's home, rather than by advancing new theories that could limit it to Aboudaram's unsecured outstanding principal advances of $190,000. Only after trial did CAASA decide to "hedge its bet" by seeking to amend to add Aboudaram as a party-plaintiff and an oral contract claim for his outstanding advances. Because both parties had rested their cases to the jury, CAASA's new theory came too late in the game to be fairly considered. When CAASA again moved to amend a week later, it abandoned its oral contract theory seeking Aboudaram's unsecured advances. CAASA then returned to its strategy of risking all on a $2.4 million claim secured by de Groote's home by seeking to amend to add a count to reform the notes by defining "lender" to include Aboudaram as well. This motion was even more untimely, and this Court properly denied it.

Undaunted, six months after trial, CAASA filed in the bankruptcy court the Amended Proof of Claim, which asserted post-judgment theories. CAASA again refuses to take responsibility for its high-stakes, high-risk litigation strategy that went awry, and blames de Groote for the shortcomings of CAASA's strategy. CAASA engaged in fraudulent surprises at trial. de Groote simply held CAASA to its burden of proof. Thus, the bankruptcy court properly found CAASA's claim and new theories barred by *res judicata*. The law of the case doctrine also bars relitigation of CAASA's claim based on new theories. The bankruptcy court also properly applied D.C. Circuit precedent governing *res judicata* and rejected inapposite California

state precedent.  The bankruptcy court properly sustained the Objection to Claim on summary judgment.

WHEREFORE, Appellee, Jacques de Groote, requests that this Court affirm the decision of the bankruptcy court entering judgment against CAASA's claims and award de Groote costs of this appeal and such other relief as just and equitable.

PALEY, ROTHMAN, GOLDSTEIN,
  ROSENBERG, EIG & COOPER, CHTD.     SALE & QUINN, P.C.


By:_____/s/____Alan D. Eisler_____   By:____/s/__Stephen Sale
  Wendelin I. Lipp, Bar No. 348219     Stephen Sale, Bar No. 942243
  Alan D. Eisler, Bar No. 435054      910 Sixteenth Street, N.W.
  4800 Hampden Lane          Fifth Floor
  Seventh Floor             Washington, DC  20006
  Bethesda, MD  20814        (202) 833-4170
  (301) 656-7603           Special Counsel for Appellee
  Counsel for Appellee Jacques de Groote  Jacques de Groote


July 18, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 18th of July, 2005, copies of Appellee's Brief were sent by first class mail, postage prepaid, to:

James L. Marketos, Esquire
Berliner, Corcoran & Rowe, LLP
1101 17th Street, N.W., Suite 1100
Washington, D.C.  20036

Jacques de Groote
1675 34th Street, N.W.
Washington, D.C.  20007

Office of the U.S. Trustee
115 S. Union Street
Suite 210
Alexandria, VA 22314


 /s/     Alan D. Eisler
Alan D. Eisler