IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSEIL ALAIN ABOUDARAM, S.A. ) | |
| ) | |
| Appellant, ) | Case No. 1:05-CV-00988 (RMC) |
| ) | |
| v. ) | |
| ) | |
| JACQUES de GROOTE, ) | |
| ) | |
| Appellee. ) | |
| _____) | |

**MEMORANDUM IN OPPOSITION TO APPELLANT'S MOTION**
**TO STRIKE APPEARANCE OF SALE & QUINN, P.C.**

Appelle, Jacques de Groote ("**Appellee**" or "**Debtor**"), by counsel, opposes Appellant, Conseil Alain Aboudaram, S.A.'s ("**CAASA**") Motion to Strike Appearance of Stephen Sale, Esq., John D. Quinn, Esq., and the Law Firm of Sale & Quinn, P.C. ("**Motion to Strike**"), and states as follows:

BACKGROUND

1. On January 3, 2001, CAASA filed a single-count Complaint ("**Complaint**") against the Debtor in the United States District Court for the District of Columbia ("**District Court**"), Case No. 1:01CV00006 (the "**District Court Case**"), in which CAASA sought a judgment of $463,055.60, plus fees and costs against the Debtor for amounts allegedly due under two promissory notes that Debtor executed in favor of CAASA. The Debtor disputed CAASA's claims and asserted various counterclaims against CAASA.

2. The Debtor retained S&Q to defend him in the District Court Case.

3. On May 14, 2002, the Debtor filed a voluntary Chapter 11 bankruptcy petition ("**Bankruptcy Case**") in the United States Bankruptcy Court for the District of

Columbia ("**Bankruptcy Court**"), Case No. 02-00981 which automatically stayed the District Court Case.

4. On May 15, 2002, the Debtor filed an application to employ Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered ("**Paley Rothman**") as counsel in the Bankruptcy Case.

5. On June 20, 2002, the Debtor filed an Application to Employ Special Counsel ("**Employment Application**") in which the Debtor sought approval to employ S&Q as special counsel in the District Court Case.

6. On June 21, 2002, the Bankruptcy Court entered an order authorizing the Debtor to employ Paley Rothman as counsel in the Bankruptcy Case.

7. On July 1, 2002, CAASA filed an Opposition to Debtor-in-Possession's Application to Employ Special Counsel ("**Opposition**"), which alleged that S&Q held an adverse interest to the Debtor and its employment was not in the best interests of the bankruptcy estate.

8. On July 10, 2002, the Bankruptcy Court entered a Decision re Application to Employ Special Counsel ("**Decision**") and Order Approving Employment of Special Counsel ("**Employment Order**"), which overruled CAASA's objections and authorized the Debtor to employ S&Q as special counsel.

9. On July 12, 2002, CAASA filed a motion for relief from automatic stay to permit the District Court Case to proceed ("**Lift Stay Motion**").  On August 20, 2002, the court entered a Consent Order Modifying Automatic ("**Lift Stay Order**") that allowed "the District Court to reduce to judgment the amount of CAASA's and/or the Debtor's respective claims and counterclaims."

10. In order to limit the expense of the District Court case, Paley Rothman did not attend materially participate in the District Court Case, or attend the nearly week long trial.

11. The District Court Case ultimately went to trial on February 20, 2004. On March 2, 2004, the jury returned a verdict in favor of CAASA, finding that the Debtor had defaulted in payment of the two promissory notes and that CAASA was entitled to $536,263.55 in damages. The jury rejected the Debtor's counterclaims.

12. Because the jury's verdict awarded CAASA sums that CAASA's principal, Alain Aboudaram ("**Aboudaram**") personally (rather than CAASA) claimed to have advanced to the Debtor, CAASA sought to amend the Complaint. At trial, CAASA made an oral motion to add Aboudaram as a plaintiff and a count for breach of an oral contract between the Debtor and Aboudaram. CAASA subsequently filed a written Motion to Amend Complaint to Conform to Evidence at Trial ("**Second Motion to Amend**") which sought to reform the Notes to include Aboudaram's advances as advances by Lender (CAASA) under the Notes.

13. On March 8, 2004, the Debtor renewed in writing his motion for judgment as a matter of law on the grounds that the promissory notes did not encompass personal debts owed to Aboudaram ("**Motion for Judgment**").

