UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

CONSEIL ALAIN ABOUDARAM, S.A.,

                Appellant,

     - against -                     Case No. 1:05-CV-00988 (RMC)

JACQUES DE GROOTE,

                Appellee.

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
APPELLANT'S MOTION TO STRIKE APPEARANCE OF STEPHEN SALE, ESQ.,
JOHN D. QUINN, ESQ., AND THE LAW FIRM OF SALE & QUINN, P.C.**

        Appellant Conseil Alain Aboudaram, S.A. ("CAASA"), by counsel, submits this reply to the opposition ("Opp.") of Appellee Jacques de Groote ("de Groote") to CAASA's Motion to Strike Appearance of Stephen Sale, Esq., John D. Quinn, Esq., and the law firm of Sale & Quinn, P.C., filed July 21, 2005.  The facts on which CAASA relies are of record in the underlying Chapter 11 bankruptcy case, the related district court case, and the appeals pending in the United States Court of Appeals for the District of Columbia Circuit from the judgments entered in the district court case.

**REPLY TO DE GROOTE'S "BACKGROUND" STATEMENT**

        De Groote's lengthy procedural history of the District Court Action and the Bankruptcy Case (labeled "Background") is mostly irrelevant to this motion.  CAASA nevertheless takes the precaution of addressing a few of de Groote's more significant distortions of the record.

        First, CAASA did not stipulate that the notes in their entirety were unambiguous

(Opp. at 3, ¶ 14). CAASA conceded only that the note phrase "advances hereunder by the Lender" (defined as CAASA) could not reasonably be interpreted to include Aboudaram's advances.[1] In fact CAASA pointed out several ambiguities on the face of the notes and grids.[2]

Second, de Groote mischaracterizes CAASA's June 22, 2004, motion for reconsideration ("Reconsideration Motion") by saying that CAASA was expressing surprise at having to meet its burden of proof (Opp. at 4, ¶ 16). In fact, CAASA argued that de Groote surprised CAASA at trial by abandoning years' worth of sworn concessions that the notes encompassed Aboudaram's advances. CAASA's Reconsideration Motion pointed out that the judgment should be reconsidered in light of de Groote's concessions, which excused CAASA from the burden to prove that the notes encompassed Aboudaram's advances.

Third, CAASA did not ignore the adverse district court judgment and press on nevertheless with an increased proof of claim in the Bankruptcy Court (Opp. at 4, ¶ 19). De Groote overlooks three important facts: (1) the district court's June 7, 2004, order granting de Groote's Rule 50 motion was <u>not</u> a final order because it was subject to CAASA's timely Reconsideration Motion; (2) CAASA's initiatives to prove and collect its amended proof of claim in the Bankruptcy Court were commenced on August 27, 2004, <u>before</u> entry of the order denying CAASA's Reconsideration Motion; and (3) as corrected in CAASA's Opposition to Debtor's Objection to Proofs of Claim (Bankr. Docket # 218), CAASA's amended proof of claim

---

[1] Trial Tr. at 93, lns. 11-17 (Feb. 24, 2005).

[2] *See, e.g.*, Memorandum of Points and Authorities in Support of CAASA's Motion to Alter or, in the Alternative, to Obtain Relief from Order Granting de Groote's Motion for Judgment as a Matter of Law at 14-15, 24-27 (June 2, 2004) (Dist. Ct. Docket # 163); CAASA's Reply Memorandum on Motion to Alter or Obtain Relief from Judgment at 13 n.15 (July 16, 2004) (Dist. Ct. Docket # 170).

($1,374,742.61) is actually <u>less</u> (by $10,350.56) than its proof of claim as originally filed ($1,385,093.17).

Fourth, CAASA's Alternative Claim Theories were not absent from the District Court case because CAASA consciously "opted" not to litigate them (Opp. at 5, ¶ 21). Rather, those theories were absent from the complaint because de Groote's prior and subsequent concessions reasonably induced CAASA to believe that the notes fully expressed CAASA's claim and de Groote's debt. For obvious reasons, de Groote's long procedural summary neglects to mention his 13 counterclaim admissions, his answer to CAASA's contention interrogatory, his other sworn statements, his 33 deposition admissions, and his countless written statements to CAASA before the District Court Action was filed, all of which justifiably led CAASA to believe that it did not need to plead alternative theories of recovery in the district court complaint.

## ARGUMENT

### Reply to de Groote's Point A

De Groote's lack-of-standing argument makes no sense. He contends that CAASA lacks standing to challenge S&Q's appearance on this appeal, but he does not challenge CAASA's standing to prosecute the appeal itself. Nor could he, as CAASA has undisputable standing as a party aggrieved by the Bankruptcy Court order disallowing its claim. *See, e.g.*, *Lopez v. Behles (In re Am. Ready Mix, Inc.)*, 14 F.3d 1497, 1500 (10th Cir. 1994) ("Litigants are 'persons aggrieved' if the order [appealed from] diminishes their property, increases their burdens, or impairs their rights.") (brackets in original); *O'Brien v. Vermont Agency of Natural Res. (In re O'Brien)*, 184 F.3d 140, 142 (2nd Cir. 1999) ("person aggrieved [is] a person directly

and adversely affected pecuniarily by the challenged order of the bankruptcy court") (internal quotation marks and citations omitted).  It makes no sense, therefore, that if CAASA has standing to appeal, it lacks standing to challenge the appearance of an attorney on the appeal.

