Case No. 1:05-CV-00988 (RMC)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

**CONSEIL ALAIN ABOUDARAM, S.A.,**
**Appellant,**

**- against -**

**JACQUES DE GROOTE,**
**Appellee.**

**ON APPEAL FROM**
**THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF COLUMBIA**
*In re Jacques de Groote*
**(Chapter 11 Case No. 02-0981)**

# REPLY BRIEF FOR APPELLANT

**James L. Marketos, Esq.**
**Alexander C. Vincent, Esq.**
**Berliner, Corcoran & Rowe, L.L.P.**
**1101 17th Street, N.W., Suite 1100**
**Washington, D.C.  20036-4798**
**Telephone:  (202) 293-5555**
**Fax:  (202) 293-9035**
**E-mail:        jlm@bcr-dc.com**
**                    acv@bcr-dc.com**

**Attorneys for Appellant**
**Conseil Alain Aboudaram, S.A.**

**August 1, 2005**

## TABLE OF CONTENTS

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

COMBINED REPLY TO DE GROOTE'S STATEMENT OF THE CASE & STATEMENT OF
    THE FACTS
       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
    A.      District Court Case
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
        Misdescription of de Groote's Payment Defense . . . . . . . . . . . . . . . . . . . . . . . 1
        Misdescription of the Notes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
        The Falsehoods (1) That de Groote "Consistently" Asserted That He Paid His
            Debt to CAASA in Full and (2) That He Expected a Mortgage Note from
            Aboudaram . . . . 4
        Misdescription of Trial Stipulation No. 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
        CAASA's Pre-Trial Motion for Summary Judgment . . . . . . . . . . . . . . . . . . . . 8
        What de Groote's Admissions "Really Meant" . . . . . . . . . . . . . . . . . . . . . . . . . 8
        Trial Fabrications . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
        Misdescription of CAASA's Trial Concessions . . . . . . . . . . . . . . . . . . . . . . . 11
        CAASA's Motions to Amend the Pleadings . . . . . . . . . . . . . . . . . . . . . . . . . . 12
        Misdescription of the District Court's June 7, 2004, Decision . . . . . . . . . . . . 13
        CAASA's Post-Trial Motion for Reconsideration . . . . . . . . . . . . . . . . . . . . . . 13
    B.      Bankruptcy Court Case
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    REPLY TO de GROOTE's POINT I
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        A.      *Res Judicata*
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        B.      Law of the Case
           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17
    REPLY TO de GROOTE's POINT II
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18
    REPLY TO de GROOTE's POINT III
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
    REPLY TO de GROOTE's POINT IV
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22
    REPLY TO de GROOTE's POINT V
        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

CONCLUSION
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

## TABLE OF AUTHORITIES

**CASES**

*Allen v. McCurry*, 449 U.S. 90 (1980) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735 (D.C. Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . 17

*In re Maya Constr. Co.*, 78 F.3d 1395 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

*Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Kremer v. Chemical Constr. Corp.*, 456 U.S. 461 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Montana v. United States*, 440 U.S. 147 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

*Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302 (D.C. Cir 1980) . . . . . . . . . . . . . . . . . . . . . . . . . 25

*Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806 (1945) . . . . . . . 24

*United States Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195 (D.C. Cir. 1985) . . . . . . . . . . . . 17

*United States v. Alaw*, 327 F.3d 1217 (D.C. Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States v. Hylton*, 294 F.3d 130 (D.C. Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*United States v. Phillip Morris, Inc.*, 300 F. Supp. 2d 61 (D.D.C. 2004) . . . . . . . . . . . . . . . . . . 24

**RULES OF COURT**

Fed. R. Bankr. P. 3001(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Fed. R. Civ. P. 50 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

LBR 3007-1(a)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

**STATUTES**

11 U.S.C.A. § 521(1) (West 2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C.A. § 152(2) (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

18 U.S.C.A. § 157 (West 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**<u>TREATISES</u>**

9 J. W. MOORE, MOORE'S FEDERAL PRACTICE § 50.20[1] (Lexis Nexis 2005) . . . . . . . . . . . . 20

# COMBINED REPLY TO DE GROOTE'S STATEMENT OF THE CASE & STATEMENT OF THE FACTS

De Groote's Statement of the Case overlaps extensively with his Statement of the Facts. CAASA will therefore make a combined reply. Certain facts will be addressed as necessary in the Argument. All in all, de Groote does not dispute the essential facts underlying this appeal. As will be seen, however, he takes many liberties with the record. Collectively, his distortions leave a serious mis-impression about whether CAASA had adequate (or any) notice prior to trial that it should plead other claim theories or join Aboudaram in the District Court Case. CAASA must therefore address de Groote's many misstatements.

## A.    District Court Case

**Misdescription of de Groote's Payment Defense**. De Groote contends that "as de Groote's first and foremost defense, he asserted payment in full" (Appellee Br. at 1). Here he stretches the truth, implying that from the outset his payment defense was that he had repaid all monies CAASA had advanced or demanded under the notes, and that CAASA therefore knew it had a burden to prove there were unpaid advances under the notes. But this was not the basis of de Groote's payment defense until trial. As CAASA has already pointed out, prior to trial de Groote's payment defense was that CAASA owed him more money on various claims extrinsic to the notes than he owed CAASA under the notes.[1]

De Groote makes no attempt to reconcile the glaring discrepancy between his pre-trial and trial payment defenses, for no reconciliation is possible. The full record shows that CAASA simply had no notice prior to trial that de Groote would contest what he had always previously

---

[1]    Appellant Br. at 14 & nn.39-40.

1

conceded and would instead contend that he had repaid all amounts CAASA had advanced or demanded under the notes.

De Groote says that CAASA's written (post-trial) motion to amend the complaint "acknowledged that de Groote's 'defense of payment is based on payments to date made by Jacques de Groote'" (Appellee Br. at 16). This is word play. The reference in question (a footnote in CAASA's reply memorandum) dealt with de Groote's answer to CAASA's contention interrogatory No. 2.[2] CAASA's footnote pointed out that de Groote's interrogatory answer did not distinguish among his $240,000 of "payments to date." Nor did the interrogatory answer dispute the link between Aboudaram's advances and the notes. CAASA's footnote pointed out that it was therefore reasonable (and consistent with all of de Groote's admissions until trial) to read his interrogatory answer as encompassing both the $190,000 he repaid in late 2000 in response to CAASA's demand for repayment of the notes and the $50,000 he repaid earlier in 2000 in response to CAASA's separate demand for repayment of three unsecured advances CAASA made for his benefit in 1998 (not under the notes). Three years later at trial (and now), he abandoned his interrogatory answer and contended that his $190,000 payments were not on the notes.

De Groote says the trial judge "stated that de Groote's payment defenses included that 'any debt on the promissory note was extinguished' *and* offset" (Appellee Br. at 16) (emphasis in original). This is more word play. In the statement in question (the trial judge's May 2, 2002, decision denying de Groote's request for a preliminary injunction), the judge found that the sole factual basis for de Groote's defense of "no debt owed" was the assertion that CAASA had paid

_____

[2]      Reply Mem. in Supp. of CAASA's Mot. to Amend Compl. to Conform to the Evid. at 3 n.2 (Mar. 26, 2004) (Dist. Ct. Docket # 150).

