## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSEIL ALAIN ABOUDARAM, S.A. )<br>)<br>Appellant, )<br>)<br>v. )<br>)<br>JACQUES de GROOTE, )<br>)<br>Appellee. )<br>_____) | Case No. 1:05-CV-00988 (RMC) |

## MOTION FOR RECONSIDERATION OF ORDER
## STRIKING APPEARANCE OF SALE & QUINN, P.C.

Appellee, Jacques de Groote ("**Appellee**" or "**Debtor**"), by counsel, requests that the court reconsider and vacate its March 8, 2006 Order striking the appearance of Stephen Sale, John D. Quinn and the law firm of Sale & Quinn, P.C. ("**Order**") for the reasons set forth in the accompanying Memorandum in Support of Motion for Reconsideration of Order Striking Appearance of Sale & Quinn, P.C.

WHEREFORE, the Debtor, by counsel, requests that the court: (1) vacate the Order; and (2) grant such further relief the court deems appropriate.

                PALEY, ROTHMAN, GOLDSTEIN,
                 ROSENBERG, EIG & COOPER, CHTD.


By: _____/s/\_\_\_\_\_Alan D. Eisler\_\_\_\_\_
       Alan D. Eisler, Bar No. 435054
       4800 Hampden Lane, 7th Floor
       Bethesda, Maryland  20814-2922
       Phone: (301) 656-7603
       Fax: (301) 654-0165
       Counsel for Appellee

2

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March 2006, copies of the Motion to Reconsider Order Striking Appearance of Sale & Quinn, P.C. were sent by first class mail, postage prepaid, to:

>James L. Marketos, Esquire
>Berliner, Corcoran & Rowe, LLP
>1101 17th Street, N.W., Suite 1100
>Washington, D.C.  20036
>
>Stephen Sale, Esquire
>Sale & Quinn, P.C.
>910 16th Street, N.W., 5th Floor
>Washington, D.C.  20006-2992
>
>Jacques de Groote
>1519 34th Street, N.W.
>Washington, D.C.  20007
>
>Office of the U.S. Trustee
>115 S. Union Street
>Suite 210
>Alexandria, VA 22314

   /s/   Alan D. Eisler
Alan D. Eisler

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| CONSEIL ALAIN ABOUDARAM, S.A. ) <br> ) <br> Appellant, ) <br> ) <br> v. ) <br> ) <br> JACQUES de GROOTE, ) <br> ) <br> Appellee. ) <br> _____) | Case No. 1:05-CV-00988 (RMC) |

**MEMORANDUM IN SUPPORT OF MOTION FOR RECONSIDERATION
OF ORDER STRIKING APPEARANCE OF SALE & QUINN, P.C.**

Appelle, Jacques de Groote ("**Appellee**" or "**Debtor**"), by counsel, requests that the court reconsider and vacate its March 8, 2006 Order striking the appearance of Stephen Sale, John D. Quinn and the law firm of Sale & Quinn, P.C. ("**Order**"), and states as follows:

BACKGROUND

1. On January 3, 2001, Conseil Alain Aboudaram, S.A. ("**CAASA**") filed a single-count Complaint ("**Complaint**") against the Debtor in the United States District Court for the District of Columbia ("**District Court**"), Case No. 1:01CV00006 (the "**District Court Case**"), in which CAASA sought a judgment of $463,055.60, plus fees and costs against the Debtor for amounts allegedly due under two promissory notes that Debtor executed in favor of CAASA. The Debtor disputed CAASA's claims and asserted various counterclaims against CAASA.

2. The Debtor retained Stephen Sale, John D. Quinn and the law firm of Sale & Quinn, P.C.[1] (collectively "**S&Q**") to defend him in the District Court Case.

---

[1] S&Q was then known as Claxton, Sale & Quinn, P.C.

3. On May 14, 2002, the Debtor filed a voluntary Chapter 11 bankruptcy petition ("**Bankruptcy Case**") in the United States Bankruptcy Court for the District of Columbia ("**Bankruptcy Court**"), Case No. 02-00981 which automatically stayed the District Court Case.

4. On May 15, 2002, the Debtor filed an application to employ Paley, Rothman, Goldstein, Rosenberg, Eig & Cooper, Chartered ("**Paley Rothman**") as counsel in the Bankruptcy Case.

5. On June 20, 2002, the Debtor filed an Application to Employ Special Counsel ("**Employment Application**") in which the Debtor sought approval to employ S&Q as special counsel in the District Court Case.

