IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CONSEIL ALAIN ABOUDARAM, S.A. )<br>)<br>        Appellant, )<br>)<br>v. )<br>)<br>JACQUES de GROOTE, )<br>)<br>        Appellee. )<br>_____) | Case No. 1:05-CV-00988 (RMC) |

**APPELLEE'S RESPONSE TO COURT'S QUERIES ON BANKRUPTCY ISSUES**

Appellee, Jacques de Groote ("**Appellee**" or "**Debtor**"), by counsel, responds to the questions the court raised *sua sponte* in its March 8, 2006 order staying this appeal, as follows:

1. **Did Mr. de Groote list Mr. Aboudaram as a creditor when he filed his Chapter 11 petition?**

No. As of May 14, 2002, the date of the Debtor's bankruptcy filing, the Debtor had no knowledge that Alain Aboudaram ("**Aboudaram**") held or was asserting any personal claims. To the contrary, Conseil Alain Aboudaram, S.A. ("**CAASA**") had repeatedly asserted in pleadings in this court and in sworn discovery responses that any claims Aboudaram held against the Debtor had been assigned to CAASA.

On January 3, 2001, CAASA filed a single-count Complaint ("**Complaint**") against the Debtor in this court (*Conseil Alain Aboudaram, S.A. v. de Groote*, Case No. 1:01cv00006) ("**District Court Case**"). The Complaint alleged that "[i]n reliance on the Notes, between December 1995 and May 1988, *Plaintiff [CAASA]* extended multiple advances to de Groote, totaling approximately $427,519.74." District Court Case Docket No. 1 at 3, ¶ 11. No mention was made of advances by Aboudaram. On April 2, 2001,

the Debtor's sworn Answer and Counterclaim denied CAASA's claim, and stated that CAASA fraudulently told the Debtor that CAASA's notes were to secure CAASA's alleged overpayment of advances to him.  District Court Case Docket No. 13 at 8-9, ¶¶ 65-70.

On April 25, 2001, CAASA's Counterclaim Reply asserted that "***Aboudaram***, in his individual capacity, had paid sums directly" to the Debtor's mortgage company. District Court Case Docket No. 14 at 4-5, ¶¶ 14, 17.  CAASA also stated (as the nexus between CAASA notes/claims and Aboudaram advances) that CAASA acted "***to formally assign to CAASA de Groote's indebtedness to Mr. Aboudaram***."  *Id*. at 4. (Emphasis added).

On July 23, 2001, CAASA gave the following interrogatory answer:

CAASA further states that between April 1994 and December 1995, Aboudaram, individually, made the following payments to Defendant's mortgage company in an effort to help Defendant, who had defaulted on his mortgage payments:

| | | |
|---|---|---|
| (1) | April 14, 1994 | $149,113.53 |
| (2) | June 14, 1994 | $    9,151.00 |
| (3) | December 21, 1994 | $    9,000.00 |
| (4) | February 17, 1995 | $  10,000.00 |
| (5) | May 24, 1995 | $  35,508.07 |
| (6) | December 12, 1995 | $  39,650.75 |
| | Total | $252,423.35 |

***Aboudaram later assigned to CAASA his entitlement to repayment*** of these amounts (along with interest in the amount of $25,219.14), resulting in the execution of the promissory notes underlying CAASA's Amended Complaint for Compensatory Damages."

District Court Case Docket No. 167, Memorandum in Opposition to Motion to Alter or Amend Judgment (July 6, 2004), Ex. 8, Plaintiff's Objections and Responses to Defendant's First Set of Interrogatories at 12-13, no.10 (Emphasis added).

2

On February 11, 2002, CAASA gave the following supplemental interrogatory answer, *sworn for CAASA by Aboudaram*:

> de Groote borrowed substantial sums from Alain Aboudaram personally to pay the mortgage on his home at 1675 34th Street, N.W., Washington, D.C. 20007 (the "Property"). After these sums became very large, and de Groote agreed to sign promissory notes promising to repay all sums previously loaned as well as to be loaned, ***Mr. Aboudaram assigned the loans to CAASA***.

District Court Case Docket No. 172, Opposition to de Groote's Motion for Rule 37 Sanctions (July 21, 2004), at Ex. 18 to Attachment 1 (Declaration of Brian H. Corcoran), Plaintiff's Third Supplemental Responses to Defendant's First Set of Interrogatories at 23, no. 2, II (Emphasis added).

2. **What is the consequence to the integrity of the bankruptcy process if Mr. de Groote failed to list Aboudaram as a creditor when he filed his Chapter 11 petition?**

None. As stated above, at the time the Debtor filed his chapter 11 petition, CAASA and Aboudaram had repeatedly asserted that Aboudaram's claims had been assigned to CAASA. Moreover, until nearly two years later, the Debtor had no knowledge that CAASA's assertion of an assignment was fraudulent.

