Case No. 1:05-CV-00988 (RMC)

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CONSEIL ALAIN ABOUDARAM, S.A.,
Appellant,

- against -

JACQUES DE GROOTE,
Appellee.

ON APPEAL FROM THE UNITED STATES BANKRUPTCY
COURT FOR THE DISTRICT OF COLUMBIA
*In re Jacques de Groote*
(Chapter 11 Case No. 02-0981)

# SUPPLEMENTAL BRIEF FOR
# APPELLANT

James L. Marketos, Esq.
Alexander C. Vincent, Esq.
Berliner, Corcoran & Rowe, L.L.P.
1101 17th Street, N.W., Suite 1100
Washington, D.C.  20036-4798
Telephone:  (202) 293-5555
Fax:  (202) 293-9035
E-mail:  jlm@bcr-dc.com
         acv@bcr-dc.com

Attorneys for Appellant
Conseil Alain Aboudaram, S.A.

April 7, 2006

Appellant Conseil Alain Aboudaram, S.A. ("CAASA"), by counsel, submits this supplemental brief pursuant to the Court's March 8, 2006, order requiring answers to the following two questions:

***Question No. 1*:  Did Mr. de Groote list Mr. Aboudaram as a creditor when he filed his Chapter 11 petition?**

### CAASA's ANSWER

No.[1]

***Question No. 2*:  What is the consequence to the integrity of the bankruptcy process if Mr. de Groote failed to list Mr. Aboudaram as a creditor when he filed his Chapter 11 petition?**

### CAASA's ANSWER

De Groote's failure to name Mr. Aboudaram as a creditor fundamentally corrupted the bankruptcy process from the very beginning of de Groote's Chapter 11 case.  The only reason de Groote sought the shelter of bankruptcy in 2002 was to stop CAASA's note collection and foreclosure efforts, which by then were well advanced after a year and a half of vigorous district court litigation.  After de Groote filed for bankruptcy protection, both cases proceeded for another two years on the unchallenged premise that CAASA was by far de Groote's largest creditor.  At trial in 2004, de Groote defeated CAASA's note collection claim by making an issue of the language of the notes, contending for the first time that he owed an unsecured debt to Mr. Aboudaram but had fully satisfied his debt to CAASA under the notes by paying $31,000 to CAASA in 2000.

---

[1]    Under penalty of perjury, de Groote swore to the truth and correctness of his original bankruptcy petition (which attached a list of six creditors including CAASA, but did not mention Mr. Aboudaram), his amended petition, his List of Creditors Holding 20 Largest Unsecured Claims, his Schedule F (creditors holding unsecured non-priority claims), his Statement of Financial Affairs, and his amendments to certain schedules [Bankr. Docket # 1, 11, 12, 13, 24 & 26].  None of these documents mentioned an unsecured claim of Mr. Aboudaram, nor was such a claim mentioned anywhere else in the immense record of de Groote's Chapter 11 case. *See In re McFarland*, 197 Bankr. 222, 224 (Bankr. E.D. Va. 1995) (defining "material" false oath as one which "bears a relationship to the debtor's . . . estate, concerns the discovery of assets or business dealings, or the existence and disposition of property").

Listing Mr. Aboudaram as an unsecured creditor in 2002 would have revealed that de Groote intended to make an issue about the note language long before he finally did so at trial in 2004. Not disclosing Mr. Aboudaram as a creditor at the outset of de Groote's bankruptcy case made a mockery of both cases thereafter and corrupted the results in each. If he had any doubts, he should have named both CAASA and Mr. Aboudaram as holding disputed claims. Then, at least, two federal courts, the U.S. Trustee, and all interested parties (except de Groote) would not have proceeded blindly through two subsequent years of intense litigation under the fiction that CAASA was de Groote's main creditor under notes and deeds of trust. De Groote's prolonged non-disclosure in two U.S. courts burdened CAASA with a huge litigation expense over the course of five years, much of which could have been avoided if de Groote had made a truthful bankruptcy disclosure.[2]

"The bankruptcy process was designed to help 'honest but unfortunate debtors.'" *Roudebush v. Sharp (In re Sharp)*, 244 B.R. 889, 891 (Bankr. E.D. Mich. 2000) (quoting *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). "Balanced against the policy 'of providing the honest debtor with a fresh start' is the countervailing policy 'of ensuring that dependable information is available to those interested in the administration of the bankruptcy estate.'" *Philadelphia Inquirer v. Burnley (In re Burnley)*, 1999 Bankr. LEXIS 1164 at *6 (Bankr. E.D. Pa. Aug. 27, 1999) (quoting *Bank of India v. Sapru (In re Sapru)*, 127 B.R. 306, 314 (Bankr. E.D.N.Y. 1991)). The Bankruptcy Code's

