**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| **CONSEIL ALAIN ABOUDARAM, S.A.,** | ) | |
| | ) | |
| **Appellant,** | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-988 (RMC)** |
| | ) | |
| **JACQUES DE GROOTE,** | ) | |
| | ) | |
| **Appellee.** | ) | |

**MEMORANDUM OPINION**

Conseil Alain Aboudaram, S.A. ("CAASA") appeals the bankruptcy court's disallowance of its claim against the bankruptcy estate of Jacques de Groote. The bankruptcy court disallowed the claim, finding that the claim was barred by *res judicata*. *In re Jacques de Groote*, Case No. 02-981 (Bankr. D.D.C.) (Decision Re Motion for Summary Judgment, Dkt. #307 and Order Granting Motion for Summary Judgment, Dkt. #308, both filed Feb. 23, 2005) (the "Bankruptcy Court Litigation"). On appeal, CAASA contends that this ruling was in error. As explained below, this Court disagrees. The order of the bankruptcy court will be affirmed.

**I.  BACKGROUND FACTS**

On January 3, 2001, CAASA filed a single count complaint against Mr. de Groote, seeking to recover on two promissory notes. *See Conseil Alain Aboudaram, S.A. v. de Groote*, No. 01-6 (Bates, J.) (the "District Court Litigation"). CAASA alleged a breach of contract based on the notes, secured by Mr. de Groote's residence in the Georgetown neighborhood of Washington, D.C. Subsequently, Mr. de Groote filed a Chapter 11 petition for bankruptcy protection, listing CAASA as one of his major creditors. CAASA filed a Proof of Claim, advancing a claim in the amount of $1,385,093.17, partially secured by second and third deeds of trust on the Georgetown residence.

The Chapter 11 petition automatically stayed the District Court Litigation.  11 U.S.C. § 362(a).  The

Bankruptcy Court then granted CAASA's motion to lift the stay to permit the District Court Litigation

"to proceed to allow the District Court to reduce to judgment the amount of CAASA's and/or the

Debtor's respective claims and counterclaims."  *In re Jacques de Groote*, Case No. 02-981 (Consent

Lift Stay Order, Dkt. #61).

A.  The District Court Litigation

The first note, dated December 19, 1995, provided a line of credit in the amount of

$400,000, and the second note, dated October 13, 1998, provided a line of credit in the amount of

$100,000 (collectively the "Notes").  CAASA alleged that as of December 31, 2003, Mr. de Groote

owed $421,576.67 in principal, $96,902.58 in interest, and $1,863,348.41 for the costs of enforcement

under the Notes.  *Conseil Alain Aboudaram*, No. 01-6 (Pretrial Statement, Dkt. #91).  Mr. de Groote

contended that he had paid the notes in full; he also counterclaimed, alleging that CAASA owed him

millions of dollars in compensation for consulting work.[1]

While CAASA advanced funds to Mr. de Groote, CAASA's principal owner and

president, Alain Aboudaram, also advanced monies to Mr. de Groote.  The parties stipulated that Mr.

Aboudaram had advanced $396,357.59 to Mr. de Groote.  Mr. Aboudaram testified that these were

personal loans, and Mr. de Groote conceded that he still owes on these loans from Mr. Aboudaram.

*Conseil Alain Aboudaram, S.A. v. de Groote,* No. 01-6, slip op. at 3 (D.D.C. June 7, 2004)

(Memorandum Opinion, Dkt. #156).  According to Mr. Aboudaram, the Notes covered Mr.

---

[1] CAASA hired Mr. de Groote, former Executive Director of the World Bank, as a consultant to help CAASA's client obtain a World Bank contract for construction of an oil pipeline in India.  The parties dispute the terms and amount of payment due to Mr. de Groote for his consulting work.

Aboudaram's personal loans to Mr. de Groote. *Id*. at 5. Mr. de Groote denied this allegation. *Id*. at 6. However, Mr. Aboudaram was not a party to the District Court Litigation.[2] As the District Court Litigation evolved, the key question that arose was whether CAASA could recover for amounts advanced by Mr. Aboudaram personally and whether the Notes and accompanying deeds of trust somehow covered the advances made by Mr. Aboudaram.[3]

The Notes expressly covered advances made by the "Lender" to the "Borrower." "Lender" was defined as CAASA, and "Borrower" was defined as Mr. de Groote. Counsel for CAASA testified at trial that he drafted the Notes and that the Notes clearly required Mr. de Groote to repay CAASA for advances CAASA made to him. *Id*. at 5-6. Further, CAASA did not carry on its books any of the personal advances made by Mr. Aboudaram. *Id*. at 3 n.2. At trial the parties stipulated that Mr. de Groote had repaid all of the loan advances made by CAASA. *Id*. at 5 n.6.