14. On June 7, 2004, the District Court issued a Memorandum Opinion and an Order ("**Order**") denying the Second Motion to Amend and granting the Debtor's Motion for Judgment against CAASA's claims. The District Court ruled that interpretation of the notes, which CAASA stipulated were ***unambiguous***, was a matter of law for decision by the District Court, that the jury should not have been instructed to

3

interpret the notes in light of the parties' subsequent conduct and course of performance, and that the instruction was harmless error due to the District Court's entry of judgment for the Debtor.

15. As the District Court made clear in the Order, "judgment is entered for de Groote on CAASA's claims under the promissory notes."

16. On June 22, 2004, CAASA filed a motion for reconsideration of the Order ("**Motion for Reconsideration**"), arguing for a third time to the District Court that: (a) the Debtor wrongfully surprised CAASA at trial (by requiring CAASA to meet its burden of proof); (b) CAASA should be allowed for Aboudaram's benefit to amend and relate back the Complaint to its filing date three and one-half years earlier.

17. On August 31, 2004, the District Court denied the Motion for Reconsideration ("**Order Denying Reconsideration**").

18. On September 30, 2004, CAASA filed a notice of appeal of the Order and Order Denying Reconsideration to the United States Court of Appeals for the District of Columbia Circuit ("**Circuit Court Appeal**"). Notwithstanding CAASA's Circuit Court Appeal, the District Court judgment is final.

19. Despite the Order and Order Denying Reconsideration, CAASA continued to contend that it had a claim against the Debtor. In fact, on August 27, 2004, CAASA amended its Proof of Claim ("**Amended Proof of Claim**") in the Bankruptcy Case. Rather than reflecting entry of judgment against its claim, CAASA incredibly ignored the judgment and *increased* the amount of the Proof of Claim from $1,385,093.17 to $1,464,751.04, ostensibly "to account for recent events in the related [D]istrict [C]ourt

4

[C]ase ... and to re-calculate the claim amount based on more precise information developed for trial of the [D]istrict [C]ourt [C]ase."

20. On September 7, 2004, the Debtor filed an Objection to Conseil Alain Aboudaram, S.A.'s Proofs of Claim ("**Objection to Claim**") on the grounds that the District Court had disallowed CAASA's claim and the Bankruptcy Court was bound by the judgment of the District Court.

21. CAASA opposed the Objection to Claim and asserted that the District Court had only determined CAASA's claims on its two promissory notes. CAASA maintained that the Order did not disallow other "claim theories" that CAASA had opted not to litigate in the District Court case. The Bankruptcy Court ultimately directed the parties to file motions for summary judgment on the issue of whether CAASA's "claim theories" were barred by *res judicata*.

22. On November 12, 2004, the Debtor filed a Motion for Summary Judgment on Objection to CAASA's Proofs of Claim ("**Motion for Summary Judgment**"). The disposition of the Objection to Claim and Motion for Summary Judgment hinged on what was actually litigated or could have been litigated in the District Court Case. To conserve resources and avoid an expensive learning curve, Paley Rothman relied heavily upon S&Q, which had firsthand knowledge of the District Court litigation.

23. On December 14, 2004 and January 4, 2005, the Bankruptcy Court held hearings on the Motion for Summary Judgment. At the December 14, 2004 hearing, CAASA objected to special counsel, Stephen Sale, arguing the Motion for Summary Judgment on behalf of the Debtor. Judge Teel denied CAASA's objection and permitted Mr. Sale to present the Motion for Summary Judgment.

24. On February 8, 2005, the Debtor filed in the Bankruptcy Court a Motion to Expand Scope of Employment of Special Counsel ("**Motion to Expand Employment**"). The Employment Application and Employment Order had contemplated S&Q's representation ending with the conclusion of the District Court Case, but CAASA had appealed decisions of the District Court and had filed in the Bankruptcy Case numerous pleadings and discovery requests that related to or required knowledge of the District Court Case discovery, proceedings, trial, and post-trial motions. In order to clarify the scope S&Q's role and preempt pleadings from CAASA similar to the Motion to Strike, the Debtor filed the Motion to Expand Employment.

25. On February 23, 2005, the Bankruptcy Court entered an Order Granting Motion for Summary Judgment ("**Summary Judgment Order**") and Decision Re Motion for Summary Judgment ("**Summary Judgment Decision**"), which sustained the Objection to Claim and disallowed CAASA's claims in their entirety.

26. In addition, on March 7, 2005, the United States Trustee filed in the Bankruptcy Case an opposition to the Motion to Expand Employment. The United States Trustee wanted to be sure that S&Q's role in the Bankruptcy Case would be limited to matters derivative of the District Court Case.