De Groote's reliance on cases dealing with bankruptcy-law standing is misplaced (*see* Opp. at 8-9).  None of the cases addresses the standing of a creditor, on appeal from a disallowance order, to challenge another attorney's appearance on the appeal.  Rather, they involve whether bankruptcy court litigants had creditor or party-in-interest standing to seek various forms of relief provided under Chapters 3, 11, and 13 of the Bankruptcy Code.  *See In re Rath Packaging Co.*, 55 B.R. 528, 535 (Bankr. N.D. Iowa 1985) (standing to object to confirmation of Chapter 11 plan); *In re Abijoe Realty Corp.*, 943 F.2d 121, 124 (1st Cir. 1991) (standing to seek dismissal of Chapter 11 petition); *In re Dennis*, 230 B.R. 244 (Bankr. D.N.J. 1999) (standing to object to confirmation of Chapter 13 plan); *In re The Ledges Apartments*, 54 B.R. 85 (Bankr. D. Vt. 1985) (standing to seek modification of automatic stay).  Such standing concepts have nothing to do with the appellate standing at issue here.  Likewise, de Groote's reliance on what the Bankruptcy Court's April 7, 2005, order does <u>not</u> say about standing is misplaced.

### Reply to de Groote's Point B

The Bankruptcy Court has not "already ruled against CAASA on the issue of S&Q's involvement" (Opp. at 9).  By permitting Mr. Sale to argue de Groote's summary judgment motion (over CAASA's objection) on December 14, 2004, the Bankruptcy Court did not permit S&Q to participate in this appeal.  On that occasion, there was no mention of this appeal, which was still months away from being filed.  Apart from this, subsequent events

(which de Groote does not mention) confirm that it has never been the Bankruptcy Court's intention to authorize S&Q to serve as de Groote's counsel on this appeal.

On February 9, 2005, de Groote moved "to expand the scope of S&Q's employment *nunc pro tunc* to June 20, 2002 to include all matters relating to CAASA in this court, in the District Court, in the United States Court of Appeals for the District of Columbia" (Bankr. Docket # 295). Both CAASA and the U.S. Trustee opposed the motion.

While the motion was being briefed, it came to the Bankruptcy Court's attention at a hearing on February 23, 2005, that Mr. Sale had represented de Groote at a two-day bankruptcy deposition. This provoked the Bankruptcy Court to express serious concern that Mr. Sale had exceeded the scope of his existing employment authorization under the original (2002) employment order:

> I have concerns about that, Mr. Sale. You have a claim against the estate. You didn't waive it. I limited you to special counsel status, and this was a Rule 2004 examination that had nothing to do with the litigation of the claim in the District Court. It had to do with trying to locate assets that hadn't been scheduled. It seems to me that's strictly a bankruptcy case counsel function, not a special counsel function. I've allowed you to argue matters in this Court, but that's because I thought they related to the litigation in the District Court. And I don't think it's appropriate for you to start handling things that really are the province of bankruptcy counsel. You haven't been appointed to act as bankruptcy counsel.

Tr. of Motions Hrg. at 54, *In re de Groote*, Ch. 11 Case No. 02-0981 (Bankr. D.D.C. Feb. 23, 2005) (emphasis added).

De Groote's motion to expand S&Q's representation was heard on April 5, 2005. The resulting April 7, 2005, order clarified the scope of S&Q's ongoing authority under the original (2002) employment authorization order and put off to a later time whether S&Q's activities in the bankruptcy case violated the order. By then, CAASA had already commenced

this appeal. In light of these subsequent events, it is specious for S&Q to contend that, by allowing Mr. Sale to argue de Groote's bankruptcy motion on December 14, 2004, the Bankruptcy Court contemplated that Mr. Sale would serve as de Groote's counsel of record on this appeal.

### Reply to de Groote's Point C

De Groote's gloss on the Bankruptcy Court's April 7 order, that it "expressly permits S&Q to handle matters – such as the present appeal – that are derivative of the District Court Case" (Opp. at 10), is contrary both to the text of the order and familiar rules of construction.

The April 7 order plainly and unambiguously confines Mr. Sale to two roles: (1) appellate counsel for de Groote on the D.C. Circuit Appeal; and (2) advisor to de Groote's bankruptcy counsel with respect to matters contained in Mr. Sale's institutional memory of the District Court Action. There is no mention of Mr. Sale having a third role as appellate counsel on this bankruptcy appeal, which had been filed by the time the April 7 order was entered. Accordingly, on the present appeal, Mr. Sale's role is confined by the express terms of the order to Role # 2, namely, advising de Groote's bankruptcy counsel with respect to, among other things, "what was or could have been litigated" (Opp. at 11) in the District Court Action.