$300,000 less for de Groote's consulting services than what CAASA claimed it had paid.[3]  The trial

judge made no reference to extinguishment by repayment in full because, as the trial judge's list of

de Groote's defenses shows, de Groote had not made that defense.[4]

**Misdescription of the Notes**.  De Groote misdescribes the notes, then posits facts

based on his misdescription.  Without citation to the record, he says that "No grids were attached

when de Groote signed the Notes, and he never endorsed a grid" (Appellee Br. at 1).[5]  In this fashion,

de Groote implies it was established at trial that the grids were not attached to the notes when he

signed them, and that his endorsement was required to authenticate CAASA's advances under the

notes.  He is wrong on both accounts.

In fact, there was no trial testimony about whether the grids were attached to the notes

when de Groote signed them.[6]  So de Groote has no basis for suggesting the issue was resolved at

trial.  Furthermore, the notes expressly ruled out de Groote's endorsement of the grids.[7]  He is

---

[3]     Mem. Op. at 10-11 (May 2, 2002) (Dist. Ct. Docket # 67).

[4]     *See* Mem. Op. at 2 (May 2, 2002) (Dist. Ct. Docket # 67).  At pages 4-5 of his brief and again at pages 6-9 and 17-18, de Groote purports to describe the district court trial testimony bearing on his compensation arrangements with CAASA, the alleged agreement underpinning his counterclaims and affirmative defenses, his inducement to sign the notes, and other matters contested during the trial.  He makes numerous errors, some of them material, but because the issues are totally irrelevant to this appeal, CAASA will pass them by.  It suffices to say that the jury accepted CAASA's version of substantive facts in all respects and rejected de Groote's.

[5]     *See also* Appellee Br. at 8 ("The notes state that advances were to be documented on a grid attached to the Notes and endorsed by de Groote.").

[6]     That issue was preempted when de Groote made his pretextual authenticity objection to the grids, which induced CAASA to consent to their exclusion from evidence.  It later turned out that de Groote's authenticity objection was just a cover for eliminating evidence intrinsic to the notes that the notes were intended to encompass Aboudaram's advances (*see* Appellant's Br. at 18-19).

[7]     The relevant note language reads:  "The Lender may request the Borrower to initial such endorsements [implying that the endorsements are by the Lender], but the failure to obtain any such endorsement shall not impair the validity or enforceability of this Demand Promissory Note or any amount not so initialled" (Ex. 1 to CAASA's Proof of Claim (Oct. 2, 2002) (Bankr. Claims Reg., Claim # 5)).

therefore completely off base to imply that his endorsement was required on the grids in order to authenticate CAASA's advances under the notes.

De Groote emphasizes that at trial Isam Salah, CAASA's attorney who drafted the notes, testified to his careful drafting and to the clarity of the notes' repayment language (Appellee Br. at 1, 8). But de Groote ignores that Mr. Salah's testimony came during CAASA's case-in-chief. This was before de Groote renounced his prior admissions, which occurred when he made his Rule 50 motion after CAASA rested. CAASA therefore did not know to ask Mr. Salah questions that would have elicited testimony to meet de Groote's later renunciation. The same is true for all of CAASA's witnesses on its case-in-chief.

**The Falsehoods (1) That de Groote "Consistently" Asserted That He Paid His Debt to CAASA in Full and (2) That He Expected a Mortgage Note from Aboudaram**. Among de Groote's most astounding departures from the truth are his contentions that "de Groote consistently asserted that he had paid in full any debt to CAASA" (Appellee Br. at 1), and that "de Groote expected Aboudaram to present a mortgage note" (Appellee Br. at 9). Certainly these were the positions he took at trial. But they were not positions he took at any time in the nine years prior to trial. For example, on October 9, 2000 (more than a year before the lawsuit), he acknowledged he owed <u>CAASA</u> $597,355.02 <u>under</u> <u>the</u> <u>notes</u> in response to <u>CAASA</u>'s demand for repayment:

> Your lawyer asked me if I had questions concerning the amount owed under the two promissory notes. I have no particular question on this point and I assume, of course, that all interest calculations have been done correctly.[8]

Even after CAASA sued, de Groote's position did not change during the three years

---

[8]    Exs. 16 [Letter from B.H. Corcoran, Esq., to J. de Groote (Oct. 4, 2000)] & 17 [Letter from J. de Groote to A. Aboudaram (Oct. 9, 2000)] to CAASA's Amended Proof of Claim (Aug. 27, 2004) (Bankr. Claims Reg., Claim # 9).

prior to trial.  His acknowledgment of liability under the notes continued and was merely offset by his 20 counterclaims and defenses (all extrinsic to the notes), in which he contended that CAASA owed him vastly more than he owed CAASA <u>under</u> <u>the</u> <u>notes</u>.

Likewise, he admitted he had partially repaid the huge debt he acknowledged he owed to CAASA <u>under</u> <u>the</u> <u>notes</u> – not with the $50,000 paid in early 2000, but with the $190,000 paid in the last quarter of 2000:

> I wanted to pay off my debt to CAASA, and I paid in fact in the last quarter of the year [2000] $190,000.  I paid these hundred thousand.  That was in the framework of a debt under my promissory note to CAASA.[9]

As late as the opening statements at trial, de Groote was still admitting (through counsel) that <u>all</u> of his $240,000 in payments to CAASA were payments "<u>on</u> <u>this</u> <u>note</u>."[10]  That admission simply cannot be squared with his later (and current) contention that Trial Stipulation No. 3 (recording his payments of $50,000) reflects everything he owed and paid CAASA on the notes.

In the face of such unequivocal pre-trial and trial admissions (of which there are literally dozens) that he owed (and re-paid) CAASA hundreds of thousands of dollars <u>under</u> <u>the</u> <u>notes</u>, it boggles the mind how he can now venture that he "consistently" asserted he had fully paid his debt to CAASA and expected Aboudaram to present a mortgage note.

**<u>Misdescription of Trial Stipulation No. 3</u>**.  De Groote never misses a chance to misdescribe Trial Stipulation No. 3, which he invariably cites as CAASA's "stipulation that de

---

[9]    Ex. 58 to CAASA's Motion for Appointment of a Trustee or Examiner (Sept. 17, 2004) (Bankr. Docket # 211) (quoting as Admission No. 13 de Groote Dep. at 238 (Oct. 26, 2001)).

[10]    Trial Tr. 38:8-9 (Feb. 20, 2004) ("In the year 2000, Jacques de Groote paid $240,000 <u>on this note</u> in one year") (de Groote's counsel's opening statement) (emphasis added).