6. On June 21, 2002, the Bankruptcy Court entered an order authorizing the Debtor to employ Paley Rothman as counsel in the Bankruptcy Case.

7. On July 1, 2002, CAASA filed an Opposition to Debtor-in-Possession's Application to Employ Special Counsel ("**Opposition**"), which alleged that S&Q held an adverse interest to the Debtor and its employment was not in the best interests of the bankruptcy estate.

8. On July 10, 2002, the Bankruptcy Court entered a Decision re Application to Employ Special Counsel ("**Decision**") and Order Approving Employment of Special Counsel ("**Employment Order**"), which overruled CAASA's objections and authorized the Debtor to employ S&Q as special counsel.

9. On July 12, 2002, CAASA filed a motion for relief from automatic stay to permit the District Court Case to proceed ("**Lift Stay Motion**"). On August 20, 2002, the court entered a Consent Order Modifying Automatic ("**Lift Stay Order**") that allowed "the District Court to reduce to judgment the amount of CAASA's and/or the Debtor's

2

respective claims and counterclaims" as CAASA itself sought in the Lift Stay Motion and its proposed order.

10. In order to limit the expense of the District Court case, Paley Rothman did not materially participate in the District Court Case or attend the week long trial.

11. The District Court Case ultimately went to trial on February 20, 2004. On March 2, 2004, the jury returned a verdict in favor of CAASA, finding that the Debtor had defaulted in payment of the two promissory notes and that CAASA was entitled to $536,263.55 in damages. The jury rejected the Debtor's counterclaims.

12. Because the jury's verdict awarded CAASA sums that CAASA's principal, Alain Aboudaram ("**Aboudaram**") personally (rather than CAASA) claimed to have advanced to the Debtor, CAASA sought to amend the Complaint. At trial, CAASA made an oral motion to add Aboudaram as a plaintiff and a count for breach of an oral contract between the Debtor and Aboudaram. CAASA subsequently filed a written Motion to Amend Complaint to Conform to Evidence at Trial ("**Second Motion to Amend**") which sought to reform the Notes to include Aboudaram's advances as advances by Lender (CAASA) under the Notes.

13. On March 8, 2004, the Debtor renewed in writing his motion for judgment as a matter of law on the grounds that the promissory notes did not encompass personal debts owed to Aboudaram ("**Motion for Judgment**").

14. On June 7, 2004, the District Court issued a Memorandum Opinion and an Order ("**Order**") denying the Second Motion to Amend and granting the Debtor's Motion for Judgment against CAASA's claims. The District Court ruled that interpretation of the notes, which CAASA stipulated were *unambiguous*, was a matter of law for decision by the District Court, that the jury should not have been instructed to

3

interpret the notes in light of the parties' subsequent conduct and course of performance, and that the instruction was harmless error due to the District Court's entry of judgment for the Debtor.

15. As the District Court made clear in the Order, "judgment is entered for de Groote on CAASA's claims under the promissory notes."

16. On June 22, 2004, CAASA filed a motion for reconsideration of the Order ("**Motion for Reconsideration**"), arguing for a third time to the District Court that: (a) the Debtor wrongfully surprised CAASA at trial (by requiring CAASA to meet its burden of proof); (b) CAASA should be allowed for Aboudaram's benefit to amend and relate back the Complaint to its filing date three and one-half years earlier.

17. On August 31, 2004, the District Court denied the Motion for Reconsideration ("**Order Denying Reconsideration**").

18. On September 30, 2004, CAASA filed a notice of appeal of the Order and Order Denying Reconsideration to the United States Court of Appeals for the District of Columbia Circuit ("**Circuit Court Appeal**"). Notwithstanding CAASA's Circuit Court Appeal, the District Court judgment is final.

19. Despite the Order and Order Denying Reconsideration, CAASA continued to contend that it had a claim against the Debtor. In fact, on August 27, 2004, CAASA amended its Proof of Claim ("**Amended Proof of Claim**") in the Bankruptcy Case. Rather than reflecting entry of judgment against its claim, CAASA incredibly ignored the judgment and *increased* the amount of the Proof of Claim from $1,385,093.17 to $1,464,751.04, ostensibly "to account for recent events in the related [D]istrict [C]ourt [C]ase ... and to re-calculate the claim amount based on more precise information developed for trial of the [D]istrict [C]ourt [C]ase."

4

20. On September 7, 2004, the Debtor filed an Objection to Conseil Alain Aboudaram, S.A.'s Proofs of Claim ("**Objection to Claim**") on the grounds that the District Court had disallowed CAASA's claim and the Bankruptcy Court was bound by the judgment of the District Court.