Even after the Debtor's bankruptcy filing, CAASA continued to assert that Aboudaram had assigned his claims to CAASA. On August 1, 2002, CAASA filed a motion to dismiss or convert the Bankruptcy Case. In its motion, CAASA alleged that "Aboudaram made a series of personal loans to de Groote" and that "**Aboudaram assigned his interests in those loans to CAASA**." Bankruptcy Court Docket No. 50 at 3, ¶ 7 (emphasis added). On January 26, 2004, CAASA filed in the District Court Case a Pretrial Statement that asserted as fact: "**Aboudaram assigned his claims against de**

3

**Groote to CAASA, in whose favor de Groote made the promissory notes**." District Court Case Docket No. 91 at 8. (Emphasis added).

On February 20, 2004, CAASA's counsel, James Marketos, represented in his opening statement at trial that Aboudaram formally assigned to CAASA the loan that Aboudaram had made to the Debtor. On February 21, 2004, Aboudaram's daughter, Annie, testified by deposition (pp. 43-44) that in a 1999 document Aboudaram assigned to CAASA a loan that Aboudaram had made to the Debtor. District Court Case Docket No. 167, Memorandum in Opposition to Motion to Alter or Amend Judgment (July 6, 2004) at 17. The Debtor moved the same day to exclude from evidence any assignment document not produced in discovery. District Court Case Docket No. 125. On February 23, 2004, the District Court granted the Debtor's motion to exclude CAASA's assignment document. Mr. Marketos then made the following concession on the record in open court: *"It is not an assignment… . There is no assignment."* District Court Case Docket No. 179, Trial Transcript at 13-14 (Feb. 23, 2004). Thus, only at trial did CAASA reveal the falsity of its three-year claim of an assignment.

On June 7, 2004, Judge Bates noted in his opinion awarding judgment in favor of the Debtor that CAASA had suddenly shifted its position on the issue of an assignment.

> CAASA does not argue now, as it did previously and for a long time, that Aboudaram had somehow assigned his claims against de Groote to CAASA. That theory would make little sense in light of CAASA's more recent interpretation of the notes as covering Aboudaram's personal advances in their own right.

District Court Case Docket No. 156, slip op. at 3-4. Judge Bates went on to state that CAASA's purported assignment document was excluded due to CAASA's misconduct.

> At the deposition just before trial of this case, Annie Aboudaram, Aboudaram's daughter and an employee of CAASA, testified that, sometime in 1998 or 1999, Aboudaram assigned his right to collect de

4

> Groote's repayment of his personal loan to CAASA. Tr. Feb. 23, 2004, at 7. While no formal proof of assignment was produced, CAASA sought to introduce into evidence a letter from Aboudaram to CAASA instructing the company to undertake collection efforts on de Groote's account. The Court excluded this letter from evidence presented at trial because it had been mentioned for the first time in CAASA's opening statement and had at no point been produced in discovery, although it was plainly within the scope of discovery requests and its existence had been known for some weeks before trial. *Id.* at 10-11. Annie Aboudaram was forbidden from testifying at trial as to any assignment or similar transaction between CAASA and Aboudaram. *Id.* at 31.

District Court Case Docket No. 156, slip op. at 6-7, n. 9. On June 28, 2004, the Debtor moved for sanctions against CAASA for withholding until trial both the document underlying its sworn claim of an assignment and many other documents and new testimony (District Court Case Docket No. 165) and this issue is now on appeal.

CAASA used its false assignment ploy to try to recover Aboudaram's unsecured advances under CAASA's notes and deeds of trust so that CAASA could secure its claim against the Debtor's home and claim interest and enforcement costs of $2.1 million. Notwithstanding Aboudaram's knowledge and active participation in the Bankruptcy Case, he has never asserted or filed a claim against the Debtor. The integrity of the bankruptcy system was impugned here by CAASA and Aboudaram falsely pleading and swearing that Aboudaram's claims had been assigned to the Debtor.

          PALEY, ROTHMAN, GOLDSTEIN,
           ROSENBERG, EIG & COOPER, CHTD.

    By:     /s/    Alan D. Eisler
        Alan D. Eisler, Bar No. 435054
        4800 Hampden Lane, 7th Floor
        Bethesda, Maryland 20814-2922
        Phone: (301) 951-9357
        Fax: (301) 654-0165
        Counsel for Appellee

CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of April, 2006, copies of the Appellee's Response to Court's Queries on Bankruptcy Issues were sent by first class mail, postage prepaid, to:

> James L. Marketos, Esquire
> Berliner, Corcoran & Rowe, LLP
> 1101 17th Street, N.W., Suite 1100
> Washington, D.C. 20036
>
> Stephen Sale, Esquire
> Sale & Quinn, P.C.
> 910 16th Street, N.W., 5th Floor
> Washington, D.C. 20006-2992
>
> Jacques de Groote
> 1519 34th Street, N.W.
> Washington, D.C. 20007
>
> Office of the U.S. Trustee
> 115 S. Union Street
> Suite 210
> Alexandria, VA 22314

    /s/    Alan D. Eisler
Alan D. Eisler