---

[2]    In fending off CAASA's note collection efforts, de Groote also misled a Swiss court. On September 17, 2002 (four months after filing his Chapter 11 case), de Groote filed retaliatory criminal charges against Mr. Aboudaram in the Canton of Vaud, Switzerland (Mr. Aboudaram's and CAASA's hometown). De Groote's Swiss criminal complaint advanced against Mr. Aboudaram – as criminal offenses under Swiss law – the very same acts de Groote alleged against CAASA as the basis for de Groote's 20 affirmative defenses and counterclaims in the district court case. After making a thorough investigation lasting nearly a year and a half, Judge Jean Treccani, the Swiss investigating magistrate, dismissed de Groote's criminal charges on January 19, 2004, finding them to be "frivolous, or even fraudulent." *See* Ex. A-1 to Suppl. Dec. of Christophe Piguet [Dist. Ct. Docket # 94]. For Mr. Aboudaram, who has enjoyed an unblemished personal and professional reputation in his community, de Groote's baseless Swiss criminal case was a prolonged personal trauma until the end. Needless to say, de Groote never mentioned in any of his Swiss filings that he owed a debt to Mr. Aboudaram.

powerful relief presupposes that "those who seek the shelter of the bankruptcy code do not play fast and loose with their assets or with the reality of their affairs." *In re Tully*, 818 F. 2d 106, 110 (1st Cir. 1987).  Complete and truthful information is required at the outset of a case so that "decisions can be made by the parties in interest based on fact rather than fiction," *id.*, and "creditors and trustees can husband their resources more effectively." *Hatton v. Spencer (In re Hatton),* 204 B.R. 477, 483 (E.D. Va. 1997).

Bankruptcy schedules are sworn to under penalty of perjury.  "Sworn statements filed in any court must be regarded as serious business.  In bankruptcy administration, the system will collapse if debtors are not forthcoming."  *In re Tully,* 818 F.2d at 112.  Because the bankruptcy process hinges so heavily on information furnished by the debtor, the debtor has "a paramount duty to carefully consider all questions included in the Schedules and Statement [of Financial Affairs] and see that each is answered accurately and completely."  *Casey v. Kasal (In re Kasal)*, 217 B.R. 727, 734 (Bankr. E.D. Pa.), *aff'd*, 223 B.R. 879 (E.D. Pa. 1998).[3]

Once safely behind bankruptcy's protective shield, de Groote played fast and loose with the reality of his financial affairs.  If de Groote truly owed a debt to Mr. Aboudaram, then he falsely certified the truth of schedules that did not name Mr. Aboudaram as a creditor.  If, on the other hand, he truly did not owe a debt to Mr. Aboudaram, then de Groote's trial testimony (that he "always" owed a debt to Mr. Aboudaram) was false.  De Groote's bankruptcy certifications and his

---

[3] De Groote had an affirmative legal duty under bankruptcy law to identify his creditors truthfully. *See* 11 U.S.C.A. § 521(1) (West 2004); *see also In re Maya Constr. Co.*, 78 F.3d 1395, 1398 (9th Cir. 1996) (debtor's knowledge of the existence of creditor rather than the creditor's knowledge of its claim controls whether the debtor has duty to list creditor); 18 U.S.C.A. §§ 152(2) (criminalizing false oaths in or in relation to Chapter 11 case) & 157 (criminalizing false representations made in or in relation to a Chapter 11 proceeding in furtherance of fraudulent scheme) (West 2000). Listing CAASA's claim as "disputed" did not absolve de Groote from disclosing Mr. Aboudaram as a creditor.  And if de Groote disputed CAASA's claim because he truly believed the claim was unsecured and belonged to Mr. Aboudaram, then de Groote had all the more reason to list Mr. Aboudaram as an unsecured creditor.

trial testimony cannot both be true.[4]

As a result of de Groote's non-disclosure, both cases have proved to be immense wastes of time for everyone concerned – except de Groote. In the district court case, de Groote may transform CAASA's large loan under the notes (which, except for claimed offsets, he always acknowledged until trial) into Mr. Aboudaram's unintended gift. And unless this Court or the D.C. Circuit reverses and remands, de Groote is also likely to emerge from bankruptcy without paying any price for his brazen manipulation of the bankruptcy process.[5]

De Groote's conduct has so thoroughly corrupted the bankruptcy process that he also stands to avoid any reckoning for the many other material falsehoods that riddle his bankruptcy case. On August 27, 2004, CAASA filed a motion in the bankruptcy court for the appointment of a Chapter 11 trustee for cause based on abundant evidence of de Groote's fraudulent non-disclosures concerning his financial affairs.[6] De Groote chose not to dispute CAASA's initiative on the merits.