CAASA alleged that Mr. Aboudaram had assigned to CAASA the personal debt that Mr. de Groote owed to Mr. Aboudaram, but never produced any documentary evidence during discovery in support of such an assignment. During opening statements, counsel for CAASA indicated that Mr. Aboudaram had formally assigned the debt to CAASA. Further, CAASA indicated that it would call Annie Aboudaram, Mr. Aboudaram's daughter, to testify regarding the assignment.

---

[2] Not only was Mr. Aboudaram not a party to the District Court Litigation, he also did not participate in the Bankruptcy Court Litigation. He did not file a proof of claim or assert his rights as a creditor in any other way.

[3] The Notes indicated that advances were to be recorded on an attached grid and endorsed by Mr. de Groote. *Conseil Alain Aboudaram,* No. 01-6, slip op. at 4. At trial, CAASA attempted to introduce grids into evidence that showed advances made by Mr. Aboudaram in 1996. *Id*. at 10. Mr. de Groote argued that no grids were attached when he signed the notes and that he never endorsed any grids. CAASA consented to the exclusion of the grids from the evidence. *Id*.

Mr. de Groote moved to strike Ms. Aboudaram as a witness because she had not been identified previously. The District Court denied the motion to strike and instead ordered the deposition of Ms. Aboudaram. At her deposition, Ms. Aboudaram asserted that her father had assigned to CAASA his personal loan to Mr. de Groote and that such assignment was reflected in a document. *Id*. at 6-7 n.9. The document was not produced at the deposition. Instead, on the first day of trial, CAASA offered as trial exhibits an original letter in French, dated 1999 (Plaintiff's Exhibit 150), along with an English translation. The letter was from Mr. Aboudaram to CAASA, instructing CAASA to undertake collection efforts on Mr. Aboudaram's loans to Mr. de Groote. Mr. de Groote objected to the introduction of the letter because it had never been produced in discovery although such documents had been requested. The District Court sustained the objection, excluded the letter from evidence, and excluded Ms.Aboudaram's proposed testimony regarding the letter. *Id*.

After CAASA rested its case in chief, Mr. de Groote moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). The District Court took the motion under advisement. *Id*. at 9 n.11. Mr. de Groote renewed the Rule 50(a) motion at the end of trial, and the District Court again took it under advisement. *Id*. The jury rendered a verdict for CAASA, finding that there was an enforceable contract under the terms of the Notes, that Mr. de Groote had breached the contract by defaulting on the Notes, and that CAASA was entitled to $536,263.55 in damages. The jury rejected Mr. de Groote's counterclaims. *Id*. at 1.

Mr. de Groote renewed his motion for judgment as a matter of law, under Federal Rule of Civil Procedure 50(b) (judgment as a matter of law after trial). The jury verdict awarded monies that the parties agreed were loaned personally by Mr. Aboudaram to Mr. de Groote, yet Mr. Aboudaram was not named as a lender in the Notes. *Id*. at 1-2. Thus, Mr. de Groote argued that the

Notes do not cover the funds he owes to Mr. Aboudaram and that he had repaid the debt to CAASA

that was reflected in the Notes.  At that point, CAASA moved to amend the complaint to state a claim

for reformation, arguing that Mr. de Groote impliedly consented to trial of the full debt.  CAASA also

requested that the Court deem the Notes to be reformed, arguing that the Notes contained a clerical

error--that "Lender" should have been defined as Mr. Aboudaram and CAASA.  Not surprisingly, Mr.

de Groote opposed CAASA's motion.

The District Court denied the motion to amend because Mr. de Groote had not received

notice of or consented to the trial of a reformation count.[4]  *Id.* at 10-11.  The District Court then

entered judgment in favor of Mr. de Groote, despite the jury verdict.  The District Court explained:

> [N]o reasonable jury could have found that Aboudaram's advances to de
> Groote were covered by the promissory notes, which by their terms reach
> only advances from CAASA, as the "Lender," to de Groote.  Having found
> based on the stipulation of the parties that all such advances have been
> repaid, the Court must enter judgment for de Groote on CAASA's claim for
> breach of contract on the promissory notes.