27. On April 5, 2005, the Bankruptcy Court held a hearing on the Motion to Expand Employment. At the hearing, the Debtor argued that CASA had no standing to object to the Motion to Expand because CAASA no longer had a claim in the Bankruptcy Case. The Bankruptcy Court opted not to address the Debtor's standing argument with respect to CAASA because the U.S. Trustee's Office had also filed an opposition to the Motion to Expand Employment.

28.     On April 7, 2005, the Bankruptcy Court entered an Order Clarifying Authorized Scope of Special Counsel's Employment ("**Order Clarifying Scope of Employment**").  In pertinent part, the Order Clarifying Scope of Employment states:

> [W]ith respect to [Stephen] Sale's future conduct (meaning all conduct occurring after the April 5, 2005 hearing), the July 10, 2002 [Employment] order is hereby clarified to reflect that Sale is authorized to handle any appeal of the District Court litigation, and he is authorized to assist the debtor and the debtor's bankruptcy counsel by assisting and giving information with respect to matters on which he, Sale, has institutional memory by reason of his participation in the District Court civil action and the related appeal.

Order Clarifying Employment at p. 5.

29.     On June 27, 2005, CAASA filed its Appellant's Brief in this appeal.

30.     On July 12, 2005, S&Q entered its appearance in this appeal as co-counsel for the Debtor.  Stephen Sale and John Quinn of S&Q are members in good standing of the bar of this Court.

31.     On July 14, 2005, Paley Rothman entered its appearance in this appeal as co-counsel for the Debtor.

32.     On July 14, 2005, before it even saw the Debtor's reply brief, CAASA filed the Motion to Strike.

33.     On July 18, 2005, the Debtor filed his Appellee's Brief.

## ARGUMENT

This Court should deny the Motion to Strike because: (1) CAASA lacks standing to object to the Debtor's selection of counsel; (2) even if CAASA had standing, the Bankruptcy Court has already overruled CAASA's objection and permitted S&Q to litigate the Objection to Claim and Motion for Summary Judgment; and (3) the Order

Clarifying Employment expressly permits S&Q to participate in matters, such as the present appeal, that are derivative of the District Court Case.

Alternatively, this Court should abstain from ruling on the Motion to Strike and refer it to the Bankruptcy Court for adjudication. The Motion to Strike asks this Court to, among other things, interpret the Order Clarifying Scope of Employment. Judge Teel, who authored that order, is in the best position to interpret the Order Clarifying Scope of Employment and the exclusively bankruptcy issues that arise out of it.

A.   <u>CAASA Lacks Standing to Bring the Motion to Strike</u>

CAASA lacks standing to bring the Motion to Strike because it has a claim in the Bankruptcy Case. As stated above, the District Court's Order and Order Denying Reconsideration, as well as the Bankruptcy Court's Summary Judgment Order disallowed CAASA's claims in their entirety. The Order stated "judgment is entered for de Groote on CAASA's claims under the promissory notes." The Summary Judgment Order stated "the debtor's objection to the amended proof of claim of Conseil Alain Aboudaram, S.A. ("CAASA") is SUSTAINED, and the claims asserted by CAASA are DISALLOWED."

As a result of the disallowance of its claims, CAASA is neither a creditor nor a party in interest. *See In re Rath Packing Co.*, 55 B.R. 528, 535 (Bankr. N.D. Iowa 1985) (*citing In re Kreisler Group, Inc.*, 648 F.2d 86, 87-88 (2d Cir. 1981)("Under the Bankruptcy Code, a creditor is an entity which has a *claim* against the debtor that arose at or before the order for relief concerning the debtor. 11 U.S.C. § 101(9). Stated conversely, an entity with no claim is not a creditor."); *In re Abijoe Realty Corp.*, 943 F.2d 121, 125 n. 6 (holder of a disallowed claim is not a creditor since final disallowance would constitute a judicial determination that the holder has no right to payment"); *In re*

8

*Dennis*, 230 B.R. 244, 255 (Bankr. D.N.J. 1999); *In re The Ledges Apartments,* 54 B.R. 85, 86 (Bankr. D. Vt. 1999) (It is axiomatic that an entity that is not a creditor is not a party in interest).