This interpretation is supported by the familiar rule of construction, *expressio unius est exclusio alterius*, which means that "expressing one item of a commonly associated group or series excludes another left unmentioned." *United States v. Vonn*, 535 U.S. 55, 65 (2002); *see also Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 80 (2002). Under this rule of interpretation, the Bankruptcy Court's April 7 order necessarily excludes all authorizations

except those expressly stated.

This bankruptcy appeal is not "directly derivative of the District Court trial" as de Groote contends (Opp. at 10). Rather, it is directly derivative of de Groote's summary judgment motion in his bankruptcy case. S&Q's appearance as counsel of record would therefore implicate the Bankruptcy Court's clear concern that Mr. Sale has already exceeded the scope of his authority by acting for de Groote on bankruptcy matters. De Groote will not be disadvantaged if Mr. Sale is not allowed to participate as counsel of record. For purposes of presenting de Groote's position on this appeal, de Groote's bankruptcy counsel is just as well qualified as Mr. Sale to analyze the record of the District Court Action (for which he will have Mr. Sale's assistance).

De Groote argues that the April 7 order is merely a warning to S&Q that they might not get paid if they are later determined to have exceeded their authority (Opp. at 11). This interpretation, however, conflicts with the Bankruptcy Court's expression of concern on February 23, 2005, and again in the April 7 order that Mr. Sale has already exceeded his authority.

De Groote's interpretation also conflicts with applicable law. Bankruptcy Code § 327, authorizing a debtor's employment of counsel, requires bankruptcy court pre-approval. The pre-approval requirement would be rendered meaningless if debtors, without pre-approval, could employ attorneys of their choosing for any purpose. Furthermore, de Groote's contention that an attorney's violation of a bankruptcy court employment authorization order merely puts the attorney's compensation at risk has been squarely rejected. *See, e.g., In re Arkansas Co.*, 798 F.2d 645, 649 (3rd Cir. 1986) ("We reject the notion that a complete and thorough post-application review may substitute for prior approval in most cases. This approach would render

meaningless the structure of the Bankruptcy Code and Rules which contain provisions requiring *both* prior approval of employment *and* after the fact approval of compensation.") (emphasis in original) (citing 11 U.S.C. §§ 327(a), 1103(a), 330; Bankruptcy Rules 2014(a), 2016, 2017).

Finally, de Groote himself has tacitly acknowledged that S&Q's involvement in this appeal in fact <u>requires</u> the Bankruptcy Court's pre-approval. Were it otherwise, he would not have filed his motion to expand the scope of S&Q's employment *nunc pro tunc*.

**Reply to de Groote's Point D**

De Groote's Point D misconstrues the relevant bankruptcy jurisdiction provisions of Title 28 of the United States Code (Opp. at 12-13). This Court's subject-matter jurisdiction over this bankruptcy <u>appeal</u> rests exclusively on 28 U.S.C. § 158(a). Section 1334, on which de Groote mistakenly relies, confers non-exclusive <u>original</u> subject-matter jurisdiction on the district courts to hear bankruptcy cases. Section 1334 therefore gives this Court no authority to abstain from deciding whether S&Q is eligible to appear on this appeal.

By contrast, nothing in either Section 1334 or Section 158 prevents this Court from interpreting the Bankruptcy Court's April 7 order to whatever extent is necessary to determine S&Q's eligibility under D.D.C. Civ. R. 83.6(a) to serve as de Groote's counsel. By so interpreting the Bankruptcy Court order, this Court is <u>not</u> reviewing the order on appeal, as de Groote suggests (Opp. at 12). Even so, CAASA is confident that, given the chance, the Bankruptcy Court would readily conclude that S&Q's appearance as counsel of record is not authorized by the existing employment authorization order or its April 7 clarification.

**CONCLUSION**

For the foregoing reasons, as well as those set forth in CAASA's principal memorandum, the motion should in all respects be granted, and the appearances of Stephen Sale, Esq., John D. Quinn, Esq., and the law firm of Sale & Quinn, P.C., should be stricken from the record.

Dated: Washington, D.C.
July 29, 2005

.

                Respectfully submitted,

                BERLINER, CORCORAN & ROWE, L.L.P.

                Attorneys for Appellant


By:   /s/ James L. Marketos
       James L. Marketos
          D.C. Bar No. 412953
       Alexander C. Vincent
          D.C. Bar No. 473459

       1101 17th Street, N.W.
       Suite 1100
       Washington, D.C.  20036-4798
       Telephone:  (202) 293-5555
       Fax:  (202) 293-9035
       E-mail:  jlm@bcr-dc.com, acv@bcr-dc.com