5

Groote repaid <u>all</u> of CAASA's loan advances" (Appellee Br. at 1) (emphasis added).[11]   The stipulation in fact says nothing of the sort.  It consists of text and a table that records three advances CAASA made in 1998 to third parties for de Groote's benefit, which he did not repay until 2000. Neither the text nor the table says that de Groote repaid <u>all</u> of CAASA's loan advances.  The stipulation merely acknowledges that de Groote repaid the <u>three specific</u> 1998 advances that are recorded on the stipulation.[12]

In referring to Trial Stipulation No. 3, de Groote never mentions that the three advances in question were unsecured; that CAASA recorded the three advances on de Groote's "current account" (not on the note grids);[13] and that they could not have been advances under the notes because, by the time of the three 1998 advances, de Groote's arrearages under the first (1995) note already exceeded the note's $400,000 face amount by $100,000 (which necessitated the second

---

[11]    *See also* Appellee Br. at 2, 4, 12, 15.

[12]    Stipulation No. 3 (Feb. 22, 2004) (Dist. Ct. Docket # 127).  CAASA's three unsecured 1998 advances were:  (1) $10,142.02 paid on June 24, 1998, to the mortgagee of de Groote's Georgetown townhouse; (2) $3,541.43 booked at the end of 1998 to account for CAASA's payment of King & Spalding legal fees related to de Groote's Georgetown mortgage; and (3) 660,478 Belgian francs paid on May 6, 1998, to H.S. Spaarbank, N.V., the holder of the mortgage on de Groote's duplex apartment in Brussels, as to which he was chronically in default.

[13]    De Groote had a "current account" with CAASA, which was opened and active when he rendered consulting services to CAASA from 1992 to 1995.  The current account was used to keep track of his consulting fees and expenses.  After his consulting services ceased in 1995, the current account was zeroed out (*see* Attachment 23 [Annie Aboudaram Decl. ¶ 18] to CAASA's Opp'n to de Groote's Mot. for Rule 37 Sancs. (July 21, 2004) (Dist. Ct. Docket # 172); Tr. Tr. 104:10-14 (Feb. 27, 2004)).  By 1998, de Groote had already exceeded his credit limits under the notes, but still needed more money to pay his mortgages in Georgetown and Brussels.  So when he borrowed the necessary sums in 1998, CAASA re-activated his current account to keep track of his new (unsecured) borrowings and interest thereon (Aboudaram Decl. ¶ 19).  De Groote finally repaid his current account in 2000 by remitting a total of $50,000, which actually overpaid the account and left a credit balance of nearly $20,000, which CAASA applied to reduce the nearly $600,000 balance then outstanding under the notes (Ex. 1 to CAASA's Amended Proof of Claim (Bankr. Claims Reg., Claim # 9); Stipulation No. 3 (Feb. 22, 2004) (Dist. Ct. Docket # 127)).

note).[14]  Inasmuch as the Trial Stipulation No. 3 advances were not made under the notes, it is false

of de Groote to cite the stipulation as proof that he repaid everything that he owed or that CAASA

demanded under the notes.

There is yet another false aspect to de Groote's contention that he repaid everything

he owed or that CAASA demanded under the notes.  De Groote bases his contention on the

innocuous-sounding proposition that "CAASA's dunning letters to de Groote demanded that he pay

what he owed under the Notes" (Appellee Br. at 12).  Here, de Groote obscures that CAASA dunned

him separately for his arrearages under the notes and for his three unsecured borrowings against his

current account (*i.e.*, the advances reflected in Trial Stipulation No. 3).[15]  CAASA issued two

distinctly different categories of dunning letters.  One category, issued by CAASA's outside

attorneys, expressly referred to the notes and demanded repayment of amounts ranging from

$400,000 to nearly $600,000 between 1997 and late 2000.[16]  The other category, issued by CAASA's

bookkeepers between 1998 and early 2000, demanded repayment of CAASA's three unsecured

advances charged to his current account.  The latter demands made no reference to the notes, and

these letters never demanded payment of more than $40,000.[17]  De Groote also does not mention that

one of CAASA's 1999 dunning notices covered (and expressly distinguished between) de Groote's

two debt positions with CAASA, one in his unsecured current account ($39,483.07) and the other

---

[14]     *See* Ex. 1 to CAASA's Amended Proof of Claim (Aug. 27, 2004) (Bankr. Claims Reg., Claim # 9).

[15]     *See* Pl.'s Tr. Exs. I-5, I-6, I-9, I-11, I-12, and I-15.

[16]     *See* Exs. 4 [Letter from I. Salah, Esq., to J. de Groote (May 22, 1997)] & 16 [Letter from B.H. Corcoran, Esq., to J. de Groote (Oct. 4, 2000)] to CAASA's Amended Proof of Claim (Aug. 27, 2004) (Bankr. Claims Reg., Claim # 9).

[17]     *See* Pl.'s Tr. Exs. I-5, I-6, I-9, I-11, I-15.

7

in the account secured by his Georgetown townhouse (more than $500,000), *i.e.*, the notes.[18]

       Without citation to the record, de Groote says that "Annie Aboudaram testified that Stipulation No. 3 shows that CAASA made a loan to de Groote to pay his Washington mortgage, and that de Groote fully repaid CAASA" (Appellee Br. at 15). He is telling only half of the truth. Ms. Aboudaram did <u>not</u> testify that the three 1998 advances recorded on Stipulation No. 3 were made under the notes.[19] For these several reasons, the record simply does not support de Groote's reference to Trial Stipulation No. 3 as evidence that he repaid everything he owed or that CAASA demanded under the notes.

       **CAASA's Pre-Trial Motion for Summary Judgment**. As supposed evidence that de Groote "by no means admitted that Aboudaram made advances under the Notes," de Groote cites his 17-page statement of material facts in dispute, which he submitted in opposition to CAASA's March 2002 district court motion for summary judgment (Appellee Br. at 9-10).[20] He fails to mention, however, that elsewhere in his statement of facts in dispute he admitted that CAASA made the advances under the notes.[21] This is more proof that at the time of CAASA's motion for summary judgment, there was no issue about who had made the advances under the notes.

       **What de Groote's Admissions "Really Meant"**. In another contorted dodge, de

---

[18]    Ex. 11 [Letter from A. Aboudaram to J. de Groote (Sept. 16, 1999)] to CAASA's Amended Proof of Claim (Aug. 27, 2004) (Bankr. Claims Reg., Claim # 9) ("There are two positions: One is your current account, which is overdrawn by US$ 39,483.07. . . . The other account is the advance of more than US$ 500,000, which is secured by your Washington house.").

[19]    Tr. Trial 94:11-95:11 (Feb. 27, 2004-AM).

[20]    *See* Defendant's Stmt. of Mat. Facts in Dispute (Apr. 4, 2002) (Dist. Ct. Docket # 54).

[21]    Defendant's Stmt. of Mat. Facts in Dispute at 5, ¶ 19 (Apr. 4, 2002) (Dist. Ct. Docket # 54) ("Alain Aboudaram procured signatures on December 20, 1995 and October 13, 1998 of Jacques de Groote on promissory notes mortgaging his home to secure advances made by CAASA beginning no later than April 1994.").