21. CAASA opposed the Objection to Claim and asserted that the District Court had only determined CAASA's claims on its two promissory notes. CAASA maintained that the Order did not disallow other "claim theories" that CAASA had opted not to litigate in the District Court case. The Bankruptcy Court ultimately directed the parties to file motions for summary judgment on the issue of whether CAASA's "claim theories" were barred by *res judicata*.

22. On November 12, 2004, the Debtor filed a Motion for Summary Judgment on Objection to CAASA's Proofs of Claim ("**Motion for Summary Judgment**"). *The disposition of the Objection to Claim and Motion for Summary Judgment hinged on what was actually litigated or could have been litigated in the District Court Case.* To conserve resources and avoid an expensive learning curve, Paley Rothman relied heavily upon S&Q, which had firsthand knowledge of the District Court litigation.

*23.* On December 14, 2004 and January 4, 2005, the Bankruptcy Court held hearings on the Motion for Summary Judgment. At the December 14, 2004 hearing, *CAASA objected to special counsel, Stephen Sale, arguing the Motion for Summary Judgment on behalf of the Debtor. Judge Teel denied CAASA's objection and permitted Mr. Sale to present the Motion for Summary Judgment.* In doing so, Judge Teel recognized that the CAASA's purported alternative claim theories arise out of what was or could have been litigated in the District Court Case.

5

24. On February 8, 2005, the Debtor filed in the Bankruptcy Court a Motion to Expand Scope of Employment of Special Counsel ("**Motion to Expand Employment**"). The Employment Application and Employment Order had contemplated S&Q's representation ending with the conclusion of the District Court Case, but CAASA had appealed decisions of the District Court and had filed in the Bankruptcy Case numerous pleadings and discovery requests that related to or required knowledge of the District Court Case discovery, proceedings, trial, and post-trial motions. In order to clarify the scope of S&Q's role and preempt pleadings from CAASA similar to the Motion to Strike, the Debtor filed the Motion to Expand Employment.

25. On February 23, 2005, the Bankruptcy Court entered an Order Granting Motion for Summary Judgment ("**Summary Judgment Order**") and Decision Re Motion for Summary Judgment ("**Summary Judgment Decision**"), which sustained the Objection to Claim and disallowed CAASA's claims in their entirety.

*26.* In addition, on March 7, 2005, the United States Trustee filed in the Bankruptcy Case an opposition to the Motion to Expand Employment. *The United States Trustee wanted to be sure that S&Q's role in the Bankruptcy Case would be limited to matters derivative of the District Court Case.*

27. On April 5, 2005, the Bankruptcy Court held a hearing on the Motion to Expand Employment. At the hearing, the Debtor argued that CASA had no standing to object to the Motion to Expand because CAASA no longer had a claim in the Bankruptcy Case. The Bankruptcy Court opted not to address the Debtor's standing argument with respect to CAASA because the U.S. Trustee's Office had also filed an opposition to the Motion to Expand Employment.

6

28. On April 7, 2005, the Bankruptcy Court entered an Order Clarifying Authorized Scope of Special Counsel's Employment ("**Order Clarifying Scope of Employment**"). In pertinent part, the Order Clarifying Scope of Employment states:

> [W]ith respect to [Stephen] Sale's future conduct (meaning all conduct occurring after the April 5, 2005 hearing), the July 10, 2002 [Employment] order is hereby clarified to reflect that Sale is authorized to handle any appeal of the District Court litigation, and he is authorized to assist the debtor and the debtor's bankruptcy counsel by assisting and giving information with respect to matters on which he, Sale, has institutional memory by reason of his participation in the District Court civil action and the related appeal.

Order Clarifying Employment at p. 5.

29. On June 27, 2005, CAASA filed its Appellant's Brief in this appeal.

30. On July 12, 2005, S&Q entered its appearance in this appeal as co-counsel for the Debtor. Stephen Sale and John Quinn of S&Q are members in good standing of the bar of this Court.

31. On July 14, 2005, Paley Rothman entered its appearance in this appeal as co-counsel for the Debtor.

32. On July 14, 2005, before it even saw the Debtor's reply brief, CAASA filed the Motion to Strike.

33. On July 18, 2005, the Debtor filed his Appellee's Brief.

34. On March 18, 2005, this court entered the Order, which, among other things, strikes the appearance of S&Q.

ARGUMENT

The court should reconsider and vacate the Order because it misinterprets the Order Clarifying Scope of Employment and the nature of the present appeal. Alternatively, this Court should refer the issue of S&Q's participation to the Bankruptcy Court.