---

[4]    *See, e.g.*, Trial Transcript (Feb. 24, 2004) at 59:6-14 ("**Q**. So in your understanding, you've paid everything that you were obliged to pay to CAASA under the promissory notes; isn't that right? **A**. Yes. But not what I'm obliged to pay to Mr. Aboudaram. **Q**. So you believe Mr. Aboudaram still has a claim against you for the advances? **A**. Yes, although they are not dividends by promissory note, but that was **always** my understanding and my decision to reimburse those advances.") (emphasis added).

[5]    De Groote's failure to name Mr. Aboudaram as a creditor cannot be attributed to a first-time debtor's naivete, for this is not de Groote's first bankruptcy. He filed a Chapter 13 case June 23, 1999, to avoid foreclosure by the first mortgagee on the same Georgetown property as to which CAASA held second and third mortgages. *In re Jacques de Groote*, Ch. 13 Case No. 99-1313 (Bankr., D.D.C.). Nor is de Groote unsophisticated about commerce and finance. For about twenty years he served as one of the twenty-four Executive Directors of both the World Bank and the International Monetary Fund. He holds a D. Juris. from the University of Louvain (Belgium) and a Masters in Economics from Cambridge University (U.K.). Before and since bankruptcy, he has served as a director and officer of entities that own the second largest brown coal mine and one of the largest industrial enterprises in the Czech Republic and are that nation's fifth largest employer (12,500 employees). *See* CAASA Mem. in Opp. to Debtor's Emergency Motion for Protective Order (April 3, 2005) *passim* & Exs. thereto [Bankr. Docket # 355].

[6]    CAASA's trustee motion [Bankr. Docket # 192-96, 305], which was filed before the district court's dismissal of CAASA's notes claim became a final judgment, asserted that de Groote painted a materially false picture of his financial affairs. CAASA asserted (among other things) that de Groote failed to disclose pre-petition assets (real property in Tuscany and shares in various foreign and domestic corporations), a pre-petition Italian bank loan, officerships and directorships in and sources of income and credit from a complex web of Swiss, Czech, and U.K. companies, and his post-petition grant of a security interest in his Italian farm (given without the permission or

Rather, he derailed the motion by asserting CAASA's lack of creditor standing based on the intervening district court judgment against CAASA on the notes claim.[7] De Groote's derailment of CAASA's trustee motion on lack-of-standing grounds is directly traceable to de Groote's failure at the outset to truthfully identify Mr. Aboudaram as a creditor. Had he done so, CAASA could have taken timely steps in the district court to deal with de Groote's contention that he owed a debt to Mr. Aboudaram but not to CAASA. As things now stand, de Groote will avoid paying any price for his bankruptcy court falsehoods unless this Court or the D.C. Circuit restores CAASA – the only party with an interest in developing the record of de Groote's falsehoods – to creditor status.

De Groote will argue that his non-disclosure was innocent – at best an oversight, at worst an error reflecting Mr. Aboudaram's failure to act like a creditor. He will also say there was an issue at trial about whether Mr. Aboudaram assigned his claim to CAASA, and that he had no way of knowing how much of the debt in question arose from advances by CAASA and how much from advances by Mr. Aboudaram. These are prevarications, but whether de Groote's non-disclosure was fraudulent or innocent is best left for resolution upon development of a full record. For now, this Court should reverse and remand so that, restored to creditor status, CAASA will have full standing to seek appropriate relief in the bankruptcy court. Although there are ample grounds, this Court should refrain from dismissing de Groote's bankruptcy case outright, as that would release him and his estate from bankruptcy jurisdiction and allow him to avoid any consequence for his falsehoods, which permeate the bankruptcy case.

---

knowledge of the bankruptcy court) and by falsely claiming a $450,000 pre-petition account receivable asset (which has never materialized). The same day, CAASA also filed its own plan of reorganization for de Groote [Bankr. Docket # 189] and sought bankruptcy discovery to develop a formal record of de Groote's non-disclosures [Bankr. Docket # 197].

[7]    Transcript of Hearing (Feb. 23, 2005) [Bankr. Docket # 349].

Dated:  Washington, D.C.
        April 7, 2006

                                        Respectfully submitted,

                                        BERLINER, CORCORAN & ROWE, L.L.P.

                                        Attorneys for Appellant Conseil Alain
                                        Aboudaram, S.A.

By:        s/ _____
             James L. Marketos
                  D.C. Bar No. 412953
             Alexander C. Vincent
                  D.C. Bar No. 473459
             1101 17th Street, N.W.
             Suite 1100
             Washington, D.C.  20036-4798
             Telephone:  (202) 293-5555
             Fax:  (202) 293-9035
             E-mail:        jlm@bcr-dc.com
                                acv@bcr-dc.com