*Id.*[5]

### B.  The Bankruptcy Court Litigation

After the District Court Litigation was reduced to judgment, on August 27, 2004,

CAASA filed an Amended Proof of Claim in the Bankruptcy Litigation, in the amount of

---

[4] CAASA also had moved to amend by an oral motion at trial after CAASA had rested its case.  In this oral motion to amend, CAASA sought to 1) add a count of breach of oral promise to pay CAASA for Mr. Aboudaram's advances; 2) add a count for breach of oral promise to pay Mr. Aboudaram for Mr. Aboudaram's advances; and 3) join Mr. Aboudaram as an additional plaintiff.  Mr. de Groote opposed the motion on the grounds that he would be prejudiced by such a late amendment.  The District Court agreed with Mr. de Groote and denied the motion.

[5] CAASA's appeal of the District Court's decision is still pending.  *Conseil Alain Aboudaram, S.A. v. de Groote*, No. 04-7167 (D.C. Cir.) (appeal filed Oct. 8, 2004) and No. 04-7168 (D.C. Cir.) (appeal filed Oct. 12, 2004).

$1,374,742.61.[6]  Mr. de Groote filed an Objection to CAASA's Amended Proof of Claim and moved

for summary judgment, alleging that the Claim was barred on *res judicata* grounds by the District

Court Litigation.  CAASA opposed Mr. de Groote's Objection, contending that the Amended Proof

of Claim was based on theories that had not been litigated in the District Court Litigation: 1) express

written contract (including third-party beneficiary contract); 2) express oral contract; 3) implied-in-

fact contract; 4) implied-in-law contract (a/k/a assumpsit for money had and received, money lent,

quasi contract or unjust enrichment); 5) account stated; 6) promissory estoppel; and 7) equitable and

judicial estoppel (collectively the "Alternative Theories").

        The Bankruptcy Court granted Mr. de Groote's motion for summary judgment and

disallowed CAASA's Amended Proof of Claim, finding that the District Court Litigation barred the

Claim by *res judicata* because CAASA has already litigated or could have litigated its Alternative

Theories.  *In re Jacques de Groote*, Case No. 02-981, (Decision Re Motion for Summary Judgment,

Dkt. #307 and Order Granting Motion for Summary Judgment, Dkt. #308) (collectively, the

"Disallowance Order").[7]  CAASA appealed the Disallowance Order to this Court.

---

[6] CAASA's Amended Proof of Claim contained an incorrect amount due to a
typographical error.  CAASA later corrected the error in its Opposition to Debtor's Objection to
Proofs of Claim.  *In re Jacques de Groote*, Case No. 02-981 (Opposition to Debtor's Objection to
Proofs of Claim, Dkt. # 218).

[7] On March 7, 2005, CAASA moved to amend the Order Granting Motion for Summary
Judgment, seeking to add language that would deprive the Order of *res judicata* effect pending
the outcome of the appeal of the District Court Litigation.  The Bankruptcy Court denied the
motion to amend, but indicated that "the summary judgment order may be vacated on a Rule 60
motion if the court of appeals reverses the related district court judgment." *In re Jacques de
Groote*, Case No. 02-981 (Order Denying CASA's Motion to Amend Order, Dkt. #344).  On May
18, 2005, the Bankruptcy Court approved an order conditionally confirming Mr. De Groote's
plan of reorganization pending the final determination of this bankruptcy appeal and the appeal of
the District Court's decision in the District Court Litigation.  *See In re Jacques de Groote*, Case
No. 02-981 (Conditional Confirmation Order, Dkt. #295).

## II. JURISDICTION AND STANDARD OF REVIEW

A federal district court has appellate jurisdiction over final orders of the bankruptcy court. 28 U.S.C. § 158(a)(1). An order which conclusively determines a separable dispute over a creditor's claim is a final appealable order under section 158(a)(1). *In re St. Charles Preservation Investors, Ltd.*, 112 B.R. 469, 472 (D.D.C. ), *appeal dismissed on other grounds*, 916 F.2d 727 (D.C. Cir. 1990). *See also Walch Trucking Co., Inc. v. Ins. Co. of N. Am. (In re Walsh Trucking Co.)*, 838 F.2d 698, 701 (3d Cir. 1988) (order denying creditor's claim is immediately appealable). Thus, the bankruptcy court's Disallowance Order is a final order over which this Court has appellate jurisdiction.

The issue of whether or not *res judicata* applies in a given situation is a question of law. *Athridge v. Aetna Cas. & Sur. Co.*, 351 F.3d 1166, 1171 (D.C. Cir. 2003). On appeal, federal district courts review *de novo* questions of law determined by bankruptcy courts. *Apotex, Inc. v. FDA*, 393 F.3d 210, 217 (D.C. Cir. 2004). Therefore, the issue of whether the District Court Litigation barred by *res judicata* CAASA's Amended Proof of Claim in bankruptcy court was a question of law determined by the bankruptcy court, and this Court will apply a *de novo* standard of review.