Since CAASA has no claim, it has no standing.  Moreover, it is unclear upon what basis (or toward what end) CAASA seeks to deny the Debtor his choice of counsel in this appeal.  In entering the Order Clarifying Scope of Employment, the Bankruptcy Court did not confer standing upon CAASA.  To the contrary, the Bankruptcy Court avoided addressing the issue because the U.S. Trustee had raised a separate objection to the Motion to Expand Employment.

> At the April 5, 2005 hearing on this motion [to expand the scope of S&Q's employment], the debtor argued that CAASA lacks standing to object in these proceedings because CAASA has no claim in this bankruptcy case. Because the U.S. Trustee's opposition (D.C. No. 325, filed March 7, 2005) raises the same principal objections as those raised by CAASA in its opposition (D.E. No. 316, filed February 25, 2005) and supplemental opposition (D.E. No. 348, filed March 28, 2005), it is unnecessary for the court to reach the question of CAASA's standing or lack thereof.

Order Clarifying Employment p. 2 n.1.  The United States Trustee has neither objected to Sale's involvement in this appeal nor joined in the Motion to Strike.  Consequently, CAASA cannot piggyback on another party and be conferred standing.  Absent a claim, CAASA has no standing to object to the Debtor's selection of counsel.

B. <u>Even if CAASA Had Standing, the Bankruptcy Court Has Overruled CAASA's Objection</u>

Even if CAASA had standing to bring the Motion to Strike, the Bankruptcy Court has already ruled against CAASA on the issue of S&Q's involvement with the Objection to Claim and Motion for Summary Judgment.  As stated above, at the December 14, 2004

9

hearing on the Motion for Summary Judgment, CAASA objected to special counsel, Stephen Sale, arguing the Motion for Summary Judgment on behalf of the Debtor. Judge Teel denied CAASA's objection and permitted Mr. Sale to present the Motion for Summary Judgment. The argument addressed what was or could have been litigated at trial in the District Court Case based upon a common nucleus of operative facts with CAASA's claims under the Notes. Since Paley Rothman did not participate in the District Court trial, it made sense and saved resources to have S&Q argue the Motion for Summary Judgment. If Judge Teel permitted Stephen Sale to argue the Motion for Summary Judgment, one wonders why Mr. Sale should be precluded from arguing the same issues on appeal. The Motion to Strike does not address this issue. Having lost twice to Mr. Sale in the District Court and on the Motion for Summary Judgment in the Bankruptcy Court, CAASA understandably does not wish to face its formidable adversary again. CAASA's lack of success against Mr. Sale does not, however, constitute grounds for his disqualification.

C. <u>The Order Clarifying Scope of Employment Permits S&Q's Participation in this Appeal</u>

No provision of the Order Clarifying Employment or the Bankruptcy Code precludes or requires pre-approval of S&Q's representation of the Debtor in this appeal. To the contrary, the Order Clarifying Scope of Employment expressly permits S&Q to handle matters – such as the present appeal – that are derivative of the District Court Case. Since the present appeal addresses issues that were actually or could have been litigated at the District Court trial for purposes of *res judicata*, it appears to the Debtor that the appeal issues are directly derivative of the District Court trial. S&Q litigated the District Court Case over a three year period and has institutional knowledge Paley

Rothman can never cost-effectively acquire. Moreover, S&Q's involvement spared creditors and the bankruptcy estate needless duplicative legal fees.

Before even seeing the Debtor's Appellee Brief, CAASA contended that the issues on appeal "arise directly out of the Bankruptcy Case, [are] separate and distinct from the D.C. Circuit Appeal, and involve… different legal issues." Motion to Strike p. 6. While it is true that this appeal came directly from the Bankruptcy Court, the issues (what was or could have been litigated) arise directly from the District Court trial. Based upon CAASA's definition of the term "derivative," S&Q would be excluded from assisting the Debtor, except in the Circuit Court Appeal. The Order Clarifying Employment clearly contemplates a larger role.

CAASA confuses the issues of employment and compensation of Debtor's counsel. The Debtor has employed S&Q as special counsel. Whether S&Q's services exceed the scope of its representation or benefit to the bankruptcy estate are compensation issues that the Bankruptcy Court will address when S&Q files a fee application. If the Bankruptcy Court determines that S&Q's services on the appeal exceed the scope of its employment or were of no value (both dubious propositions), S&Q will not be compensated. S&Q's involvement in this appeal does not require this Court or the Bankruptcy Court's pre-approval.