Groote says that "[t]he record does not support CAASA's post judgment argument that, when referring to 'CAASA' as to advances under the Notes, de Groote (and apparently CAASA) really meant 'Aboudaram'" (Appellee Br. at 10).[22]   CAASA cannot speak for what de Groote "really meant" when he admitted – over and over and over again – that CAASA made advances under the notes.  The fact is he admitted it.  Now, he has the awkward problem of squaring his pre-trial admissions with his trial position, which, without proper notice, played on the language of the notes and the fact that the advances actually came from Aboudaram.

De Groote says "CAASA has not cited any questions that it posed to de Groote, or any answer from de Groote that plausibly shows that de Groote meant to admit that Aboudaram rather than CAASA was making those advances [under the notes]" (Appellee Br. at 40).  It is beyond comprehension how de Groote can make such a statement in good faith in light of the questions and answers from de Groote's 2001 deposition (cited in CAASA's main brief) in which he spoke of Aboudaram's advances as being "consolidated in," "secured by," and "incorporated in" the notes.[23]   Deposition exchanges like the following one show that de Groote freely admitted that Aboudaram advanced de Groote's Georgetown mortgage payments under the notes:

> Q     Now you have admitted that you also received moneys from Alain Aboudaram to pay the mortgage on your property in Georgetown, correct?
> A     Absolutely, yes.
> Q     And you signed two notes that secured these advances.
> A     Yes.
> Q     They were secured by the deed of trust to the property, correct?

---

[22]     *See also* Appellee Br. at 40 ("After trial, CAASA argued that, by admitting that CAASA made advances to de Groote under the Notes, de Groote really meant to admit that Aboudaram was making those advances under the Notes.").

[23]     Appellant Br. at 15-16.

9

A    Yes.[24]

Needless to say, the pre-trial record is dense with such examples.    At trial, de Groote again admitted (during CAASA's case-in-chief) that Aboudaram's advances were made under the notes.[25]  De Groote's admissions show that de Groote was completely indifferent to whether it was CAASA or Aboudaram who advanced funds under the notes.  He referred to them interchangeably. He admitted that CAASA advanced the funds though he knew Aboudaram had done so.   He acknowledged he repaid large sums in response to CAASA's demands for repayment of the notes. All of his defenses and counterclaims were undisputably extrinsic to the notes.  The entire case, therefore, proceeded on the strength of his countless admissions about the link between Aboudaram's advances and the notes.  His admissions legally excused CAASA from having to prove the point.

**Trial Fabrications**.  De Groote claims he "never believed that Aboudaram was making advances under the Notes," and that he "had no way of knowing whether the payments were made by CAASA or Aboudaram" (Appellee Br. at 11) (citing de Groote's trial testimony).[26]  These were trial fabrications designed to support his new position.  Prior to trial, and in fact prior to the lawsuit, he knew perfectly well that Aboudaram made the advances.  He said so, for example, in his

---

[24]    Ex. 58 to CAASA's Motion for Appointment of a Trustee or Examiner (Sept. 17, 2004) (Bankr. Docket # 211) (quoting as Admission No. 4 de Groote Dep. 102 (Oct. 26, 2001)).

[25]    Trial Tr.  18:18-19:13 (Feb. 24, 2004) ("**Q.**  When did Mr. Aboudaram first start making advances to you under these promissory notes?  **A.**  Oh, he made advance under the promissory note – the first promissory note was signed in – [Objection overruled] . . . .  **Q.**  The first promissory note?  **A.**  Yes. The promissory note covered advances already made, and the understanding was that it would also cover advances to be made for regular payments for my mortgage to the mortgage company.  So it was like a sort of line of credit, promissory note, if I may use that expression.") (emphasis added).

[26]    *See also* Appellee Br. at 14 ("de Groote had no way of knowing whether the [Georgetown mortgage] payments were made by CAASA or Aboudaram;" and "de Groote never understood Aboudaram to be making advances under the Notes").

10

July 4, 1999, letter to Henry Politi, CAASA's representative charged with collecting the notes:

> [*Referring to de Groote's June 22, 1999, conversation in Washington with Aboudaram and Politi*] I explained to you and to Mr. Aboudaram that I can expect with certainty some professional income from now on. It is, of course, thanks to the reversal in my situation that I was able to settle the arrears on the [Georgetown] mortgage. I would like to propose, on that basis, to start the <u>reimbursement of the debt to Mr. Aboudaram</u> along the following lines: between now and September 15, I can expect sufficient proceeds from different new activities to <u>reimburse Mr. Aboudaram</u> an amount of $100,000. Between September 15 and the end of the year, my reimbursement will amount to a minimum of another $150,000.[27]

**<u>Misdescription of CAASA's Trial Concessions</u>**. De Groote says the trial judge "found" that CAASA "conceded that the language of the promissory note itself is unambiguous" (Appellee Br. at 15) (mis-citing trial transcript). But a comparison of the trial judge's actual statement (not a formal finding) with CAASA's counsel's concession reveals that the trial judge over-stated CAASA's concession. CAASA's concession pertained only to the particular note phrase "advances hereunder by the Lender," which CAASA's counsel agreed could not reasonably be interpreted to include advances by Mr. Aboudaram personally:

> THE COURT: . . . . My question is, based solely on the language of the instrument, are you asserting that the language of the instrument bears the reasonable interpretation that advances made hereunder by the lender includes advances made by Mr. Aboudaram personally?
>
> MR. MARKETOS: I don't think that's an interpretation that

---

[27] Ex. 7 [Letter from J. de Groote to H. Politi (July 4, 1999)] to CAASA's Amended Proof of Claim (Aug. 27, 2004) (Bankr. Claims Reg., Claim # 9) (emphasis added). The amounts referred to make it clear de Groote is speaking of repayment of the notes. De Groote's indifference (at the time) to the source of the funds that saved his Georgetown property from foreclosure is reflected in another letter he wrote to Politi just sixteen days later, in which he referred to his intention to "start reimbursement to CAASA from September onwards" (Ex. 9 [Letter from J. de Groote to H. Politi (July 20, 1999)] to CAASA's Amended Proof of Claim (Aug. 27, 2004) (Bankr. Claims Reg., Claim # 9)). De Groote's deposition testimony is filled with similarly interchangeable references to the source of the funds.

fits with <u>this</u> <u>particular</u> <u>language</u>.[28]

CAASA's counsel was not conceding that the entire instrument lacked ambiguity. The trial judge

later over-extended CAASA's limited concession to the entirety of the notes:

> THE COURT: . . . . And I think it's conceded that the language of the promissory note itself is unambiguous. I think counsel for CAASA properly, when pressed by the Court, conceded that the words themselves do not include advances made by Mr. Aboudaram.[29]

In later urging the trial judge to consider intrinsic and extrinsic evidence to interpret the notes,

CAASA pointed out various ambiguities in the notes and grids.[30]

> **<u>CAASA's Motions to Amend the Pleadings</u>**. In considering CAASA's trial and

post-trial motions to amend the complaint, it is important to keep clear what relief each motion

sought (and did not seek) and what response the District Court made. CAASA's oral trial motion

(March 1, 2004) sought "to amend the pleadings to conform them to the evidence, to assert claims

for breach of an oral promise to repay money to CAASA, or to Mr. Aboudaram, and to join Mr.