The Order Clarifying Scope of Employment permits S&Q to participate in matters that are derivative of the District Court Case. Although the present appeal arises out of the Bankruptcy Court, the appeal is based upon ***what was actually litigated or could have been litigated in the District Court Case***. This appeal expressly calls upon S&Q's institutional memory by reason of its participation in the District Court Case. In addition, Judge Teel, who authored the Order Clarifying Scope of Employment and permitted Mr. Sale to argue the Motion for Summary Judgment (that is the subject of this appeal) over CAASA's objection, is in the best position to interpret the extent of own order and the exclusively bankruptcy issues that arise out of it.

A.   Standards for Reconsideration or Relief from Judgment

Fed. R. Civ. P. 59(e) authorizes a court to alter or amend a judgment. Rule 59(e) allows a court to reconsider matters encompassed in the court's decision on the merits. *White v. New Hampshire Dept. of Employment Security*, 455 U.S. 445, 102 S. Ct. 1162 (1982). "Rule 59(e) permits a court to amend a judgment within ten days for three reasons: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *EEOC v. Lockheed Martin Corp.*, 116 F.3d 110, 112 (4th Cir. 1997).

Similarly, Fed. R. Civ. P. 60(b) authorizes a court to grant relief from a judgment.

8

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment or proceeding for the followings reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, reversed, or otherwise vacated, or it is not longer equitable that the judgment should have prospective application; or (6) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and for reasons (1), (2), and (3), not more than one year after the judgment, order, or proceeding was entered or taken. A motion filed under this subdivision (b) does not affect the finality of a judgment or suspend its operation.

Fed. R. Civ. P. 60(b). "To err is human. Rule 60 seeks to mitigate this human frailty, and thereby promote a more perfect justice. The errors that Rule 60 permits to be corrected are generally classified as either clerical errors or substantive errors." *In re Computer Learning Centers, Inc.*, 268 B.R. 468, 472 (Bankr. E.D. Va. 2001).

B.   <u>The Order Clarifying Scope of Employment Permits S&Q's Participation in this Appeal</u>

As noted above, the Bankruptcy Court has already ruled against CAASA on the issue of S&Q's involvement with the Objection to Claim and Motion for Summary Judgment. At the December 14, 2004 hearing on the Motion for Summary Judgment, CAASA objected to special counsel, Stephen Sale, arguing the Motion for Summary Judgment on behalf of the Debtor. ***Judge Teel denied CAASA's objection and permitted Mr. Sale to present the Motion for Summary Judgment*** because the argument addressed what was or could have been litigated at trial in the District Court Case based upon a common nucleus of operative facts with CAASA's claims under the Notes. This appeal addresses the very same issues S&Q argued in the Bankruptcy Court.

The Order suggests that the Order Clarifying Scope of Employment, which was entered (on April 7, 2005) after Mr. Sale argued the Motion for Summary Judgment (on December 14, 2004 and January 4, 2005) somehow subsequently limits S&Q's participation in this appeal. The Order Clarifying Scope of Employment does not do so. To the contrary, the Order Clarifying Scope of Employment "recognizes that Sale has specialized knowledge of the District Court litigation and that the debtor's bankruptcy counsel has justifiably consulted with Sale on matters raised in the District Court litigation that have a bearing on proceedings in this bankruptcy case." In striking S&Q's appearance, this Court is, in effect, ruling in advance that the issue in this appeal – what issues were or could have been litigated in the District Court trial – have no bearing on the *res judicata* effect of the District Court trial.

While it is true that the Order Clarifying Scope of Employment was entered after Mr. Sale argued the Motion for Summary Judgment, it nonetheless permits S&Q to handle matters that are derivative of the District Court litigation. Rather than precluding Sale from representing the Debtor, the Order Clarifying Scope of Employment ultimately lets S&Q make that determination by deferring until a fee application is filed the decision on what matters may exceed the scope of S&Q's representation. The Bankruptcy Court stated that it "will defer adjudication and resolution of the debtor's motion until after the debtor has filed a fee application in this case." Contrary to the statement in the Order, S&Q need not obtain leave of court to represent the Debtor in this appeal. S&Q bears the risk, however, that it may not be compensated if the Bankruptcy Court determines that this appeal is not derivative of the District Court Case.

The Motion to Expand Employment should be viewed in the context in which it was filed. The Motion to Expand Employment was filed on February 8, 2005, fifteen

10

days *before* the Bankruptcy Court entered the Summary Judgment Order on February 23, 2005. Thus, at the time the Motion to Expand Employment was filed, the Debtor did not even know that the Bankruptcy Court would rule in its favor or that CAASA would appeal that decision.