## III. ANALYSIS

Under the doctrine of *res judicata*, also known as claim preclusion, "a judgment on the merits in a prior suit bars a second suit involving the same parties or their privies based on the same cause of action." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 327 n.5 (1979); *Apotex, Inc. v. FDA*, 393 F.3d at 217. The doctrine of *res judicata* promotes the conclusive resolution of disputes. *Apotex*, 393 F.3d at 217. "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple

lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153 (1979). The doctrine embodies the principle that "a party who once has had a *chance* to litigate a claim before an appropriate tribunal usually ought not to have another chance to do so." *SBC Comms. Inc. v. FCC*, 407 F.3d 1223, 1229 (D.C. Cir. 2005) (quoting Restatement (Second) of Judgments, ch. 1 at 6 (1982)).

To determine whether two cases involve the same cause of action, the D.C. Circuit has adopted the "pragmatic, transactional" approach found in the Restatement (Second) of Judgments. *U.S. Industries, Inc. v. Blake Constr. Co., Inc.*, 765 F.2d 195, 205 (D.C. Cir. 1985) (adopting Restatement (Second) of Judgments § 23(2) (1982)). Under this approach, a court must consider "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Id.* The D.C. Circuit in *U.S. Industries* specifically examined whether there was an identity of parties, an identity of subject matter, and an identity of contract between the two cases, and whether there was a final adjudication on the merits in the prior case. *Id.* at 206. The most critical question in determining if two causes of action are actually the same is whether the plaintiff had a previous opportunity to present evidence on his claims. *See id.*

The facts that were litigated in the District Court Litigation dealing with the Notes and the funds loaned to Mr. de Groote are related in time, space, origin, and motivation to those that would be litigated in a suit on CAASA's Alternative Theories. The suit on the Notes and one on the Alternative Theories would have formed a convenient trial unit, and their treatment as a unit would have conformed to the parties' expectations that their loan transaction would be litigated in one case.

The Bankruptcy Court held that *res judicata* plainly applies, and this Court agrees.

CAASA contends that *res judicata* does not apply because the parties "understood" that Mr. de Groote's debt to Mr. Aboudaram personally was embodied in the Notes and secured by the deeds of trust and that Mr. de Groote "confounded those expectations and frustrated common business understandings and usages by concealing a defense intrinsic to the notes until trial."  Brief for Appellant at 26.  In sum, CAASA asserts that 1) Mr. de Groote "concealed" his defense; 2) CAASA was "unfairly surprised" by Mr. de Groote's position that the Notes did not cover Mr. Aboudaram's personal loans to Mr. de Groote; and 3) Mr. de Groote conceded that Mr. Aboudaram's advances were covered by the Notes.  Thus, CAASA argues, it "had no reason to file a complaint broader than the promissory notes or to amend the complaint beyond the single claim pleaded." *Id*. at 29.

CAASA's arguments are disingenuous.  CAASA contends that Mr. de Groote conceded thirteen times in his counterclaim that Mr. Aboudaram's advances were covered by the Notes.  Appellant's Brief at 13.  However, the concessions to which CAASA refers are only concessions that CAASA advanced funds to Mr. de Groote and that Mr. de Groote signed the Notes. *Id*. at 13-14.  While CAASA may have "understood" that the Notes covered Mr. Aboudaram's personal loans to Mr. de Groote, there is no evidence that Mr. de Groote believed or agreed that this was true.  Mr. de Groote never stipulated that the Notes covered personal advances from Mr. Aboudaram, and CAASA's erroneous assumption that he had done so certainly is not binding upon Mr. de Groote.  The Notes themselves expressly defined the Lender only as CAASA.  This explicit language could not have been a surprise, as the Notes were drafted by counsel for CAASA.  CAASA had every reason to file a broader complaint or to amend its complaint before trial.  CAASA knew that

its principal, Mr. Aboudaram, had personally loaned funds to Mr. de Groote and knew that the Notes defined the Lender as CAASA.  There is simply no way that under the Notes that CAASA could recover funds advanced personally by Mr. Aboudaram without advancing some other legal theory such as assignment or oral contract.

Furthermore, it is elementary that a plaintiff in a suit to collect a debt bears the burden of proving the debt.  CAASA was aware of this burden of proof, as evidenced by its assertion in its opening statement that Mr. Aboudaram had assigned his claims against Mr. de Groote to CAASA. *See Conseil Alain Aboudaram*, No. 01-6 (Pretrial Statement at 8).  CAASA failed to meet its burden of proof, largely due to its own failure to comply with discovery.  Due to CAASA's failure to turn over the document in discovery, the District Court excluded the letter from Mr. Aboudaram instructing CAASA to collect on Mr. de Groote's debt to Mr. Aboudaram and the District Court excluded the testimony of Annie Aboudaram regarding the alleged assignment.