CAASA's real motivation in bringing the Motion to Strike seems to be to deprive the Debtor of counsel, force him to incur additional unnecessary legal fees,[1] and delay

---

[1] It bears noting that "CAASA claimed at trial in the district court that it was owed $421,576.67 in unpaid principal, $96,902.58 in interest, **_$1,863,348.41 in expenses of enforcement_**." (emphasis added). Summary Judgment Order p. 2. In the Circuit Court Appeal, CAASA recently asked for a 111 day extension of time in which to file a reply brief.

11

these proceedings. What other purpose could the Motion to Strike serve? CAASA filed the Motion to Strike before the Debtor filed his Appellee's Brief in this appeal. Before even reading the Debtor's brief, CAASA unilaterally concluded that it could have nothing to do with the District Court trial. To the contrary, the Debtor's Appellee's Brief is devoted nearly entirely to the proceedings in the District Court Case. Similarly, the Summary Judgment Decision from which CAASA has appealed consists almost entirely of a discussion CAASA's strategy in the District Court Case and its consequences.

D.      This Court Should Abstain from Ruling on the Motion to Strike

This Court should abstain from ruling on the Motion to Strike and refer it to the Bankruptcy Court for adjudication. Although district courts have original jurisdiction over bankruptcy cases, the district court's jurisdiction is not exclusive. 28 U.S.C. § 1334(b). "[N]othing in this section prevents a district court in the interest of justice . . . from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11." 28 U.S.C. § 1334(c)(1). Similarly, 28 U.S.C. § 157(a) provides that "Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."

The district court has jurisdiction under 28 U.S.C. § 158 to hear appeals from final judgments, orders, or decrees of the Bankruptcy Court and, with leave of the Bankruptcy Court, from interlocutory orders and decrees, but CAASA has neither appealed nor sought leave to appeal the Order Clarifying Employment. The Motion to Strike asks this Court to, among other things, interpret the Order Clarifying Employment.

Judge Teel, who authored that order, is in the best position to interpret that order and the exclusively bankruptcy issues that arise out of it.

## CONCLUSION

This Court should deny the Motion to Strike. CAASA has no claim and therefore lacks standing to object to the Debtor's selection of counsel. No other creditor or party in interest has objected to S&Q's representation of the Debtor in this appeal. Consequently, CAASA cannot rely upon another party's standing to advance its objection. Even if CAASA had standing, the Bankruptcy Court has already overruled CAASA's objection and permitted S&Q to litigate the Objection to Claim and Motion for Summary Judgment. Having argued the same issues in the Bankruptcy Court, it is unclear why S&Q should be precluded from presenting them on appeal. The Order Clarifying Employment expressly permits S&Q to participate in matters, such as the present appeal, that are derivative of the District Court Case. Since S&Q represented the Debtor for three years in the District Court Case and the present appeal addresses what issues were or could have been litigated in the District Court Case, this appeal is clearly derivative of the District Court Case. Alternatively, this Court should abstain from ruling on the Motion to Strike and refer it to the Bankruptcy Court for adjudication.

WHEREFORE, the Debtor, by counsel, requests that the court: (1) deny the Motion to Strike; (2) alternatively, abstain from considering the Motion to Strike and refer it to the Bankruptcy Court for adjudication; and (3) grant such further relief the court deems appropriate.

PALEY, ROTHMAN, GOLDSTEIN,<br>ROSENBERG, EIG & COOPER, CHTD.

By:     /s/    Alan D. Eisler
    Wendelin I. Lipp, Bar No. 348219
    Alan D. Eisler, Bar No. 435054
    4800 Hampden Lane, 7th Floor
    Bethesda, Maryland 20814-2922
    Phone: (301) 656-7603
    Fax: (301) 654-0165
    Counsel for Appellee

CERTIFICATE OF SERVICE

I hereby certify that on this 21st day of July 2005, copies of the Memorandum in Opposition to Appellant's Motion to Strike the Appearance of Sale & Quinn, P.C. and proposed order were sent by first class mail, postage prepaid, to:

James L. Marketos, Esquire
Berliner, Corcoran & Rowe, LLP
1101 17th Street, N.W., Suite 1100
Washington, D.C. 20036

Stephen Sale, Esquire
Sale & Quinn, P.C.
910 16th Street, N.W., 5th Floor
Washington, D.C. 20006-2992

Jacques de Groote
1675 34th Street, N.W.
Washington, D.C. 20007

Office of the U.S. Trustee
115 S. Union Street
Suite 210
Alexandria, VA 22314

    /s/    Alan D. Eisler
Alan D. Eisler