Aboudaram as a party Plaintiff in this action."[31] By contrast, CAASA's written post-trial motion to

amend sought merely to add a claim for reformation of the notes to change the note language

---

[28]    Trial Tr. 93:11-17 (Feb. 24, 2005) (emphasis added).

[29]    Trial Tr. 98:16-19 (Feb. 24, 2004).

[30]    *See, e.g.*, Mem. of P. & A. in Supp. of CAASA's Mot. to Alter or, in the Alternative, to Obtain Relief from Order Granting de Groote's Mot. for Judg. as a Matter of Law at 14-15, 24-27 (June 2, 2004) (Dist. Ct. Docket # 163); CAASA's Reply Mem. on Mot. to Alter or Obtain Relief from Judg. at 13 n.15 (July 16, 2004) (Dist. Ct. Docket # 170). Whether it was reversible error for the trial judge not to consider such facial ambiguities and surrounding circumstances is a question on appeal to the D.C. Circuit.

[31]    Trial Tr. 9:23-10:1 (Mar. 1, 2004).

12

underpinning de Groote's motion for judgment to "advances hereunder by Alain Aboudaram."[32] **Neither motion sought to advance the Alternative Claim Theories that CAASA seeks to advance in the Bankruptcy Court**.

Both motions were denied, but not, as de Groote contends, because "the District Court correctly rejected CAASA's argument that de Groote wrongfully 'surprised' CAASA with a 'new defense' at trial" (Appellee Br. at 27). CAASA's amendments were rejected because their lateness was perceived as being prejudicial to de Groote. The merits of CAASA's proposed amendments were not adjudicated.

**Misdescription of the District Court's June 7, 2004, Decision**. The trial judge's June 7, 2004, decision did not describe the excluded grids as "a grid that otherwise conceivably could ha[ve] shown de Groote's implicit consent to try a reformation case" (Appellee Br. at 17). What the judge said was: "These [grids] were arguably evidence that such advances were understood to have been made under the promissory notes."[33]

**CAASA's Post-Trial Motion for Reconsideration**. In describing CAASA's post-trial motion for reconsideration (Appellee Br. at 17-19), de Groote focuses on the record of counsel's negotiations during trial leading to Trial Stipulation No. 2.[34] But de Groote entirely misses the point

---

[32]     CAASA's Mot. to Amend its Compl. to Conform to the Evid. (Mar. 8, 2004) (Dist. Ct. Docket # 141). CAASA did not "argu[e] new theories of recovery a third time in requesting reconsideration of the judgment entered against it," as de Groote wrongly claims (Appellee Br. at 27). Nor did CAASA "attemp[t] a fourth time in the bankruptcy court to set aside the [District] Court's judgment on the grounds of wrongful surprise," as de Groote also claims (*id*.). Rather, CAASA raised wrongful surprise as a ground for confining the *res judicata* effect of the District Court judgment.

[33]     Mem. Op. at 10 (June 7, 2004) (Dist. Ct. Docket # 156).

[34]     The cited portions of the record must be read thoroughly to understand the full contours of these events (*see generally* Marketos Decl. (June 22, 2004) (Dist. Docket # 163); Marketos Decl. (July 16, 2004) (Dist. Ct. Docket # 170)).

pertinent to this appeal. He does not dispute that he won the trial on an issue of which his counsel gave, at best, less than twenty-four hours' notice <u>during</u> trial. Such "notice" was plainly insufficient to make the resulting judgment *res judicata* as to CAASA's Alternative Claim Theories.

Elsewhere, de Groote contends that "CAASA argued new theories of recovery a third time in requesting reconsideration of the judgment entered against it" (Appellee Br. at 27). CAASA's reconsideration motion did not argue new theories of recovery, let alone CAASA's Alternative Claim Theories. The motion merely sought reconsideration of the denial of CAASA's written motion to amend, which had not advanced the Alternative Claim Theories.

De Groote also mistakes the role played by wrongful surprise on CAASA's motion for reconsideration (Appellee Br. at 27-28). CAASA argued that de Groote's wrongful surprise was a ground for setting aside the judgment that he was not liable under the notes. Thus, the District Court's decision of CAASA's motion for reconsideration is not *res judicata* on de Groote's wrongful surprise except insofar as the wrongful surprise pertained to CAASA's breach of notes case.

## B.    <u>Bankruptcy Court Case</u>

De Groote focuses attention on CAASA's motion to lift the automatic stay to proceed with the litigation of the District Court Case and the resulting order (Appellee Br. at 5, 21-22). It suffices to say that in 2002, when CAASA moved to lift the automatic stay, neither CAASA nor the Bankruptcy Court had notice that two years later de Groote would recant his sworn testimony and deny what he had always conceded.[35] Accordingly, neither CAASA's lift-stay motion nor the resulting Bankruptcy Court consent order should be read as contemplating that CAASA would

---

[35]    CAASA ventures to say the idea was not even in de Groote's mind at the time. Judging by his counsel's complete failure **two years** later to make any mention of de Groote's change of position at the lengthy pre-trial conference held in the district court 15 days before trial, he and his counsel appear to have formulated their trial ambush strategy sometime during those 15 days.

proceed on any theory other than breach of the notes, or that Aboudaram would be joined as a party.

De Groote asserts that CAASA's amended proof of claim in the Bankruptcy Case increased its original proof of claim (Appellee Br. at 6). In fact, CAASA's amended proof of claim was about $10,000 less than its original proof of claim.[36] CAASA has pointed this out every time de Groote says the opposite.[37] But he persists anyway, even though the record shows him to be plainly wrong. It is a minor point, but as well as any other it illustrates de Groote's consummate disregard for the truth.

# ARGUMENT

## REPLY TO de GROOTE's POINT I

**A.    _Res Judicata_**

De Groote does not dispute that the applicable _res judicata_ test in this Circuit is the Restatement test. Nor does he dispute that under Section 24(2) of such test (concerning the dimensions of a "claim" for purposes of merger or bar) the determination of what constitutes a factual grouping must "be determined pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." RESTATEMENT (SECOND) OF JUDGMENTS § 24(2) (1982).

---

[36]    The details are set out in CAASA's principal brief at 3.

[37]    _See, e.g.,_ CAASA's Opp'n to Debtor's Obj. to Proofs of Claim at 4 n.5, 15 n.36 (Oct. 7, 2004) (Bankr. Docket # 218); CAASA's Opp'n to Debtor's Mot. for Summ. J. at 20 n.48 (Dec. 3, 2004) (Bankr. Docket # 247); Reply Mem. in Further Supp. of CAASA's Mot. to Susp. Further Proceedings Relating to Debtor's Discl. Stmt. and Reorg. Plan at 4-5 (May 4, 2005) (Bankr. Docket # 386).