The Motion to Expand addressed the original Employment Order, which did not expressly permit S&Q to represent the Debtor in the Circuit Court Appeal, and S&Q's other involvement in the Bankruptcy Case. In addition to permitting S&Q's participation in the Circuit Court Appeal, the Order Clarifying Scope of Employment addressed collateral issues of whether S&Q was permitted to defend the Debtor at a deposition on CAASA's motion to appoint a trustee or examiner or prosecute the Debtor's Third Motion for Sanctions against CAASA.[2] The Order Clarifying Scope of Employment did not preclude S&Q's involvement in this appeal. That issue was never even raised.

---

[2] On July 10, 2002, the Debtor filed a Motion to Compel Conseil Alain Aboudaram, S.A. to Release Post-Petition Attachment and for Finding of Contempt and Imposition of Sanctions for Violation of the Automatic Stay ("**First Sanctions Motion**") based upon CAASA's post-petition attachment of funds owed to the Debtor by his Swiss employer, Investenergy. On October 16, 2003, the Bankruptcy Court entered a Decision and an Order imposing sanctions against CAASA for willfully violating the automatic stay ("**First Sanctions Order**"). On December 4, 2002, the Debtor filed a Motion for Finding of Contempt and for Imposition of Sanctions against Creditor Conseil Alain Aboudaram, S.A. ("**Second Sanctions Motion**"). The parties have agreed to stay the Second Sanctions Motion pending the outcome of the Circuit Court Appeal and the present appeal. On February 7, 2005, the Bankruptcy Court held a hearing on the Debtor's Third Motion for Sanctions against CAASA for Willfully Violating Automatic Stay ("**Third Sanctions Motion**"). Over CAASA's objection, the Bankruptcy Court allowed Mr. Sale to argue the Third Sanctions Motion. The Bankruptcy Court found that CAASA had again willfully violated the automatic stay, but stayed a hearing on the Debtor's damages by agreement of the parties.

C.    <u>This Court Should Abstain from Ruling on the Motion to Strike</u>

If there is any doubt, this court should refer to the Bankruptcy Court a determination of whether S&Q's representation in the District Court Case calls upon its institutional knowledge or is otherwise derivative of this appeal. Judge Teel, who authored the Order Clarifying Scope of Employment, is in the best position to interpret his order and the bankruptcy issues that arise out of it.

CONCLUSION

This Court should reconsider and vacate the Order because this appeal addresses the *res judicata* issues of what was or could have been litigated in the District Court Case that S&Q handled on behalf of the Debtor. The Motion to Expand was filed before the Bankruptcy Court ruled on the Motion for Summary Judgment and CAASA filed the present appeal. Nothing in the Order Clarifying Scope of Employment requires or contemplates pre-approval of S&Q's representation of the Debtor. In fact, the Bankruptcy Court has never stricken Mr. Sale's appearance on any issue or argument. If there is any doubt about the terms of the Order Clarifying Scope of Employment, this matter should be referred to the Bankruptcy Court.

WHEREFORE, the Debtor, by counsel, requests that the court: (1) vacate the Order; and (2) grant such further relief the court deems appropriate.

                              PALEY, ROTHMAN, GOLDSTEIN,
                               ROSENBERG, EIG & COOPER, CHTD.

                          By:      /s/    Alan D. Eisler
                               Alan D. Eisler, Bar No. 435054
                               4800 Hampden Lane, 7th Floor
                               Bethesda, Maryland 20814-2922
                               Phone: (301) 656-7603
                               Fax: (301) 654-0165
                               Counsel for Appellee

CERTIFICATE OF SERVICE

I hereby certify that on this 20th day of March 2006, copies of the Memorandum in Support of Motion to Reconsider Order Striking Appearance of Sale & Quinn, P.C. and proposed order were sent by first class mail, postage prepaid, to:

>James L. Marketos, Esquire
>Berliner, Corcoran & Rowe, LLP
>1101 17th Street, N.W., Suite 1100
>Washington, D.C.  20036
>
>Stephen Sale, Esquire
>Sale & Quinn, P.C.
>910 16th Street, N.W., 5th Floor
>Washington, D.C.  20006-2992
>
>Jacques de Groote
>1519 34th Street, N.W.
>Washington, D.C.  20007
>
>Office of the U.S. Trustee
>115 S. Union Street
>Suite 210
>Alexandria, VA 22314

  /s/    Alan D. Eisler
Alan D. Eisler