Also, CAASA contends that *res judicata* only bars claims that it had the opportunity to litigate.  Because the District Court denied CAASA's motion to amend, CAASA argues that it did not have the opportunity to litigate its Alternative Theories and the Alternative Theories should not be  barred.  This argument has no merit.  CAASA pursued a legal strategy to collect $421,576.67 in principal, $96,902.58 in interest, and $1,863,348.41 in costs of enforcement under the Notes.  The Court surmises that CAASA focused on recovery under the Notes because the Notes provided for repayment of the costs of enforcement and were secured by deeds of trust on Mr. de Groote's residence.  This legal strategy did not preclude CAASA from asserting other legal theories in its complaint or prevent Mr. Aboudaram from joining as a plaintiff.  Further, under Federal Rule of Civil Procedure 15, CAASA easily could have amended its complaint to include its Alternative Theories

prior to trial. The District Court's order refused to allow CAASA amend after CAASA had rested its

case at trial. CAASA chose to pursue a one-track strategy and did not assert its Alternative  Theories

in a timely manner. As a result, CAASA is barred by *res judicata* from now using the Alternative

Theories to recover the same debt.

CAASA also argues that the *Throckmorton* exception to *res judicata* applies. In

*United States v. Throckmorton*, 98 U.S. 61, 65-66 (1878), the Supreme Court recognized that *res

judicata* does not apply when the party sought to be barred was prevented by his adversary's fraud

or misconduct from presenting an issue at trial. *See also Harnett v. Billman*, 800 F.2d 1308, 1313 (4th

Cir. 1986) (holding that lack of knowledge will not avoid *res judicata* unless there was fraud that

caused plaintiff to fail to include claim in former action). There is no evidence that Mr. de Groote

engaged in fraud or misconduct or otherwise concealed facts from CAASA. The facts were apparent

on the face of the Notes. The Notes, drafted by CAASA, explicitly defined the Lender as CAASA.

CAASA had the burden of proof on its suit to collect on the Notes. Requiring CAASA to meet its

burden of proof does not constitute fraud or misconduct.

CAASA further argues that its due process rights were violated because it did not

receive "constitutionally adequate notice of de Groote's new issue." As explained above, it is this

Court's view that there simply was no concealment. The facts were open and obvious. Because

CAASA had all of the relevant facts available to it, CAASA cannot assert that it somehow lacked

"notice." Further, CAASA had a full and fair opportunity to litigate its cause of action. CAASA's

due process argument is baseless.

Finally, relying on *Lunsford v. Kosanke*, 295 P.2d 432 (Cal. Ct. App. 1956), and

*Sawyer v. First City Fin. Corp.*, 177 Cal. Rptr. 398 (Cal. Ct. App. 1981), CAASA contends that

because Mr. de Groote successfully prevented CAASA from amending its complaint to assert CAASA's Alternative Theories, Mr. de Groote should be estopped from asserting *res judicata* to bar them. CAASA's appeal is governed by applicable federal precedent, not by California law. *Lunsford* and *Sawyer*, both decided under California law, are not binding on this Court and are not persuasive. In *Sawyer*, the court held that the defendant's successful opposition to the plaintiff's motion to consolidate two trials did not estop the defendant from asserting *res judicata* to bar the second suit. More to the point, this Court agrees with the bankruptcy court that *Lunsford* is "plainly at odds with the doctrine of *res judicata* as applied by more recent decisions" of the D.C. Circuit. *In re Jacques de Groote*, Decision Re Motion for Summary Judgment (Dkt. #307) at 15; *see e.g., Apotex*, 393 F.3d at 217. *Lunsford* also is distinguishable because the complaint in that case was so defective that the court found no evidence was admissible. 295 F.2d at 435. As a result, there was no trial and no judgment on the merits. *Id*. Here, CAASA tried its case and obtained a judgment on the merits. There is no estoppel.

## IV.  CONCLUSION

After reviewing the facts and the law *de novo*, the Court finds that the bankruptcy court did not err in holding that *res judicata* barred CAASA's Amended Proof of Claim. The Disallowance Order is affirmed, CAASA's appeal is denied, and this case is dismissed. A memorializing order accompanies this Memorandum Opinion.

DATE: May 4, 2006                    ___/s/_____
                                     ROSEMARY M. COLLYER
                                     United States District Judge