Instead, de Groote emphasizes that CAASA has a single claim.[38] His argument is that by filing a single-count complaint in the District Court based only on breach of the notes, CAASA deliberately chose not to advance other available theories of recovery on a claim for money lent. Having deliberately foregone other theories, he says, *res judicata* now bars them (Appellee Br. at 23-24).

The fallacy of de Groote's argument is that CAASA did not deliberately limit its complaint to one theory of recovery. Rather, CAASA's complaint exactly mirrored de Groote's consistent affirmative concessions over a period of years. Everything he said and did up to the time the complaint was filed led CAASA reasonably to believe that the notes fully expressed de Groote's debt and CAASA's claim. Nothing he said or did thereafter gave CAASA any reason to amend the complaint or any reason to anticipate that he would abandon his concessions at trial.

What is important for *res judicata* purposes is the Bankruptcy Court's failure to appreciate that, in light of de Groote's failure to abandon his longstanding concessions until trial, CAASA could not reasonably have been expected to litigate other claim theories in the District Court Case. The Bankruptcy Court also failed to appreciate that CAASA's Alternative Claim Theories depend on a different framework of facts from CAASA's breach of notes theory. These errors led the Bankruptcy Court to treat CAASA's different claim theories as a single unit for *res*

---

[38]     As filed in the Bankruptcy Court, CAASA's claim is simply for "money loaned." *See* CAASA's Proof of Claim (Oct. 2, 2002) (Bankr. Claims Reg., Claim # 5); CAASA's Amended Proof of Claim (Aug. 27, 2004) (Bankr. Claims Reg., Claim # 9). As originally filed in 2002, the claim was advanced on the theory of breach of the notes. As amended in 2004, the claim is advanced on other theories. It also retains the breach of notes theory in the event the District Court judgment against CAASA is reversed by the D.C. Circuit. In bankruptcy, a proof of claim need not elaborate on the legal theories underlying it. Only documents evidencing the claim, if any, are required to be filed with the proof of claim. *See* Fed. R. Bankr. P. 3001(c); LBR 3007-1(a)(1); Official Form No. 10. "A properly filed proof of claim is prima facie evidence of the validity and amount of the claim." *In re Fullmer*, 962 F.2d 1463, 1466 (10th Cir. 1992) (citing 11 U.S.C. § 502(a) and Fed. R. Bankr. P. 3001(f)). Nothing in the Code or the Rules prohibits a creditor from relying on any available legal theories supported by the evidence attached to a proof of claim.

*judicata* purposes.  Properly limited, the District Court judgment is not *res judicata* as to any theory but breach of the notes.  CAASA should therefore be allowed to proceed with its Alternative Claim Theories in the Bankruptcy Court.

De Groote's attempt to distinguish *United States Indus., Inc. v. Blake Constr. Co.*, 765 F.2d 195 (D.C. Cir. 1985), falls short.  As de Groote's own quotation shows (Appellee Br. at 26 n. 47), *Blake* presupposes the plaintiff has made "a unilateral, unauthorized determination not to go forward on issues that were properly in the case."  CAASA's complaint did not result from any such intentional "Balkanization" of its claim.

## B.    Law of the Case

The Bankruptcy Court did not rest its decision on law-of-the-case grounds for good reason: they do not apply.[39]  Precisely speaking, the law-of-the-case doctrine "refers to the concept that, 'when there are multiple appeals taken in the course of a single piece of litigation . . . decisions rendered on the first appeal should not be revisited on later trips to the appellate court.'"  *United States v. Alaw*, 327 F.3d 1217, 1220 (D.C. Cir. 2003) (quoting *Crocker v. Piedmont Aviation, Inc.*, 49 F.3d 735, 739 (D.C. Cir. 1995)).  There have been no prior trips to this appellate court that can serve as law of the case.[40]

---

[39]    De Groote's objection to CAASA's proof of claim (Sept. 7, 2004) (Bankr. Ct. Docket # 207) raised lack of standing (or which *res judicata* is at least arguably a part) as his sole ground for objecting to CAASA's original and amended proofs of claim.  He did not raise law of the case.  Thus, even though he raised law of the case as a ground for summary judgment, the Bankruptcy Court ignored it, presumably because it was procedurally improper.

[40]    Contrary to de Groote's argument, the District Court was not exercising bankruptcy appellate jurisdiction in presiding over the trial of CAASA's promissory note claim and de Groote's counterclaims after the Bankruptcy Court lifted the automatic stay.  *See generally* 28 U.S.C. § 158(a), (c)(2) (West Supp. 2004).  Even if the District Court were exercising appellate jurisdiction, it made no rulings on CAASA's Alternative Claim Theories.  Thus, as to CAASA's alternative theories, even if the law-of-the-case doctrine were applicable, there is no law of the case to be applied.

De Groote bases his law-of-the-case argument on the Bankruptcy Court's 2002 lift-stay order, but in lifting the stay the Bankruptcy Court did not express a ruling on any claim other than CAASA's promissory note enforcement claim, which was the only claim in the mind of the parties and the Bankruptcy Court at the time.  Thus, even if the Bankruptcy Court's lift-stay order can be read as expressing law of the case (a stretch to begin with), the order did not proclaim any law of the case as to any of CAASA's Alternative Claim Theories.[41]  For these several reasons, de Groote's law-of-the-case argument fails as a matter of law.

### REPLY TO de GROOTE's POINT II

As usual, de Groote tries to make much of CAASA's supposed burden to prove that an assignment linked Aboudaram's advances to the notes and CAASA's supposed failure to carry that burden (Appellee Br. at 2-3, 12-14, 29-34).  But de Groote's lengthy discussion of the absent assignment document merely diverts attention from the relevant *res judicata* question, which is:  in light of CAASA's lack of notice until trial that de Groote would make an issue of the link between Aboudaram's advances and the notes, should the resulting judgment against CAASA be *res judicata* against claim theories other than breach of the notes?

A few clarifying comments about the assignment are in order.  CAASA had no burden to prove an assignment.  De Groote's numerous pleading admissions (and others) legally excused CAASA from having to prove a link between Aboudaram's advances and the notes.  Furthermore, if CAASA needed proof of the assignment, CAASA had it.  CAASA's evidence of

---

[41]    De Groote's argument is incoherent about which law of the case he is actually relying on. At the beginning he cites the Bankruptcy Court's lift-stay order.  But at the end he cites the District Court's decisions. *See* Appellee Br. at 29 (". . . the [District] Court's decisions rejecting CAASA's new theories and entering judgment against its claim was the law of the case barring CAASA's new theories before the bankruptcy court.").

18

assignment was what CAASA had specified throughout the case: the notes themselves.[42]

A few weeks before trial, CAASA discovered Aboudaram's March 10, 1999, letter formally instructing CAASA to enforce the notes.[43] CAASA alluded to the letter in its opening statement, and tried to introduce it into evidence at trial.[44] Because the letter was excluded from evidence, CAASA had no opportunity to explain why the letter existed or said what it said. Even so, the letter was actually unnecessary as proof of Aboudaram's assignment because the notes themselves effected and evidenced the assignment.[45]

De Groote contends that his Rule 50(a) motion gave CAASA all the notice it needed to meet its burden of proof (Appellee Br. at 32-34). De Groote did not make this argument in the

---

[42]    An assignment was not mentioned in any of the pleadings until CAASA's reply: "CAASA further states that the First Promissory Note was later executed by the parties in order to formally assign to CAASA de Groote's indebtedness to Mr. Aboudaram" (Pl.'s First Amended Reply to Def.'s First Amended Countercl. ¶ 13 (July 9, 2001) (emphasis added)). De Groote was therefore on notice from the beginning of the case that CAASA deemed the notes themselves to have effected the assignment and to be evidence of the assignment. CAASA's position remained consistent through the case as shown by its discovery responses, which are cited by de Groote at pages 30-31 of his brief. De Groote himself, through counsel in a related Swiss case, admitted that the notes evidenced Aboudaram's assignment: "Alain Aboudaram . . . assigned his personal claim against Jacques de Groote to CAASA in December 1995 . . ." (Ex. B2 [Letter from Thierry Amy, Esq., to Magistrate Jean Treccani (Mar. 26, 2003) (English translation)] to Marketos Decl. (July 16, 2004) (Dist. Ct. Docket # 170)). De Groote's reference to a December 1995 assignment is to the first promissory note.

[43]    *See* Ex. 38 to CAASA's Amended Proof of Claim (Oct. 7, 2004) (Docket # 218). Exhibit 38 was attached to CAASA's Opposition to Debtor's Objection to Proofs of Claim, which was filed October 7, 2004. *See also* Ex. 57 to CAASA's Motion for Appointment of a Trustee or Examiner (Sept. 17, 2004) (Docket 211).

[44]    Trial Tr. 18:20-22 (Feb. 20, 2004) (". . . Mr. Aboudaram, rather reluctantly, formally assigned his claim to his company, and he put the matter in the hands of his company to collect.") (CAASA's Opening Statement); Trial Tr. 35:4-5 (Feb. 23, 2004) (document excluded from evidence).

[45]     CAASA made no "admission as to the falsity of its assignment claim," as de Groote wrongly claims (Appellee Br. at 16).

19

Bankruptcy Court and therefore waived it.[46]  Regardless of his waiver, it is not the function of a Rule 50(a) motion to put facts in issue.  That is the function of the pleadings.  By the time a Rule 50(a) motion is made, the non-moving party should have been on very long notice of the facts in issue (and of the facts admitted).  The Rule 50(a) motion merely apprises the non-moving party of a challenge to the proof bearing on a dispositive fact already known to be in issue because of the pleadings.  The Advisory Committee Note to the 1991 amendment of Rule 50 makes it very clear that "[i]n no event . . . should the court enter judgment against a party who has not been apprised of the materiality of the dispositive fact and been afforded an opportunity to present any available evidence bearing on that fact."  Fed. R. Civ. P. 50 advisory cmte.'s note to 1991 amdt.

Furthermore, when the non-moving party is apprised by a Rule 50(a) motion that a fact in issue has assertedly not been proved, the non-moving party's recourse is to show – based on what has already been introduced into evidence <u>before</u> resting – that there is sufficient evidence of the fact to allow the issue to go to the jury.  In response to the motion, the non-moving party is not given a chance to re-try his case.  *See generally* 9 J. W. MOORE, MOORE'S FEDERAL PRACTICE § 50.20[1] (Lexis Nexis 2005) ("Most commonly, the [Rule 50(a)] motion is asserted <u>after</u> the close of the opponents' case or before submission to the jury.") (emphasis added).

CAASA might theoretically have moved to re-open its case-in-chief, but this misses the point.  CAASA should not have had to re-open its case to prove an issue de Groote had long before legally conceded in his pleadings and elsewhere.  Moreover, in light of the trial judge's rulings, the judge was unlikely to have entertained evidence outside the four corners of the notes to

---

[46]     For decades, the D.C. Circuit has emphasized that "an argument not made in the lower tribunal is deemed forfeited and will not be entertained absent exceptional circumstances."  *United States v. Hylton*, 294 F.3d 130, 135 (D.C. Cir. 2002) (internal quotation marks and citation omitted).

20

prove the link between Aboudaram's advances and the notes.  So re-opening the case would have been futile.[47]

De Groote contends that CAASA had a duty under Rule 50 to present its new theories and supporting evidence while the deficiencies in CAASA's note case could "still be corrected" (Appellee Br. at 33).  But by the time of de Groote's motion it was far too late to change CAASA's case, which had all along proceeded based on de Groote's failure to make an issue of the link between Aboudaram's advances and the notes.[48]  De Groote also assumes that CAASA's Alternative Claim Theories were fully formulated when he made his Rule 50 motion and days later when CAASA moved unsuccessfully to amend the complaint (Appellee Br. at 34).  But the reality is that his Rule 50 motion was such a complete about-face from the understandings on which the parties had proceeded for the preceding nine years (including the three pre-trial years), that it took CAASA considerable time to look outside the notes to begin formulating alternative theories of recovery.

## REPLY TO de GROOTE's POINT III

De Groote does not dispute that under Comment j to Section 26 of the Restatement (Second) of Judgments (concerning mistake or fraud, concealment, or misrepresentation by the defendant) even an innocent misrepresentation that prevents a plaintiff from including the entire claim in the original action is a ground for making an exception to the bar of *res judicata*.  De

---

[47]    On a motion to re-open CAASA would have had to show that:  (1) it had new evidence not previously introduced that was both important and probative; (2) CAASA had an adequate explanation for failing to introduce the new evidence before resting on its case-in-chief; and (3) reopening CAASA's case would not have caused de Groote undue prejudice.  *See Garcia v. Woman's Hosp. of Texas*, 97 F.3d 810, 814 (5th Cir. 1996).  These showings had no bearing on a fact that had been legally conceded.

[48]    In fact CAASA did try to cure one deficiency by pointing out in opposition to de Groote's Rule 50(a) motion that the grids were evidence intrinsic to the notes that Aboudaram's advances were encompassed by the notes, and that the grids were in evidence as part of Plaintiff's Trial Exhibit No. II-46.  *See* CAASA's Supp. Mem. on Issues Relating to Interp. of the Promissory Notes at 6-7 & n.5 (Mar. 8, 2004) (Dist. Ct. Docket # 140).  But the trial judge declined to consider the grids.

Groote's misrepresentation about what issues he would contest at trial was hardly innocent. For nine years he affirmatively acknowledged the link between Aboudaram's advances and the notes and formalized that concession in his pleadings. Then at trial he simply renounced it.

De Groote mis-identifies his misconduct. His misconduct was not in failing to "disabuse CAASA of its misunderstanding that an admission as to CAASA was not an admission as to Aboudaram," as de Groote contortedly says (Appellee Br. at 35). Rather, de Groote's misconduct was waiting until the last moment to contest the link between Aboudaram's advances and the notes, which he had always previously conceded, both during the case and before.

De Groote's misconduct also included lying under oath. His list of creditors filed in his Bankruptcy Case in 2002 under penalty of perjury did not include Aboudaram. It did, however, list CAASA as a secured creditor.[49] At trial in 2004, de Groote testified that Aboudaram was his creditor, not CAASA. If his trial testimony was truthful, then he breached his bankruptcy duty by failing to identify a known creditor, Aboudaram. If his list of creditors in the Bankruptcy Case was truthful, then de Groote lied at trial. His sworn list of creditors and his trial testimony cannot both be true. Now he points out that Aboudaram never filed a claim, and he asserts that Aboudaram's claim would be time-barred anyway. Such cynical litigation tactics do not warrant the benefit of repose.

## REPLY TO de GROOTE's POINT IV

De Groote does not dispute that *res judicata* is no bar when the party against whom

---

[49]    De Groote had a legal duty under bankruptcy law to truthfully identify his creditors. *See* 11 U.S.C.A. § 521(1) (West 2004); *see also In re Maya Constr. Co.*, 78 F.3d 1395, 1398 (9th Cir. 1996) (debtor's knowledge of the existence of creditor rather than the creditor's knowledge of its claim controls whether the debtor has duty to list creditor); 18 U.S.C.A. §§ 152(2) (criminalizing false oaths in or in relation to Chapter 11 case) & 157 (criminalizing false representations made in or in relation to a Chapter 11 proceeding in furtherance of fraudulent scheme) (West 2000).

the earlier decision is asserted did not have a full and fair opportunity to litigate the claim or issue. *See, e.g., Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 480-81 & n.22 (1982) (lack of full and fair opportunity to litigate bars application of *res judicata* as much as it does collateral estoppel) (citing *Allen v. McCurry*, 449 U.S. 90, 95 (1980), and *Montana v. United States*, 440 U.S. 147, 164 n.11 (1979)). Instead, de Groote contends that CAASA stubbornly clung to its notes theory and squandered opportunities to add new theories and parties in the District Court Case. The implication is that Aboudaram consciously masked his claim behind CAASA's to recover penalty interest, enforcement costs, and security to which he was not entitled on his personal advances. CAASA's "extreme litigiousness," says de Groote, then ran up the enforcement costs to $1.8 million (Appellee Br. at 36-38; *see also id.* at 4, 10, 32, 33, 34).

It was never Aboudaram's intention to disguise his claim as CAASA's. He and de Groote had been friends. They had done business together. Their relationship induced Aboudaram to advance the funds necessary to save de Groote's Georgetown house from foreclosure. De Groote agreed to repay the advances to CAASA and agreed (despite what he says now) that the 1995 note gave CAASA the right to collect them.[50] In filing the complaint, CAASA honestly believed it was advancing the claim de Groote had always acknowledged, namely, CAASA's claim under the notes. The complaint was not a subterfuge to recover Aboudaram's claim. As for CAASA's high enforcement costs, these resulted largely from having to defend against de Groote's 20 affirmative defenses and counterclaims, which consumed most of the parties' attention during discovery, other

---

[50]     In testifying about this arrangement, Aboudaram (not a native English-speaker) described it as "fronting," which to him did not have a negative connotation.

pre-trial phases of the District Court Case, and the trial itself.[51]

CAASA did not have a full and fair opportunity to add new theories, let alone new claims or parties. The District Court judgment therefore should be *res judicata* only as to the issues actually litigated. None of CAASA's Alternative Claim Theories was actually litigated in the District Court Case.

### REPLY TO de GROOTE's POINT V

De Groote contends that CAASA was barred by its own unclean hands from raising estoppel against *res judicata* (Appellee Br. at 39). As to CAASA's District Court conduct, de Groote's same argument (and more) was soundly rejected by the District Court's order denying de Groote's post-trial motion for Rule 37 sanctions (June 28, 2004) (Dist. Ct. Docket # 165).[52]

As to CAASA's Bankruptcy Court conduct, de Groote cites proceedings having nothing to do with this appeal. The unclean hands rule is not so open-ended as to encompass unrelated matters. The doctrine of unclean hands only "closes the doors of a court of equity to one tainted with inequitableness or bad faith <u>relative to the matter in which he seeks relief</u>." *United States v. Phillip Morris, Inc.*, 300 F. Supp. 2d 61 (D.D.C. 2004) (emphasis added) (quoting *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). De Groote cites no unclean-hands conduct related to the Bankruptcy Court proceedings underlying this appeal, and there was none.

---

[51]    The trial judge recognized as much in the order resolving CAASA's pre-trial motion *in limine* (Jan. 9, 2004) (Dist. Ct. Docket # 85). Had CAASA prevailed at trial, the motion *in limine* order would have allowed CAASA to recover its reasonable costs of defending against de Groote's counterclaims, which far outweighed CAASA's costs of prosecuting its claim under the notes.

[52]    De Groote's description of his post-trial motion for sanctions is full or errors and mis-statements, some of them egregious (Appellee Br. at 19-20). Because they are irrelevant to this appeal, CAASA will pass them by.

De Groote's reliance on *Mullins v. Kaiser Steel Corp.*, 642 F.2d 1302 (D.C. Cir 1980), is in bad faith (Appellee Br. at 39). The decision was reversed in *Kaiser Steel Corp. v. Mullins*, 455 U.S. 72 (1982) (rejecting all of the D.C. Circuit's reasons for not sustaining Kaiser's illegality defense, including Kaiser's unclean hands). De Groote knows of the reversal because CAASA cited it to him a year ago when he relied on *Mullins* the first time.[53]

## CONCLUSION

For the foregoing reasons and those set forth in CAASA's main brief, CAASA respectfully requests that the order granting de Groote's motion for summary judgment be reversed, and that this case be remanded to the Bankruptcy Court for adjudication of CAASA's Alternative Claim Theories.

Dated: Washington, D.C.
        August 1, 2005

                          Respectfully submitted,

                          BERLINER, CORCORAN & ROWE, L.L.P.

                          Attorneys for Appellant

                By:     /s/ James L. Marketos
                        James L. Marketos
                            D.C. Bar No. 412953
                        Alexander C. Vincent
                            D.C. Bar No. 473459

                        1101 Seventeenth Street, N.W.
                        Suite 1100
                        Washington, D.C.   20036-4798
                        Tel.: (202) 293-5555
                        Fax: (202) 293-9035
                        E-mail:        jlm@bcr-dc.com, acv@bcr-dc.com

---

[53]     CAASA Reply Mem. on Mot. to Alter or Obtain Relief from Judg. at 24 n.26 (July 16, 2004) (Dist. Ct. Docket # 170).